IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| 0.12 ACRES OF LAND, MORE OR | ) | |
| LESS, IN WASHINGTON COUNTY, | ) | |
| MARYLAND; STATE OF MARYLAND, | ) | |
| DEPARTMENT OF NATURAL RESOURCES, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN ORDER OF CONDEMNATION AND FOR PRELIMINARY INJUNCTION</u>**

# Table of Contents

**Page**

**I. INTRODUCTION** ................................................................................................................. **3**

**II. STATEMENT OF FACTS** .................................................................................................. **3**

    A.    Columbia and Its Authority for the Eastern Panhandle Expansion Project ..................................... 3

    B.    Columbia's Right to Condemn .............................................................................................. 5

    C.    Columbia's Inability to Acquire the Easement by Contract ............................................................ 5

    D.    The Need for Immediate Access to and Use of the Easement ........................................................ 7

        1.    The Necessity of the Easement ................................................................................... 7

        2.    The Necessity of Immediate Access to and Use of the Easement .................................... 8

        3.    Irreparable Harm to Columbia and Its Customers Without Immediate Access to and Use of the Easement ....................................................................................................... 11

        4.    No Harm from Granting Columbia Immediate Access to and Use of the Easement .................. 14

**III. ARGUMENT** ....................................................................................................................... **16**

    A.    Columbia Is Entitled to an Order of Condemnation .................................................................... 16

        1.    Columbia Has a Substantive Right to Condemn the Easement Pursuant to the NGA ................. 16

        2.    Columbia Has Complied with the Applicable Requirements of Federal Rule of Civil Procedure 71.1 ...................................................................................................................... 19

    B.    Columbia Is Entitled to Immediate Access and Use Through a Preliminary Injunction ............... 20

        1.    Columbia Will Succeed on the Merits ......................................................................... 22

        2.    Columbia Will Suffer Irreparable Harm in the Absence of Injunctive Relief ........................ 23

        3.    The Balance of Equities Weighs Substantially in Columbia's Favor .................................. 29

        4.    The Preliminary Injunction Is in the Public Interest ...................................................... 32

**IV. CONCLUSION** ................................................................................................................... **34**

# I.    INTRODUCTION

Plaintiff, Columbia Gas Transmission, LLC ("**Columbia**"), submits this Memorandum in Support of its Motion for an Order of Condemnation and for Preliminary Injunction ("**Motion**"), filed pursuant to 15 U.S.C. § 717, *et. seq.* and Rules 71.1 and 65 of the Federal Rules of Civil Procedure. Columbia seeks an order authorizing it to condemn the property interests described in its Complaint in Condemnation ("**Complaint**") (the "**Easement**") and further seeks a preliminary injunction granting immediate access to and use of the Easement. Columbia has a substantive right to condemn the Easement pursuant to the Natural Gas Act (the "**NGA**") and has complied with the applicable requirements of Rule 71.1. The preliminary injunction sought by Columbia is warranted for the following reasons:

- Columbia has a substantive right to condemn the Easement, and therefore, will necessarily succeed on the merits of its claim.

- Columbia will be irreparably harmed absent issuance of the injunction.

- The balance of equities demonstrably weighs in Columbia's favor. While Columbia will be irreparably harmed absent issuance of the injunction, Defendant will suffer no harm due to the preliminary injunction because the determination of just compensation owing by reason of Columbia's appropriation of the Easement will not be affected by immediate access to and use of the Easement.

- The public interest weighs in favor of granting Columbia the preliminary injunction because, among other reasons, it will allow for the expeditious completion of the pipeline project at issue, which will, among other things, directly benefit the general public by bringing high-quality natural gas to market through safe, secure, and reliable methods.

Based on the foregoing, this Court should enter an order of condemnation and a preliminary injunction granting Columbia immediate access to and use of the Easement.

# II.    STATEMENT OF FACTS

## A.    *Columbia and Its Authority for the Eastern Panhandle Expansion Project*

Columbia owns and operates one of the largest underground natural gas storage and

transmission systems in North America, transporting an average of approximately three billion cubic feet of natural gas per day through its network of nearly 12,000 miles of pipeline, covering ten states and hundreds of communities. *See* Declaration of Jacob Haney, P.E. ("**Haney Decl.**") at ¶ 5, a copy of which is attached to Columbia's Motion as **Exhibit 1** and incorporated by reference herein. Columbia, an interstate natural gas transmission company as defined by Section 2(a) of the NGA, 15 U.S.C. § 717 *et. seq.*, is subject to the jurisdiction of the Federal Energy Regulatory Commission ("**FERC**"), and is qualified to construct, own, operate, and maintain facilities used to transport natural gas in interstate commerce. (*Id.* at ¶ 6).

FERC granted Columbia a certificate of public convenience and necessity for the project at issue on July 19, 2018, in FERC Docket No. CP17-80-000 (the "**FERC Certificate**"). (*Id.* at ¶ 7). The FERC Certificate, among other things, approves the construction and operation of approximately 3.37 miles of 8-inch diameter natural gas pipeline, known as Columbia's Eastern Panhandle Expansion Project (the "**Project**"). (*Id.* at ¶¶ 3, 8). The subject pipeline will commence at interconnections with Columbia's Line 1804 and Line 10240 in Fulton County, Pennsylvania and extend through Washington County, Maryland, to a point of delivery with the local distribution system of Mountaineer Gas Company, the project shipper, in Morgan County, West Virginia. (*Id.* at ¶ 8). The Project will provide up to 47,500 dekatherms per day (Dth/d) of incremental firm transportation service to serve markets in West Virginia, in addition to serving multiple communities by increasing supply options and enabling the safe and reliable transport of natural gas, and the Easement will be used to that end. (*Id.*).

The FERC determined, among other things, that, "[b]ased on the benefits the project will provide and the lack of effects on existing shippers, other pipelines and their captive customers, and landowners and surrounding communities, . . . the public convenience and necessity requires

approval of Columbia's proposal under section 7 of the NGA, as conditioned in this order." *See* **Ex. A** to the Complaint (FERC Certificate), at ¶ 16.[1]

**B.** **Columbia's Right to Condemn**

Pursuant to the NGA, the FERC Certificate authorizes Columbia to exercise the power of eminent domain to obtain necessary easements where it has been unable to obtain easements by agreement with the property owners along the FERC-approved route. To complete the Project, Columbia must acquire the Easement across the single tract of real property at issue in this case. (Haney Decl. at ¶ 9). The Easement described in **Exhibit B** to the Complaint is an integral portion of the Project Route approved by the FERC Certificate as necessary for the construction, maintenance, operation, alteration, testing, replacement, and repair of the Project. (*Id.* at ¶ 24). Columbia cannot construct the Project in accordance with the FERC Certificate without acquiring the Easement. (*Id.* at ¶ 26).

**C.** **Columbia's Inability to Acquire the Easement by Contract**

The State of Maryland, Department of Natural Resources ("**MDNR**" or "**Defendant**") is the record title holder of the Tract and the only party in interest potentially affected by this taking. Columbia has attempted to negotiate with MDNR for the voluntary acquisition of the Easement to no avail. Accordingly, Columbia has been unable to acquire the Easement by contract. (*Id.* at ¶¶ 12-20).

---

[1] The Court may take judicial notice of the FERC Certificate under Fed. R. Evid. 201. *See, e.g.*, *Florida Se. Connection, LLC v. 13.678 Acres of Land*, 8:16-CV-682-T-35MAP, 2016 WL 2745285, at *1 (M.D. Fla. May 11, 2016) ("As a public record issued and maintained by FERC, this Court takes judicial notice of the FERC Certificate, the Final Environmental Impact Statement (FEIS) approved and adopted by FERC, and all other records of the FERC proceedings relating to the Project under Federal Rule of Evidence 201."); *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 924 n.3 (9th Cir. 2002). This, and all other FERC documents, are publically available at http://www.ferc.gov/industries/gas/indus-act/pipelines/pending-projects.asp.

Columbia's Easement-acquisition efforts, which began in 2016, have included, among other things: (a) searching land title records to ascertain the identities of potentially affected owners and interest holders; (b) making direct contact with MDNR representatives through telephone calls, personal meetings, and/or written correspondence to discuss the Project and the related Easement rights sought by Columbia; (c) commissioning an appraisal for the subject property; (d) submitting requested documents and information to MDNR, and (e) negotiating both the terms of acquisition and the form of the Easement with MDNR. (*Id.* at ¶ 13). Columbia commissioned an appraisal by an independent appraiser licensed in the State of Maryland to determine the compensation due by reason of the imposition of the Easement sought for the Project (the "**Appraisal**"). (*Id.* at ¶ 14).

Columbia and MDNR have negotiated extensively. Most recently, Columbia offered MDNR consideration for the Easement in the amount of $5,000.00, an amount in excess of the compensation due as determined by the Appraisal. (*Id.* at ¶ 15). Thereafter, negotiated and agreed-upon terms of a proposed easement agreement were reached, the execution of which would have obviated the need for these proceedings. (*Id.* at ¶ 16).

On information and belief, formal conveyance of the Easement rights pursuant to the negotiated and agreed-upon terms and form of the easement agreement requires approval by the Maryland Board of Public Works ("**BPW**"). (*Id.* at ¶ 17). After more than two years of effort by Columbia, the matter of approval of the conveyance of the Easement was placed on the agenda for the January 2, 2019 BPW meeting, at which Columbia's easement application was denied. (*Id.*). Columbia, accordingly, has been unable to acquire the necessary Easement by agreement despite its exhaustive efforts to do so. (*Id.* at ¶ 18).

Significantly, of the 22 tracts of real property impacted by the Project in total, Columbia has, prior to instituting these proceedings, successfully negotiated the voluntary acquisition of easements on 18 tracts (82% of the tracts), leaving only this single tract and three others under common ownership of the National Park Service unacquired. (*Id.* at ¶ 19). Indeed, all privately-owned property has been voluntarily acquired without the need for Court intervention. (*Id.*).

Upon information and belief based upon, among other things, the course of negotiations with MDNR and the negotiated Easement consideration, the amount claimed by the record title holder of the Tract relative to the outstanding Easement exceeds $3,000. (*Id.* at ¶ 20).

**D.**     *The Need for Immediate Access to and Use of the Easement*

Columbia cannot construct the Project in accordance with the FERC Certificate without acquiring the Easement. (*Id.* at ¶ 26). Therefore, Columbia requires immediate access to and use of the Easement in order to begin construction and meet the July 19, 2020 expiry deadline under the Certificate (the "**Certificate Expiry Date**") and Columbia's contractually committed in-service date of November 1, 2020 (the "**In-Service Deadline**"). (*Id.* at ¶¶ 27-36).

**1.      The Necessity of the Easement**

The Project as a whole includes the construction of a new eight-inch pipeline, extending approximately 3.4 miles, from existing 20-inch and 24-inch pipelines in Fulton County, Pennsylvania to a site in Morgan County, West Virginia. (*Id.* at ¶ 22). The proposed pathway of the pipeline would cross Washington County, Maryland and travel under the Potomac River before ending at a meter station in Morgan County. (*Id.*). The FERC has determined and approved the route of the Project (the "**Project Route**"). (*Id.* at ¶ 23).

The Easement is a portion of the Project Route approved by the FERC Certificate as necessary for the construction, maintenance, operation, alteration, testing, replacement, and repair

of the Project. (*Id.* at ¶ 24). The FERC-approved Project Route generally includes: (a) a fifty-foot-wide permanent easement to place, operate, replace and/or maintain the pipeline; (b) associated construction easements necessary to construct and/or replace the pipeline; and (c) all rights, including of ingress, egress, and reasonable access, necessary to construct, protect, repair, replace, upkeep, and maintain the pipeline and the permanent easement. (*Id.*).

The Easement will be 102 feet long and 50 feet wide. (*Id.* at ¶ 25). The Easement comprises a portion of an approximately 4,294-foot horizontal directional drill ("HDD") that will, among other things, pass beneath the Tract at approximately 175 feet below the surface and beneath the Potomac River at a depth of approximately 114 feet. (*Id.*). Neither the entry nor the exit point of the HDD is situated on the Tract at issue; accordingly, there is no contemplated disturbance of the surface of the Tract as a result of the Project. (*Id.*).

## 2. **The Necessity of Immediate Access to and Use of the Easement**

Two different yet equally important deadlines are at play for the Project: the July 19, 2020 expiry deadline under the Certificate (the "**Certificate Expiry Date**") and Columbia's contractually committed in-service date of November 1, 2020 (the "**In-Service Deadline**"). (*Id.* at ¶ 28). Columbia must commence active construction activities for the Project as soon as is practicable in order to meet the Certificate Expiry Date and its In-Service Deadline. (*Id.* at ¶ 29).

Construction activities on the 22 affected properties along the Project Route will vary. (*Id.* at ¶ 30). Columbia's anticipated construction activities for the Project as a whole (not necessarily limited to the construction activities on the Tract) include some or all of the following: (a) easement preparation to include removal of any appurtenances, trees, etc., and the installation of any required environmental control and/or safety control devices; (b) easement grading, which includes segregating and stockpiling of topsoil as appropriate; (c) preparation of the pipeline trench

to receive the pipeline, including blasting, if required; (d) welding of the pipeline, and radiographic or ultrasonic inspection of the welds; (e) lowering of the pipeline into the ditch; (f) making tie-in welds to other installed portions of the pipeline, and radiographic or ultrasonic inspection thereof; (g) coating of the welds; (h) padding and backfilling of the pipeline; (i) temporary and permanent restorations of the affected property; (j) hydrostatic testing of the pipeline; (k) removal of the test water; and (l) purging and pressurizing of the pipeline with natural gas to operating pressure. (*Id.*).

As mentioned above, the Project, as approved, contemplates an approximately 4,294-foot horizontal direction drill ("HDD") to pass beneath multiple tracts of real property, including the Tract. (*Id.* at ¶ 31). The entry point of the HDD will be situated approximately 2,934 linear feet to the southeast of the Tract, and its exit point will be situated approximately 1,880 linear feet to the northwest of the Tract. (*Id.*). The Easement is an integral portion of the HDD, as the HDD could not be completed as approved by the FERC Certificate without it. (*Id.*).

Critical strategic planning is also required to schedule and coordinate the performance of the above-described activities along the Project Route. (*Id.* at ¶ 32). Industry standard practices dictate that the pipeline be constructed using a linear construction method, proceeding sequentially from one end of a segment of the Project Route to the other, without having to "skip" properties due to lack of access. (*Id.*). It is extremely inefficient, vastly more costly, and, often, not feasible to construct the pipeline or perform the HDD work that is required in any other non-linear construction method, *i.e.*, by beginning on a property over which Columbia has the necessary easements and access, then demobilizing and remobilizing around (or "skipping over") a property over which Columbia does not have an easement and access (*e,g.*, the tract on which the Easement is located), and then returning later to construct that portion of the pipeline. (*Id.*). This non-linear practice would, among other things, cause significant delays and substantial additional costs,

which would threaten the Project's very viability. (*Id.*). Columbia cannot timely execute its industry standard linear construction plan without a grant of immediate access to and use of the Easement. (*Id.* at ¶ 33).

Moreover, Columbia has already expended significant effort coordinating and scheduling the Project's work, which requires various contractors with particularized expertise, who must execute and coordinate their sequenced work as dictated by the linear construction method. (*Id.* at ¶ 34). While the HDD process requires significant coordinating and scheduling on its own, the particular work to be done on this Tract requires even more rigorous coordination because, among other things, the HDD must pass below the Potomac River—a highly-complex crossing that is unique to the tract on which this Easement is located. (*Id.*). Because more detailed and particularized coordinating and scheduling will be required to properly effectuate the crossing under the Potomac River in compliance with FERC Certificate obligations, and more specialized contractors will be required, immediate access to and use of the Easement is required. (*Id.*).

Additionally, all of the work of the Project must be coordinated to ensure compliance with, among other things, the requirements of the FERC Certificate, the Environmental Conditions listed in the Appendix to the FERC Certificate, and the Occupational Safety and Health Administration. (*Id.* at ¶ 35).

Importantly, the coordination and cost of all such activities is significantly impacted by any "no work" periods. (*Id.* at ¶ 36). Because the Easement represents an integral portion of the HDD, uncertainty regarding access to and use of the Easement, as well as any other deviations from the construction and project-management schedules, prevents the HDD from commencing— *i.e.*, it causes a "no work" period. (*Id.*). That lack of coordination, or the inability to proceed as planned, can prevent Columbia from timely finishing the Project. (*Id.*).

### 3. Irreparable Harm to Columbia and Its Customers Without Immediate Access to and Use of the Easement

Among other things, FERC requires Columbia to adhere to the construction procedures as submitted to FERC in the approval process, as well as to comply with the Environmental Conditions listed in the appendix to the FERC Certificate, all of which currently provide for the completion of construction and making the proposed facilities available for service by the Certificate Expiry Date. (*Id.* at ¶ 37). Due to a combination of permit restrictions, tree and vegetation clearing restrictions, stream crossing restrictions, and practical limitations associated with performing the necessary work at issue during the winter months, the HDD work must be performed between June 15th and March 1st. (*Id.*). Accordingly, to meet its Certificate Expiry Date, Columbia must commence the HDD by no later than November 4, 2019. (*Id.*).

It is anticipated that the HDD work will take approximately 60 to 75 days to complete. (*Id.* at ¶ 38). Furthermore, given the nature of the HDD work, and the high demand for the specialized contractors who perform it, Columbia must give its HDD contractor not less than three months of advance notice of mobilization or risk the very real possibility that the contractors will not be available at the designated time. (*Id.*). Notice to mobilize cannot be given unless and until Columbia has the right to make use of the Easement as, among other things, Columbia would owe its HDD contractor delay damages of $25,000 per day for each day the Right-of-Way was not available after notice is given. (*Id.*). The practical realities associated with the scarcity of available specialized contractors and resources will become even more extreme as the calendar advances through 2019 and into 2020. (*Id.*). The pipeline industry faces a veritable "perfect storm" from a project construction perspective in 2019-2020, a period during which there are not only an unprecedented number of large pipeline projects coming on line for construction, but projects which are clustered geographically in Appalachia and in the central/eastern portion of the United

States – greatly taxing the limited pool of specialized contractors and resources. (*Id.*). Immediate access to and use of the Easement is necessary to ensure that Columbia can complete construction, comply with its obligations, and make the proposed facilities available for service by the FERC deadline. (*Id.*).

As is referenced above, in addition to the Certificate Expiry Date, Columbia also faces the In-Service Deadline. (*Id.* at ¶ 39). Specifically, Columbia is under contractual obligations with a third-party shipper, Mountaineer Gas Company, to deliver long-term natural gas transportation service through the pipeline by November 1, 2020. (*Id.*).

a)     **Harm to Columbia**

For the reasons discussed in the preceding paragraphs, without immediate access to and use of the Easement, Columbia's construction schedule is almost certainly unattainable. (*Id.* at ¶ 40). Likewise, Columbia's ability to complete the Project before the Certificate Expiry Date and to meet its In-Service Deadline would be seriously jeopardized. (*Id.*). If Columbia fails to meet its In-Service Deadline, Columbia will suffer significant economic harm, including, without limitation, losses of approximately $300,000 per month in foregone revenue, unless and until it completes the Project. (*Id.*).

If Columbia does not obtain the right of immediate access, it will prevent the necessary mobilization of Columbia's Project construction contractors (and their subcontractors and materialman), exposing Columbia to, among other things, substantial damages associated with delay and/or loss of qualified contractors to perform the very specialized work associated with the pipeline installation at issue. (*Id.* at ¶ 41).

Missing these deadlines would also have significant consequences beyond the Project at hand. (*Id.* at ¶ 42). In addition to potential damages for loss of its specialized contractors,

Columbia's business reputation with its contractors, both those associated with the Project and others in the industry in general, would be irreparably harmed as a result of any significant delay in the Project. (*Id.* at ¶ 43). For the reasons discussed above, competition to attract and retain qualified specialty pipeline contractors is keen. (*Id.* at ¶ 44). By committing to one project on a projected timeline, contractors are, necessarily, foregoing other opportunities. (*Id.*). Should Columbia be unable to prosecute its work on this Project on its contractually projected and committed timelines, that fact will almost certainly negatively affect Columbia's future negotiations with contractors for both this Project and other projects in the future. (*Id.*). This reputational harm to Columbia's business and goodwill would be real, substantial, and irreparable. (*Id.*).

Similarly, Columbia faces real and substantial reputational harm and loss of goodwill with potential customers should it miss its In-Service Deadline and/or otherwise fail to perform on the Project. (*Id.* at ¶ 45). Should it become known that Columbia could not meet its contractual and FERC imposed deadlines for this Project, customers/shippers on future projects will be unwilling to make the long-term commitments, many of which necessarily span many years, that are necessary for future Columbia projects that require construction of pipeline infrastructure. (*Id.*). They, instead, would commit to Columbia's competitors for future projects. (*Id.*).

### b)      Harm to Columbia's Customer

Delays in completion of the Project will negatively impact Columbia's customer, Mountaineer Gas. (*Id.* at ¶ 46). Mountaineer Gas has committed substantial resources and efforts in anticipation of the service to be provided by the Project. (*Id.* at ¶ 47). More than $35 million has been expended to date. (*Id.*). Among other things, Mountaineer faces reliability concerns with its existing aging infrastructure. (*Id.* at ¶ 48). The Project is designed to alleviate those concerns. (*Id.*).

Unless and until the secure and assured service from the Project is in place, Mountaineer is unable to commit to new customers, and uncertainty as to its ability to provide uninterrupted service to existing customers will continue. (*Id.*).

### c) Harm to Columbia's Customer's Customers

The Project will directly benefit residential, business, and utility customers, as recognized by FERC, by, among other things, serving as a safe, secure, affordable, and reliable source of clean natural gas. (*Id.* at ¶ 49). The additional volume the Project is intended to transport, which will ultimately be used by downstream consumers, such as families and business owners, will be lost to the market until the pipeline becomes operational. (*Id.*).

### d) Harm to Columbia's Third Parties

In addition, the Project will generate jobs in the region through work for local businesses, unions, and contractors, yielding substantial revenues and taxes, as the estimated construction cost of the Project is in excess of $23 million, which could be impacted by delays in the Project, particularly those threatening the viability of the Project itself. (*Id.* at ¶ 50).

For the foregoing reasons, among others, if Columbia were required to wait until the issue of "just compensation" has been fully and finally adjudicated before accessing and making use of the Easement, the very viability of the Project, which has already been vetted and approved by FERC, would be compromised, causing irreparable harm to Columbia, its customer, and its customer's customers. (*Id.* at ¶ 51).

### 4. No Harm from Granting Columbia Immediate Access to and Use of the <u>Easement</u>

In contrast, Defendant will suffer no harm by virtue of the Court's granting of immediate access to and use of the Easement, as the determination of just compensation owed by reason of Columbia's appropriation of the Easement is not affected by immediate access and use. (*Id.* at

¶ 52). Moreover, FERC specifically found that Columbia had taken sufficient measures to minimize the impacts of the project on landowners and communities, as noted in the FERC Certificate. (**Ex. A** to the Complaint, at ¶ 15). FERC also found that there would be no locally or regionally significant impacts on air quality as a result of the Project, and specifically found that HDD drilling under the Potomac and Chesapeake and Ohio Canal Historic Park would not have significant adverse impacts. (**Ex. A** to the Complaint, at ¶ 54). In fact, FERC concluded that a full environmental impact statement was unnecessary because its approval of the Project would not constitute a major federal action significantly affecting the quality of the human environment, so long as the Project is constructed and operated in accordance with Columbia's application and supplements, and in compliance with the environmental conditions in the FERC Certificate. (**Ex. A** to the Complaint, at ¶ 73). Therefore, as Defendant will suffer no harm, there will be no harm from granting Columbia immediate access to and use of the Easement. (Haney Decl. at ¶ 54). The Project will enhance Columbia's ability to meet its new and existing service obligations, serve to ensure continued pipeline safety, and promote the efficiency and reliability of transporting natural gas to the public. (*Id.*).

Columbia also stands ready to deposit into the registry of the Court the amount of its rejected pre-condemnation offer, $5,000, or such other amount as may be deemed appropriate by this Court, together with a bond, pursuant to Fed. R. Civ. P. 65(c), for such additional amount as may be deemed appropriate by this Court. (*Id.* at ¶ 55).

Columbia has, therefore, satisfied all jurisdictional pre-requisites to its instant exercise of eminent domain, and is requesting relief from the Court so that it may immediately begin necessary pre-construction and construction activities in furtherance of the terms of the FERC Certificate.

### III.    ARGUMENT

A condemnor may obtain access to and use of the subject property prior to the award of just compensation. *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004); *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 215 (4th Cir. 2019) (concluding that "we remain bound to follow *Sage*" despite arguments to overrule that decision). Notably, this Court has previously awarded this same relief to Columbia when it has sought to condemn easements for FERC-approved pipeline projects. *See Columbia Gas Transmission, LLC v. 252.071 Acres More or Less*, CV ELH-15-3462, 2016 WL 1248670, at *19 (D. Md. Mar. 25, 2016); *Columbia Gas Transmission, LLC v. 370.393 Acres, More or Less in, Baltimore Cnty., Md., Located on Parcel Identification No. 20-00-013434, Owned By Williams*, No. 1:14-0469-RDB, 2014 WL 5092880, at *1 (D. Md. Oct. 9, 2014); *Columbia Gas Transmission LLC v. 0.85 Acres*, CIV. WDQ-14-2288, 2014 WL 4471541, at *7 (D. Md. Sept. 8, 2014) (finding that Columbia satisfied the requirements for a preliminary injunction, and granting it immediate possession of the easements).

In short, and as more fully addressed below, the predicate finding to an order granting immediate access and use is this Court's determination that the condemnor possesses the substantive right to condemn the Easements. *Sage*, 361 F.3d at 825. Next, the Court must find that the condemnor has satisfied the requisite elements of a preliminary injunction. *Id.* The overwhelming legal precedent and the facts at bar dictate that these issues be resolved in Columbia's favor.

### A.    *Columbia Is Entitled to an Order of Condemnation*

#### 1.    <u>Columbia Has a Substantive Right to Condemn the Easement Pursuant to the NGA</u>

Pursuant to the NGA, 15 U.S.C. § 717, *et. seq.*, the United States government, through

Congress, delegated its power of eminent domain to natural gas companies. Under the NGA, a natural gas company has the substantive right to condemn upon the satisfaction of a three-part test, pursuant to which it must show that: (1) it is a holder of a certificate of public convenience and necessity; (2) it needs to acquire an easement, right-of-way, land, or other property necessary to the operation of its pipeline system; and (3) it has been unable to acquire the necessary property interests from the owner. *See* 15 U.S.C. § 717f(h); *Columbia Gas Transmission, LLC v. 84.53 Acres of Land, More or Less, In Calhoun, Marshall, Ritchie, Tyler, & Wetzel Cntys., W. Virginia*, 310 F. Supp. 3d 685, 689 (N.D.W. Va. 2018); *252.071 Acres More or Less*, 2016 WL 1248670, at *6. As is discussed below, these elements are satisfied here. Columbia, accordingly, is vested with the authority to condemn the Easement.

### a) Columbia Holds a Certificate of Public Convenience and Necessity

As an initial matter, it is beyond dispute that Columbia holds a certificate of public convenience and necessity. *See* **Ex. A** to the Complaint. Indeed, Columbia's FERC Certificate is a matter of public record and is not subject to collateral attack. *252.071 Acres More or Less*, 2016 WL 1248670, at *5 (recognizing that a "FERC Certificate cannot be collaterally attacked in district court" (quoting *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*, 240 F. Supp. 2d 971, 974 (N.D. Ill. 2002))); *see also Columbia Gas Transmission, LLC v. 76 Acres More or Less*, ELH-14-110, 2014 WL 2919349, at *3 n.3 (D. Md. June 25, 2014) (acknowledging that "federal courts across the country have recognized that FERC Certificates are immune from collateral attack," and concluding that Columbia's "right to condemn cannot be contested" because Columbia had proven that it held a valid FERC Certificate). Therefore, the first part of the three-part test for condemnation authority under the NGA has been satisfied.

### b) Condemnation of the Easement Is Necessary to the Operation of the Pipeline

Second, acquiring the Easement is necessary in order to implement Columbia's Project. The Easement sought in this condemnation action, as depicted in Exhibit B to the Complaint, is expressly identified and approved by the FERC Certificate as necessary for the construction, maintenance, operation, alteration, testing, replacement, and repair of the Project. (Haney Decl. at ¶ 24). Columbia cannot construct the Project in accordance with the FERC Certificate without condemning the Easement (*Id.* at ¶¶ 21-26), and therefore, part two of the three-part test for condemnation authority under the NGA is also satisfied. *See 84.53 Acres of Land*, 310 F. Supp. 3d at 691 (concluding that part two was satisfied when "[t]he uncontested evidence in this case demonstrates that the easements sought 'are portions of the route approved by the FERC Certificate as necessary for the construction, maintenance, operation, alteration, testing, replacement, and repair of the Project,' and that 'Columbia cannot construct the Project in accordance with the FERC Certificate without acquiring the [e]asements'").

### c) Columbia Has Been Unable to Acquire the Easement by Contract

Finally, given the very existence of this action, it cannot reasonably be disputed that Columbia has been unable to acquire the necessary Easement by contract. *See USG Pipeline Co. v. 1.74 Acres in Marion Cnty., Tenn.*, 1 F. Supp. 2d 816, 822 (E.D. Tenn. 1998) ("[T]he mere existence of this suit is evidence that [a natural gas company] was unable to acquire the [properties] by contract." (citing *Transcontinental Gas Pipe Line Corp. v. 118 Acres of Land*, 745 F. Supp. 366, 369 (E.D. La.1990))). The NGA imposes no further burden upon Columbia prior to authorizing the exercise of eminent domain. *252.071 Acres More or Less*, 2016 WL 1248670, at *9 (holding that the NGA "does not prescribe the manner in which negotiations must proceed or the form that an offer to purchase the easements must take[; [r]]ather, 'the Natural Gas Act merely requires that Columbia Gas be unable to come to an agreement'") (citations omitted).

Here, as is detailed in Section II.C, *supra*, Columbia has been unable to acquire the necessary Easement by agreement despite its exhaustive efforts to do so. Having been unable to acquire the Easement by contract, Columbia has satisfied part three of the three-part test for condemnation authority and, therefore, has a substantive right to condemn the Easement under the NGA.

**2.** **Columbia Has Complied with the Applicable Requirements of Federal Rule of Civil Procedure 71.1**

In addition to satisfying the three-part test under the NGA, Columbia has complied with the applicable requirements of Federal Rule of Civil Procedure 71.1, which governs federal condemnation proceedings. Columbia's Complaint includes: "(A) the authority for the taking; (B) the uses for which the property is to be taken; (C) a description sufficient to identify the property; (D) the interests to be acquired; and (E) for each piece of property, a designation of each defendant who has been joined as an owner or owner of an interest in it." Fed. R. Civ. P. 71.1(c)(2).

Columbia has, or will have, caused the requisite notice of condemnation to be served personally upon the Defendant named herein, which advises: "(i) that the action is to condemn property; (ii) the interest to be taken; (iii) the authority for the taking; (iv) the uses for which the property is to be taken; (v) that the defendant may serve an answer on the plaintiff's attorney within 21 days after being served with the notice; (vi) that the failure to so serve an answer constitutes consent to the taking and to the court's authority to proceed with the action and fix the compensation; and (vii) that a defendant who does not serve an answer may file a notice of appearance." *See* Fed. R. Civ. P. 71.1(d)(2)(A); Fed. R. Civ. P. 71.1(c). A copy of the form of the Notice is attached to Columbia's Complaint as **Exhibit C**.

Columbia has, therefore, satisfied the requirements of Rule 71.1. *See 370.393 Acres*, 2014 WL 5092880, at *4 (concluding that Columbia satisfied its burden under Rule 71.1 under similar

circumstances). Having satisfied the requirements of both the NGA and Rule 71.1, Columbia is entitled to condemn the Easement, and therefore, this Court should issue its Order of Condemnation as prayed for in Columbia's Complaint and Motion. *252.071 Acres More or Less*, WL 1248670, at *4–10 (holding that Columbia had the right to condemn under similar circumstances).

**B.      *Columbia Is Entitled to Immediate Access and Use Through a Preliminary Injunction***

Having first established its substantive right to condemn the Easement, Columbia next requests that this Court grant it immediate access to and use of the Easement by way of a preliminary injunction. "A preliminary injunction is, of course, appropriate to grant intermediate relief of the same character as that which may be granted finally." *Sage*, 361 F.3d at 823–24 (citing *De Beers Consol. Mines, Ltd. v. U.S.*, 325 U.S. 212, 220 (1945)). Fourth Circuit precedent makes clear that once this Court determines that Columbia has a substantive right to condemn the Easement, it has the inherent power to grant immediate access to and use of the Easement through the issuance of a preliminary injunction. *Id.* at 828; *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 215 (4th Cir. 2019); *see also 252.071 Acres More or Less*, 2016 WL 1248670, at *10–12 (recognizing that "[i]n this circuit, once a district court determines that a natural gas company possesses the right to condemn property under the NGA, the court may grant the company immediate possession in the form of a preliminary injunction, so long as the company establishes its entitlement to a preliminary injunction").

In fact, as recently noted by another district court in a condemnation proceeding, district courts within the Fourth Circuit routinely grant requests for a preliminary injunction under virtually identical circumstances. *See Mountain Valley Pipeline, LLC v. An Easement to Construct, Operate & Maintain a 42-inch Gas Transmission Line Across Properties in Cntys. of Nicholas,*

*Greenbrier, Monroe, & Summers, W. Virginia*, 2:17-CV-04214, 2018 WL 1004745, at *8 (S.D.W.

Va. Feb. 21, 2018) (the "S.D.W. Va. Mountain Valley Pipeline Opinion") (collecting cases).[2]

In the S.D.W. Va. Mountain Valley Pipeline Opinion, the court recognized the "paradox

that the NGA presents, that relief as extraordinary as a preliminary injunction is granted so

ordinarily," but the court found that, paradox notwithstanding, a preliminary injunction was

warranted as "there are no unique circumstances that would place Mountain Valley outside the

ambit of those cases" it had previously collected and referenced. *S.D.W. Va. Mountain Valley*

*Pipeline Opinion*, 2018 WL 1004745, at *8. In so holding, the court went on to explain that, in

fact, "the circumstances presented by an NGA condemnation and immediate possession action

appear to be nearly uniform." *Id.* "Such uniformity is doubtlessly the designed product of the

practicalities of constructing a natural gas pipeline combined with the finely-wrought procedures

before FERC." *Id.* Therefore, as the court reasoned, "[p]erhaps, then, it makes sense that the results

would also be the same." *Id.* For the reasons discussed herein, and in Columbia's pleadings and

other moving papers, it similarly makes sense that the result here also would be the same as it was

in the S.D.W. Va. Mountain Valley Pipeline Opinion and the numerous cases noted therein,

wherein the same injunctive relief sought herein was granted under nearly identical circumstances.

---

[2] Including *Mountain Valley Pipeline, LLC v. Simmons*, No. 1:17CV211, 2018 WL 701297, at *12–19 (N.D. W. Va. Feb. 2, 2018); *Mountain Valley Pipeline, LLC v. Easements to Construct, Operate and Maintain a Natural Gas Pipeline Over Tracts of Land in Giles Cnty.*, No. 7:17-cv-00492, 2018 WL 648376, at *12–19 (W.D. Va. Jan. 31, 2018); *Dominion Carolina Gas Transmission, LLC v. 1.169 Acres, in Richland Cnty.*, 218 F. Supp. 3d 476 (D.S.C. 2016); *Rover Pipeline, LLC v. Rover Tract No(s) WV-DO-SHB-011.510-ROW-T*, No. 1:17CV18, 2017 WL 5589163 (N.D. W. Va. Mar. 7, 2017); *252.071 Acres*, 2016 WL 1248670; *0.85 Acres*, 2014 WL 4471541; *Transcon. Gas Pipe Line Co. v. Permanent Easement Totaling 2.322 Acres*, No. 3:14-cv-00400-HEH, 2014 WL 4365476 (E.D. Va. Sept. 2, 2014); *Columbia Gas Transmission, LLC v. 76 Acres More or Less, in Baltimore and Harford Cntys.*, No. ELH-14-0110, 2014 WL 2960836 (D. Md. June 27, 2014), *aff'd*, *vacated in part on other grounds*, *remanded*, 701 Fed. App'x. 221 (4th Cir. 2017).

To obtain a preliminary injunction, Columbia must establish that (1) it is "likely to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) the "balance of equities tips in [the movant's] favor," and (4) "an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 215-22 (4th Cir. 2019); *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013). Because Columbia satisfies each element of this test, it is entitled to a preliminary injunction.

### 1.    Columbia Will Succeed on the Merits

In this condemnation action, the only two issues before the Court are:  (i) is Columbia entitled to condemn the Easement sought in its Complaint, and (ii) if so, how much compensation must Columbia pay by reason of its acquisition of the rights condemned.

For the reasons discussed more fully above, the first issue is easily resolved. Columbia has satisfied the requirements of 15 U.S.C. § 717f(h) and is authorized to condemn the Easement at issue. The NGA expressly permits a holder of a FERC Certificate to acquire necessary property interests "by the exercise of the right of eminent domain" if it is unable to reach an agreement with the landowner. *See* 15 U.S.C. § 717f(h). And, for the reasons articulated in Section III.A, Columbia unequivocally satisfies these criteria. Moreover, the Easement sought in this condemnation action, as depicted on **Exhibit B**, is expressly identified and authorized in the FERC Certificate and ancillary documents as necessary for the Project. (Haney Decl. at ¶ 24). As a result, Columbia has the right to condemn the Easement at issue and will succeed on the merits, and therefore, Columbia has satisfied the first factor. *See Sage*, 361 F.3d at 829–30; *see also Mountain Valley Pipeline*, 915 F.3d 197, 216 (4th Cir. 2019) (recognizing that this element is satisfied when Columbia's right to condemn is established); *252.071 Acres More or Less*, 2016 WL 1248670, at *13 (same).

The second issue—just compensation—need not be resolved prior to issuance of a preliminary injunction. As has been recognized by the Fourth Circuit, the "Constitution does not prevent a condemnor from taking possession of properties before just compensation is determined and paid." *Sage*, 361 F.3d at 824. Columbia will, therefore, succeed on the merits of its Complaint.

### 2. <u>Columbia Will Suffer Irreparable Harm in the Absence of Injunctive Relief</u>

Columbia will be irreparably harmed absent injunctive relief and has no other remedy at law. Specifically, Columbia will suffer irreparable harm as a result of the delay and substantial expense that would flow from its inability to meet its construction schedule. This Court previously found irreparable harm to result from such scheduling modifications, succinctly explaining:

> It is clear that the lack of a preliminary injunction would require Columbia to modify its construction schedule, deviate from its usual course, expend additional resources, and jeopardize its ability to satisfy its obligations under both its private contracts and its FERC Certificate. It is of no moment that Columbia could, in theory, construct Line MB in a disjointed manner, temporarily skipping Defendants' parcels of land and then returning to them after a trial is held in this case. Such a course of action would be wasteful and inefficient, and it would serve no purpose other than to delay the inevitable.

*Columbia Gas Transmission, LLC v. 76 Acres More or Less*, CIV.A. ELH-14-0110, 2014 WL 2960836, at *15 (D. Md. June 27, 2014), *aff'd in part*, *vacated in part*, *remanded sub nom. Columbia Gas Transmission, LLC v. 76 Acres, More or Less, in Baltimore & Harford Cntys., Maryland*, 701 Fed. App'x. 221 (4th Cir. 2017).

In factually analogous circumstances, the Fourth Circuit, as well as other district courts, have held that irreparable harm includes undue delay causing significant financial harm to a pipeline company and its putative customers. *See Sage*, 361 F.3d at 828–29 (affirming determination of irreparable harm as evidenced by (i) delay to the construction schedule; (ii) the need for pipelines to be constructed in sequential, linear phases; (iii) waste and inefficiencies attendant to "skipping" certain parcels; (iv) the likelihood that delay would jeopardize the project

meeting its FERC's deadline; and (v) that delay could cause the pipeline to breach its contracts with customers, otherwise negatively impact its customers, and hinder economic development efforts); *see also 252.071 Acres More or Less*, 2016 WL 1248670, at *17 (the inability to stay on schedule and meet the time requirements contemplated by FERC, resulting in delayed delivery to customers, constituted irreparable harm).[3]

Here, absent injunctive relief, Columbia would have to wait until the issue of just compensation is fully and finally adjudicated before entering and making use of the Easement, compromising the very viability of the Project. (Haney Decl. at ¶ 51); *see also Mountain Valley Pipeline*, 915 F.3d at 216–17 (finding that a pipeline company would likely be unable to construct a pipeline without a preliminary injunction due to the "combined effect" of the "construction of a pipeline [being] a lengthy and complex process" and the determination of just compensation "by itself [being] a lengthy and complex process," which the court concluded was an irreparable injury to the pipeline company); *252.071 Acres More or Less*, 2016 WL 1248670, at *15 (finding "fanciful" the argument that "Columbia could litigate its claims and then build Line MB before [the expiry deadline]" in light of "the delay inherent in litigation of this sort," "the Court's busy docket," and the "countless other cases that also require [its] time and attention"); *84.53 Acres of*

---

[3] *See also 84.53 Acres of Land*, 310 F. Supp. 3d at 693 (holding that Columbia demonstrated irreparable harm in the form of "economic harm," a holding that it found to be "consistent with the Fourth Circuit's holding in *Sage*"); *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, & Maintain a 24-inch Gas Transmission Pipeline Across Properties in Greene Cnty.*, No. 3:07-CV-00028, 2007 WL 2220530, at *4 (W.D. Va. July 31, 2007) (concluding that Columbia "will suffer irreparable harm [because] it will be unable to stay on schedule for the construction of the Pipelines and, therefore, may not be able to meet the time requirements contemplated by the FERC Certificate and will delay delivery of natural gas to customers who need it"); *Mountain Valley Pipeline, LLC v. An Easement to Construct, Operate & Maintain a 42-inch Gas Transmission Line Across Properties in Cntys. of Nicholas, Greenbrier, Monroe, & Summers, W. Virginia*, 2:17-CV-04214, 2018 WL 1004745, at *10 (S.D.W. Va. Feb. 21, 2018) (finding "economic losses" to a pipeline company to be "irreparable because they cannot be recovered at the end of the litigation").

*Land*, 310 F. Supp. 3d at 694 (acknowledging that, even though "the FERC deadline is not yet looming," irreparable harm could result because "this litigation may not be complete sufficiently in advance of the FERC deadline").

The Project here calls for an approximately 4,294-foot horizontal direction drill ("HDD") to pass beneath multiple tracts of real property, including the tract on which the Easement is located. Without immediate access to and use of the Easement, Columbia would likely not be able to employ the linear construction method for the Project, which is dictated by industry standard practices. (Haney Decl. at ¶¶ 31-33). The use of any non-linear construction method is extremely inefficient, vastly more costly, and, often, renders it infeasible to construct the pipeline or perform the HDD work that is required by the FERC Certificate. (*Id.* at ¶ 32); *see also Sage*, 361 F.3d at 829 ("To require [the pipeline] to build up to a parcel of land [it] do[es] not possess, skip that parcel, and then continue on the other side would prove wasteful and inefficient.") (citation omitted); *84.53 Acres of Land*, 310 F. Supp. 3d at 693–94 (acknowledging the harms caused by Columbia being "forced to break from this [linear] method of construction" and finding those harms to be further evidence of irreparable harm to Columbia).

Moreover, among other things, FERC requires Columbia to adhere to the construction procedures as submitted to FERC in the approval process, as well as to comply with the Environmental Conditions listed in the appendix to the FERC Certificate, all of which currently provide for the completion of construction and making the proposed facilities available for service by July 19, 2020—the Certificate Expiry Date. (Haney Decl. at ¶ 37). Due to a combination of permit restrictions, tree and vegetation clearing restrictions, stream crossing restrictions, and practical limitations associated with performing the necessary work at issue during the winter months, the HDD work must be performed between June 15th and March 1st. (*Id.*). Accordingly,

to meet its Certificate Expiry Date, Columbia must commence the HDD by no later than November 4, 2019. (*Id.*).

It is anticipated that the HDD work will take approximately 60 to 75 days to complete. (*Id.* at ¶ 38). Furthermore, given the nature of the HDD work, and the high demand for the specialized contractors who perform it, Columbia must give its HDD contractor not less than three months of advance notice of mobilization or risk the very real possibility that the contractors will not be available at the designated time. (*Id.*). Notice to mobilize cannot be given unless and until Columbia has the right to make use of the Easement as, among other things, Columbia would owe its HDD contractor delay damages of $25,000 per day for each day the Right-of-Way was not available after notice is given. (*Id.*). The practical realities associated with the scarcity of available specialized contractors and resources will become even more extreme as the calendar advances through 2019 and into 2020. (*Id.*). The pipeline industry faces a veritable "perfect storm" from a project construction perspective in 2019-2020, a period during which there are not only an unprecedented number of large pipeline projects coming on line for construction, but projects which are clustered geographically in Appalachia and in the central/eastern portion of the United States – greatly taxing the limited pool of specialized contractors and resources. (*Id.*).

In short, critical strategic planning is required to schedule and coordinate the performance of the numerous activities related to the HDD. (*Id.* at ¶ 32). While the HDD process requires significant coordinating and scheduling on its own, the particular work to be done on this Tract requires even more rigorous coordination because, among other things, the HDD must pass below the Potomac River—a highly-complex crossing that is unique to the tract on which this Easement is located. (*Id.* at ¶ 34). Columbia has already expended significant effort coordinating and scheduling the Project's work, which requires various contractors with particularized expertise,

who must execute and coordinate their sequenced work as dictated by the linear construction method described above. (*Id.*). Any uncertainty regarding access to and use of the Easement, as well as any other deviations from the construction and project-management schedules, prevents the HDD from commencing, thereby hindering the critical strategic planning and coordination and potentially preventing Columbia from timely finishing the Project. (*Id.* at ¶ 36).

Accordingly, without immediate access to and use of the Easement, Columbia's construction schedule is almost certainly unattainable, and Columbia's ability to complete the Project before the Certificate Expiry Date and to meet its In-Service Deadline would be seriously jeopardized. (*Id.* at ¶ 40). Immediate access to and use of the Easement is necessary to ensure that Columbia can complete construction, comply with its obligations, and make the proposed facilities available for service by the FERC deadline. (*Id.*); *Mountain Valley Pipeline*, 915 F.3d at 217; *see also 252.071 Acres More or Less*, 2016 WL 1248670, at *16-17 (concluding that "Columbia has demonstrated that, without immediate access to the easements, it will be unable to complete Line MB before its current FERC Certificate expires in November 2017," and holding that Columbia will suffer irreparable harm if it is not permitted to immediately construct the at-issue portion of the pipeline).

If Columbia fails to meet its In-Service Deadline, Columbia will suffer significant economic harm, including, without limitation, losses of approximately $300,000 per month in foregone revenue, unless and until it completes the Project. (Haney Decl. at ¶ 40). Additionally, if Columbia does not obtain the right of immediate access, it will prevent the necessary mobilization of Columbia's Project construction contractors (and their subcontractors and materialman), exposing Columbia to, among other things, substantial damages associated with delay and/or loss of qualified contractors to perform the very specialized work associated with the pipeline

installation at issue. (*Id.* at ¶ 41). *See Mountain Valley Pipeline*, 915 F.3d at 218 (reaffirming that "losses flowing from delays in pipeline service and contractual breach" are the types of harms and losses to support a finding of irreparable injury that justifies immediate access to condemned properties); *see also 0.85 Acres*, 2014 WL 4471541, at *6 ("Many courts [in similar cases] have held that undue delay [and] financial burden ... satisfy the irreparable harm requirement.").

Missing these deadlines would also have significant consequences beyond the Project at hand. (*Id.* at ¶ 42). In addition to potential damages for loss of its specialized contractors, Columbia's business reputation with its contractors, both those associated with the Project and others in the industry in general, would be irreparably harmed as a result of any significant delay in the Project. (*Id.* at ¶ 43). For the reasons discussed above, competition to attract and retain qualified specialty pipeline contractors is keen. (*Id.* at ¶ 44). By committing to one project on a projected timeline, contractors are, necessarily, foregoing other opportunities. (*Id.*). Should Columbia be unable to prosecute its work on this Project on its contractually projected and committed timelines, that fact will almost certainly negatively affect Columbia's future negotiations with contractors for both this Project and other projects in the future. (*Id.*). This reputational harm to Columbia's business and goodwill would be real, substantial, and irreparable. (*Id.*).

Similarly, Columbia faces real and substantial reputational harm and loss of goodwill with potential customers should it miss its In-Service Deadline and/or otherwise fail to perform on the Project. (*Id.* at ¶ 45). Should it become known that Columbia could not meet its contractual and FERC imposed deadlines for this Project, customers/shippers on future projects will be unwilling to make the long-term commitments, many of which necessarily span many years, that are necessary for future Columbia projects that require construction of pipeline infrastructure. (*Id.*);

*see also Mountain Valley Pipeline*, 915 F.3d at 219 (explaining that "when a gas company is governed by FERC's approval process and in-service deadline, early contractual obligations are not 'self-inflicted' in the relevant sense" because "lining up service contracts years in advance is 'encourage[d], if not require[d]' by a FERC approval process"). These customers/shippers, instead, would commit to Columbia's competitors for future projects. (*Id.*). Such immeasurable, non-compensable loss most certainly constitutes irreparable harm. *See, e.g.*, *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."), *abrogated on other grounds by Winter v. Natural Res.*, 555 U.S. 7 (2008); *see also Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less*, 768 F.3d 300, 316 (3d Cir. 2014) (holding that financial harm, along with "safety and potential liability concerns," constituted irreparable harm); *S.D.W. Va. Mountain Valley Pipeline Opinion*, 2018 WL 1004745, at *10 (acknowledging that "the case law recognizes that Mountain Valley's alleged harms, including economic and non-economic, are irreparable").

For these reasons, Columbia will certainly suffer irreparable harm if its Motion is denied.

### 3. The Balance of Equities Weighs Substantially in Columbia's Favor

The balance of equities also demonstrably weighs in Columbia's favor. Allowing Columbia immediate access to and use of the Easement will not harm Defendant. In fact, in light of the ample safeguards present, it is difficult for any landowner, such as Defendant here, to assert any harm resulting from immediate access under the NGA. *Sage*, 361 F.3d at 826 ("[W]hen a gas company initiating a condemnation action under the NGA seeks immediate possession by preliminary injunction, there are sufficient safeguards in place to protect the landowner."); *S.D.W. Va. Mountain Valley Pipeline Opinion*, 2018 WL 1004745, at *10 (finding the balance of hardships

tipped in the pipeline company's favor under similar circumstances after noting that "[i]n *Sage*, the Fourth Circuit conclusively spoke on this issue in the context of NGA condemnation actions").

Indeed, "[t]he Constitution does not prevent a condemnor from taking possession of property before just compensation is determined and paid." *Sage*, 361 F.3d at 824. "As the Supreme Court said a long time ago, the Constitution 'does not provide or require that compensation be paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed.'" *Id.* (citing *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890)). Here, pursuant to Rule 71.1 of the Federal Rules of Civil Procedure, Columbia stands ready to deposit into the registry of the Court the amount of its rejected pre-condemnation offer, $5,000, or such other amount as may be deemed appropriate by this Court, together with a bond, pursuant to Fed. R. Civ. P. 65(c), for such additional amount as may be deemed appropriate by this Court, to protect Defendant. Thus, there are sufficient safeguards in place to preclude any harm to Defendant. *See Mountain Valley Pipeline*, 915 F.3d at 220 (recognizing that "any harm that otherwise might be experienced because of a gap in time between possession and compensation is addressed by the right of landowners to draw upon court-ordered deposits during the pendency of condemnation proceedings"); *252.071 Acres More or Less*, 2016 WL 1248670, at *17 (concluding that "the Landowners' interests will be protected" because Columbia would pay "a sum equal to Columbia's proposal valuation of each taking" into the Registry of the Court); *0.85 Acres*, 2014 WL 4471541, at *7 (holding that landowner would not suffer any greater harm from granting immediate possession because the condemnor "offered to post bond or place its estimation of the easements' value into the court's registry").

Notably, Columbia, and its parent company, TransCanada Corporation, are long-established businesses with substantial holdings, operations, revenues, and resources. (Haney Decl. at ¶ 56). If just compensation is ultimately and finally determined to be greater than the amount of Columbia's deposit, Columbia will promptly pay the differential in order to obtain legal title. (*Id.* at ¶ 55); *Sage*, 361 F.3d at 825–26 ("In an NGA condemnation where early possession is granted to a gas company, the landowner is protected . . . by 'the rule that title does not pass until just compensation has been ascertained and paid' . . . . Therefore, if the gas company's deposit (or bond) is less than the final compensation awarded, and the company fails to pay the difference within a reasonable time, 'it will become a trespasser, and liable to be proceeded against as such.'" (internal citations omitted)). Accordingly, the assurances that Defendant will receive just compensation are far beyond adequate.

Moreover, FERC specifically found that Columbia had taken sufficient measures to minimize the impacts of the project on landowners and communities, as noted in the FERC Certificate. (**Ex. A** to the Complaint, at ¶ 15). Defendant, therefore, will not be harmed by Columbia's immediate access. FERC also found that there would be no locally or regionally significant impacts on air quality as a result of the Project, and specifically found that HDD drilling under the Potomac and Chesapeake and Ohio Canal Historic Park would not have significant adverse impacts. (**Ex. A** to the Complaint, at ¶ 54). In fact, FERC concluded that a full environmental impact statement was unnecessary because its approval of the Project would not constitute a major federal action significantly affecting the quality of the human environment, so long as the Project is constructed and operated in accordance with Columbia's application and supplements, and in compliance with the environmental conditions in the FERC Certificate. (**Ex. A** to the Complaint, at ¶ 73).

Therefore, as Defendant will suffer no harm, there will be no harm from granting Columbia immediate access to and use of the Easement, and the Project will enhance Columbia's ability to meet its new and existing service obligations, serve to ensure continued pipeline safety, and promote the efficiency and reliability of transporting natural gas to the public. (Haney Decl. at ¶ 54). Taken with the fact that Columbia will be irreparably harmed absent the injunction, the balance of equities demonstrably weighs in Columbia's favor. *See Mountain Valley Pipeline*, 915 F.3d at 221 (finding this prong under *Winter* satisfied when "there was no evidence presented of harm to the Landowners resulting from the injunction, as opposed to the pipeline itself, that would outweigh the harm that Mountain Valley would likely suffer absent an injunction").

### 4.     The Preliminary Injunction Is in the Public Interest

In granting the FERC Certificate, FERC, *inter alia*, determined that the Project is necessary to serve the public interest. *Sage*, 361 F.3d at 830 (determining that a FERC certificate is imbued with the public interest pursuant to the authority granted under the NGA); *S.D.W. Va. Mountain Valley Pipeline Opinion*, 2018 WL 1004745, at *11 (finding "*Sage*'s conclusion on the public interest [to be] dispositive here"); *84.53 Acres of Land*, 310 F. Supp. 3d at 696 (recognizing that, by issuing the FERC Certificate, FERC had already concluded that "there is a 'need for the [Project],' and that the 'benefits to the market outweigh any adverse economic effects on existing shippers, other pipelines and their captive customers, and landowners and surrounding communities,'" and making clear that "[t]he Court will not second-guess FERC's determination that Columbia's project will benefit the public need for natural gas"). Granting Columbia's request for a preliminary injunction, accordingly, is in the public interest.

Moreover, FERC's determination in this case is not subject to challenge here. *Mountain Valley Pipeline*, 915 F.3d at 222 (dismissing a defendant's "challenge to the Certificate itself" in

its attempt to refute this prong because such a challenge "must be raised before the Commission and then, if necessary, the appropriate court of appeals, not by way of collateral attack in a condemnation proceeding"); *252.071 Acres More or Less*, 2016 WL 1248670, at *5 (recognizing that a "FERC Certificate cannot be collaterally attacked in district court" (quoting *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*, 240 F. Supp. 2d 971, 974 (N.D. Ill. 2002))). A district court's jurisdiction is limited to ordering condemnation of property in accordance with a valid FERC Certificate. *Id.* ("The district court's role is simply to evaluate the scope of the Certificate and to order condemnation of property as authorized in the Certificate.").

It is also clear that the expeditious completion of a pipeline is in the public interest. *See Sage*, 361 F.3d at 830; *84.53 Acres of Land*, 310 F. Supp. 3d at 696 (finding an injunction to be in the public interest because "[t]here can be no dispute that delaying Columbia's completion of the project will delay the introduction of the benefits identified by FERC"). In fact, "Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices." *Sage*, 361 F.3d at 830. As in *Sage*, the Project here "will make gas available to consumers, and it will help in the efforts of local communities to attract much-needed new business. On a larger scale, the pipeline will make gas available for electric power generation plants. A delay in construction would postpone these benefits." *Id.*; *see also 252.071 Acres More or Less*, 2016 WL 1248670, at *16 (finding a preliminary injunction appropriate after finding that, among other things, "asking Columbia to delay in constructing [the pipeline] is only likely to enhance the danger that Columbia's customers will be left without reliable, safe natural gas service").

As already determined by the FERC, the public interest clearly favors the expeditious completion of the Project. *See* **Ex. A** to the Complaint, at ¶ 16. Additionally, the Project will

directly benefit residential, business, and utility consumers in multiple communities by, *inter alia*, serving as a safe, secure, affordable, and reliable source of clean natural gas. (Haney Decl. at ¶ 49). The Project will also generate Maryland jobs through work for Maryland businesses and contractors, yielding substantial revenues and taxes, as the estimated construction cost of the Project is in excess of $23 million. (*Id.* at ¶ 50). Conversely, failure to issue an injunction will directly harm the public by obstructing these benefits and contravening the express intent of Congress under the NGA. (*Id.* at ¶¶ 46-51). As it is in the public interest, this Court should grant Columbia a preliminary injunction for immediate possession of the Easement. *See Mountain Valley Pipeline*, 915 F.3d at 222 (finding the public interest factor favored preliminary relief "because delaying construction would delay – or, if Mountain Valley were unable to meet its FERC deadline, frustrate entirely – the public benefits identified by the Commission").

## IV.    CONCLUSION

Columbia has the substantive right to condemn the Easement under the NGA because (i) it holds the FERC Certificate, (ii) acquisition of the Easement is necessary to the operation of the Project, and (iii) it has been unable to acquire the Easement. Columbia has also complied with the applicable requirements of Rule 71.1. Columbia is also entitled to immediate access to and use of the Easement by way of a preliminary injunction, as set forth above.

Based on the foregoing, Columbia prays that this Court issue an Order of Condemnation and grant Columbia's Motion for Preliminary Injunction, providing Columbia with immediate access to and use of the Easement.

Dated: May 16, 2019                    Respectfully submitted,

By:    /s/ _____
       Alan M. Rifkin (MD Bar No. 11562)
       Barry L. Gogel (MD Bar No. 25495)
       Rifkin Weiner Livingston, LLC
       225 Duke of Gloucester Street
       Annapolis, Maryland 21401
       T:  410.269.5066
       F:  410.269.1235
       arifkin@rwllaw.com
       bgogel@rwllaw.com

       John Haug (to be admitted pro hac vice)
       David Fedder (to be admitted pro hac vice)
       Michael Harriss (to be admitted pro hac vice)
       Dentons US LLP
       211 N. Broadway Suite 3000
       St. Louis, MO 63102
       T:  314.259.1800
       F:  314.259.5959
       john.haug@dentons.com
       david.fedder@dentons.com
       michael.harriss@dentons.com

       *Attorneys for Plaintiff Columbia Gas Transmission, LLC*

109895920