**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

COLUMBIA GAS TRANSMISSION, LLC, )
                                )
    vs.                         )    CRIMINAL CASE NO.
                                )    1:19-cv-01444-GLR
12 ACRES OF LAND, More or Less, )
in Washington County, Maryland, )
State of Maryland, Department of)
Natural Resources,              )
    Defendant.                  )
_____

Wednesday, August 13, 2019
Courtroom 7A
Baltimore, Maryland

**MOTION FOR PRELIMINARY INJUNCTION**

**BEFORE**:  THE HONORABLE GEORGE LEVI RUSSELL, III, Judge

**For the Plaintiff**:

David Fedder, Esquire
Arnold Weiner, Esquire
Michael Harriss, Esquire

Attorneys for Columbia Gas Transmission, LLC

**For the Defendant**:

Adam Snyder, Esquire
John Howard, Jr., Esquire
_____

**Reported by**:

Nadine M. Gazic, RMR, CRR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, Maryland  21201
410-962-4753

1      **P R O C E E D I N G S**

2           **THE CLERK:**  The matter now pending before this Court

3      is Civil Docket Number GLR-19-1444, *Columbia Gas Transmission,*

4      *LLC versus 12 Acres of Land More or Less in Washington County*

5      *Maryland, State of Maryland, Department of Natural Resources*.

6      Counsel for the plaintiff --

7           **THE COURT**  .12 Acres of Land.

8           **THE CLERK:**  Counsel for the plaintiff, David Fedder,

9      Michael Harriss and Arnold Weiner.  Counsel for the defendant,

10     Adam Snyder and John Howard, Jr.  This matter now comes before

11     the Court for the purpose of a preliminary injunction.

12          **THE COURT:**  All right, once again, good morning,

13     Counsel and welcome.  As indicated by the courtroom deputy,

14     we're here for the purposes of a hearing on whether or not

15     Columbia Gas should be afforded preliminary injunctive relief

16     to be allowed to begin to construct a pipeline, an eight-inch

17     natural gas pipeline under state-owned property which is a

18     rails and trails roadway or area totaling .12 acres.  The

19     project itself, the property in question is adjacent directly

20     to the Potomac River in this matter.

21          I have had the opportunity to review the

22     well-written briefs in this matter and so I will start, I

23     guess, with Columbia Gas in this case to argue for me why it

24     is that they believe they've got a likelihood of success on

25     the merits given the Supreme Court's extreme skepticism

1    regarding the delegation of authority, their vested authority,

2    as well as the Eleventh Amendment immunity provisions.

3          So Mr. Fedder, I will let you sort of take the lead.

4    I have a tendency especially when we're talking about sort of

5    emergency injunctive preliminary relief, since I have had the

6    opportunity to review the briefs in the case and we had a

7    brief teleconference regarding scheduling, I believe I'm

8    pretty conversant on the facts, but I may end up interjecting,

9    interrupting you to hone in on some of the facts that I think

10   that may be persuasive and/or determinative in the matter.  So

11   I'll be more than happy to hear from you, sir.

12          **MR. FEDDER:**  Thank you, Your Honor.

13          **THE COURT:**  By the way, since -- and go ahead and

14   get set up -- but since the briefing in this case, has the

15   Federal Government acquired the other two -- other three

16   tracts of park property in this case?

17          **MR. FEDDER:**  No, Your Honor.  That process is

18   ongoing.  There have been further substantive -- there's more

19   progress that has been made and some further requests came

20   from the Federal Government.  And what they had asked for as

21   of last Monday or -- well, Monday, it was yesterday.  Those

22   requests have been met and it's progressing along.

23          **THE COURT:**  Okay, so with that in mind, the project

24   can't move forward until those tracts are acquired.  So how is

25   it -- isn't that sort of a pre-condition to the irreparable

1    harm argument that you're making?

2        **MR. FEDDER:**  The project itself cannot be

3    constructed, that's true, Your Honor.  But we do cite to case

4    law in our memorandum in support and in our reply brief that

5    states for the proposition you can't wait for the point of

6    beginning until we have everything, you have to pursue

7    everything in parallel paths.  And that was recognized

8    recently in the Southern District of West Virginia.  I think

9    it was by Judge Copenhaver in the Mountain Valley Pipeline

10   case and it's been recognized in other districts as well

11   because by the nature of these types of cases, there are so

12   many permits, so many approvals that are necessary, that if we

13   had to wait until everything was in hand before we could seek

14   the last piece, there would never be a last piece and all

15   timelines would be -- would be unachievable.

16       **THE COURT:**  Now let me ask you one other question --

17   well, one of several other questions.  Has your client -- and

18   I understand if you decline to respond to this -- but it seems

19   to me in light of the *Chao* case, that this exercise and the

20   uphill battle which you may end up having to climb related to

21   private parties suing states and the immunity provisions are

22   eliminated if I believe the Secretary of the Interior or the

23   Federal Government intervenes like they did in *Chao*, right?  I

24   mean, and in fact, a review of the State's briefs seem to if

25   not -- I'm not going to put words in their mouth -- but it

1    seems to almost, almost do everything but concede it that if

2    the Federal Government comes in and takes political

3    responsibility for this project, then we're not here.

4        **MR. FEDDER:**  If it were only so, Your Honor, that

5    would be wonderful.  And you cannot necessarily just take my

6    word for it, but you can look back through the FERC dockets

7    and through the 70-plus years of practice in Natural Gas Act.

8        The Federal Government does not condemn for natural

9    gas pipelines.  The Natural Gas Act gives condemnation

10   authority to private pipeline companies upon certification by

11   the Federal Government through the very complicated and

12   prolonged FERC regulatory process which gives them the Federal

13   Government's delegated right, sovereign right of eminent

14   domain.

15       **THE COURT:**  They've never done that before in a

16   natural gas pipeline.

17       **MR. FEDDER:**  The Federal Government, to my

18   knowledge, Your Honor, has never been -- we've looked.

19       **THE COURT:**  And the State of Maryland has never

20   asserted the immunity provisions ever before.

21       **MR. FEDDER:**  That's true.  And if I can, I was going

22   to get back to _Chao_ in the kind of back end of our discussion.

23       **THE COURT:**  Sure.

24       **MR. FEDDER:**  Because we really have the starting

25   point where we were going to kick off here with Your Honor's

question was why is the State wrong and why are we irreparably
harmed in face of their sovereign immunity argument.  And what
it comes down to is why are they arguing sovereign immunity?
And their sovereign immunity argument comes because of a
recent, a very recent 2017 case from Texas, the _Sabine_
decision that was handed down by a District Court in Texas,
under Fifth Circuit Law, misapplying _Blatchford_ after
correctly looking to U.S. Supreme Court law.  So some of this
is going to be new and I know the Court is well studied under
the briefing that's been submitted, but the posture is a
little bit confused by virtue of the way this came before the
Court.

So we moved for our preliminary injunction, the
State moved to dismiss.  We filed our reply.  The State's last
word was their reply to our motion.  They had the last word.
Their last word went into substantially more depth about the
basis for their motion.  And in that motion they did two
things that caused us to do a much deeper dive to be able to
better come today to explain to the Court why we believe their
position is completely unfounded.  They took the U.S. Supreme
Court case of _Carmack_ and they take pieces of it out of
context and mischaracterize it and cite that as one of the
bases for why they are right, they say.  And the other thing
they do is they basically cut and paste from the _Sabine_
decision in the Fifth Circuit and say, _Sabine_ said pipeline

 1    company loses in this situation, so a pipeline company loses

 2    in this situation.

 3         So that caused us necessarily to go back and really

 4    look at *Carmack*.  And when you look at *Carmack* it takes you to

 5    the *U.S. versus Kohl* case from the late 1800s which first

 6    recognized and really explained where the federal power and

 7    the federal right of eminent domain comes from.  It's not from

 8    the Constitution, it's not from the consent of the states.

 9    Kohl explains it is an inherent right in the sovereign that is

10    not from the Constitution.  It wasn't given to the Federal

11    Government and it's not dependent upon the consent from the

12    states.

13         So with that lead in, Judge, just to kind of outline

14    where our argument is going to go, we think that the State's

15    position is wrong for 3 reasons, three primary reasons:

16         First, *Sabine*, the case they primarily rely on, the

17    only case to find that a natural gas company cannot condemn a

18    state-owned property under the Natural Gas Act, is wrong

19    because it misapplies the U.S. Constitutional Law --

20         **THE COURT:**  Well, a private entity.  Let's look at

21    it from a private citizenry standpoint.  I know it doesn't

22    express that.

23         **MR. FEDDER:**  Yes, Your Honor.  That's the language

24    from the Eleventh Amendment, private citizen.  And we're

25    different than what was intended to be covered by that by

1    virtue of what I'm going to talk about and where the other --

2    had it been properly analyzed under _Kohl_ and _U.S. Boom_

3    _Mississippi_ and _Carmack_, had it gone down the right path of

4    analysis where it would have gone under a superior sovereign

5    and Federal Government versus State Government analysis, where

6    that conclusion would have led, we're right because of that

7    proper analysis.

8          We're also right because the second place where the

9    _Sabine_ decision went off the rails is it was dependent upon

10   after the Court misapplied Kohl and then played it forward, it

11   then said because of what we've now said which is the only

12   reason that the pipeline company could have delegated

13   authority or could have authority to condemn in light of the

14   sovereign immunity granted by the Eleventh Amendment is if it

15   was delegated.

16         So then _Sabine_ said we, that's in the Fifth Circuit,

17   have held under the Texas Tech case which is cited in the

18   State's opening brief, we've held that you can't delegate

19   authority to non-designated private citizens -- and there's

20   some additional verbiage -- and they cite to that Fifth

21   Circuit case.  The interesting thing there, that was a qui tam

22   case under the False Claims Act.  When you look at that case,

23   the Fifth Circuit in the Texas Tech case was reversing a Texas

24   District Court that had ruled in favor of the qui tam

25   plaintiff who was suing in a representative capacity on behalf

1   of the Federal Government.  And the State had raised the

2   Eleventh Amendment and the District Court said not a bar, they

3   can bring this suit on behalf of the United States.  The

4   District Court ruled against that Eleventh Amendment challenge

5   based upon Fourth Circuit law from the *Milam* case.

6           Now the State doesn't cite to *Milam* anywhere in its

7   brief, but the State invites this Court to rely on the Fifth

8   Circuit law expressly in its opening brief and then doubles

9   down in its reply brief relying entirely on *Sabine*, which is

10  relying completely on Fifth Circuit law to go down its path

11  with its analysis.  So that's the second place where *Sabine*

12  completely goes off the rails as it relates to Fourth Circuit

13  because as the Court is aware, in the Fourth Circuit, from

14  *Milam* and as has been affirmed since, qui tam cases under the

15  False Claims Act are absolutely permitted.  They're not barred

16  by the Eleventh Amendment because of sovereign state immunity.

17  And I'm getting ahead a little bit here, but playing forward

18  the concept, the State argues that once you get past state

19  consent that wasn't given and once you get past like the Fifth

20  Circuit, *Sabine* says it can't be delegated ever.  It's not

21  proper to get past that because that's relying on --

22          **THE COURT:**  Well, didn't the Supreme Court say that

23  the delegation argument was a strange phenomenon in that --

24          **MR. FEDDER:**  They did.

25          **THE COURT:**  -- and that it raised great skepticism

1     regarding the ability of the Federal Government to delegate to

2     private citizens the authority and weight vested in it even

3     under the Fourteenth Amendment clause?

4          **MR. FEDDER:**  Absolutely, Your Honor.  And in the

5     context of which it's been presented to the Supreme Court, I

6     can understand why skepticism was expressed.  But when you

7     look at those opinions -- and I've been looking at them very

8     closely over the past several weeks -- I think I'm correct

9     when I say all of them are 5/4 decisions and I think every one

10    of those decisions there are dissents that are written that

11    are much more lengthy and extremely well-reasoned as compared

12    to the primary opinion.  Justice Brennan and Justice Blackmun

13    get into the whole --

14         **THE COURT:**  The majority might take some exception

15    to that classification.

16         **MR. FEDDER:**  I understand, I understand.  I'm just

17    saying reasonable minds can differ.  But what I'm saying is

18    that's dicta from a case in which the question or the issue of

19    the way it arose is so substantially different than what we

20    have here.  And that was the point we were trying to raise in

21    our reply.  And we didn't articulate it as clearly as I hope

22    I'm trying to do today which is the fundamental difference

23    between exercise of the delegated sovereign right of the

24    Federal Government which is what we have here and what was at

25    issue in all of those other cases that the Supreme Court has

1   been presented with the issue.  There are Fair Labor Standard

2   Acts, there are Accommodation of Handicap Education Act cases.

3   There are instances where Congress has enacted legislation and

4   then people argue either impliedly or expressly, Congress has

5   tried to give people causes of action against the states.  And

6   then the Court looks at it and says, was that or was it not

7   effective?  Here the State says, we came into the union with

8   our sovereignty, but the difference is here the Federal

9   Government came into the union with its eminent domain power,

10  just the same way they say we had our sovereignty.  *Kohl*

11  recognizes that fact.  The *Mississippi Boom* case which is the

12  case that *Sage*, *Tennessee versus Sage* which is the granddaddy

13  of all of our pipeline preliminary injunction cases, that's

14  what got us onto that case because I went back to kind of see

15  where this all was coming from and why there's this huge body

16  of authority that's uniform for preliminary injunctions and

17  pipeline cases.

18          When you look at the language that affirms our right

19  to seek a preliminary injunction in the *Sage* case, it cites

20  back to the 1897 or 1887 case I think of *U.S. v. Mississippi*

21  *Boom*.  That's the case -- I'll give you the quote, Your

22  Honor -- *Mississippi Boom Company versus Patterson*.  It's 98

23  U.S. 403 at page 806 and it was 1878.  The right of eminent

24  domain, that is the right to take private property for public

25  uses, appertains to every independent Government.  It requires

 1     no constitutional recognition.  It's an attribute of

 2     sovereignty.  And then it goes on --

 3          **THE COURT:**  But hasn't the case law developed since

 4     then where you need specific and express authority by

 5     Congress?  And this is an Article I statute.

 6          **MR. FEDDER:**  It has, but not the way that the State

 7     would have you believe that it has and not the way that

 8     they've tried to express it in their reply brief, Your Honor.

 9     It's not that the law has changed.  The law that we're

10     invoking is the law as it was when the nation was created.

11     It's the inherent sovereign power of eminent domain.  What the

12     Natural Gas Act which creates this governing body of law

13     regulating the entire field of transportation and sale of

14     natural gas, including the construction of facilities for

15     transportation of natural gas which is what we're concerned

16     with, preempts the entire field.  Congress enacted that

17     legislation to control this because it's vital to the public

18     interest of the United States.

19          For the first X many years it was in place, problems

20     were encountered dealing with the states.  We outline in

21     detail in our opening brief or in our reply to their motion,

22     that because of states as Maryland has asserted here saying

23     hey, you're taking something from a sister state, you're

24     delivering it to another sister state and we get no benefit,

25     you don't have condemnation authority here.  Because of that,

1    because of I think it was Indiana said, you're an interstate

2    pipeline company.  That's a matter solely for federal law.  We

3    can't recognize condemnation authority.  You can't condemn

4    here.  There are a whole host of issues that outline this

5    report that is appended as an exhibit to our reply brief, Your

6    Honor, that can articulate very clearly what Congress was

7    doing.  The NGA -- Congress when it amended the NGA wasn't

8    adding a new right, they simply were saying you pipeline

9    companies upon certification by FERC that your project is ago

10   and the route as part of the project is approved, you may go

11   forward and exercise our federal sovereign right of

12   condemnation to acquire the necessary right-of-way.

13        **THE COURT:**  But where's the waiver, express waiver

14   of sovereign immunity?  Where is the -- where is Congress

15   saying it's okay pursuant to Section V of the Fourteenth

16   Amendment enforcement clause that -- you're saying you don't

17   need that?

18        **MR. FEDDER:**  That's exactly right, Your Honor.

19   That's why we're saying it's a fundamentally different animal.

20   And that's why it was *Sabine* -- the reason why there isn't a

21   whole bunch of case law out there, it's not because as the

22   State alludes to in their final filing that people have been

23   getting along for 80 years and that's the evidence, the

24   evidence of that is the fact there's only been two cases in

25   the recent, you know, challenging this.  The reason there have

 1   only been two cases challenging under this principle is

 2   because this rogue outlier case of *Sabine* came down and now

 3   first New Jersey popped up, and now Maryland has popped up and

 4   --

 5          **THE COURT:**  Well, rogue outlier case, I mean, New

 6   Jersey didn't even address many of the cases that are cited in

 7   the brief.  They didn't address *Seminole Tribe*.  They didn't

 8   address *Alden*.  They didn't address *Blatchford* and they didn't

 9   address *Sabine*.  There was really no -- I mean, I appreciate

10   my brethren in New Jersey, but that case appeared to be a

11   little bit more complex.  And this was a sort of subset

12   category of issues that there really wasn't any substantive

13   analysis.

14          **MR. FEDDER:**  And we were -- I was initially stuck on

15   that a bit, Your Honor.

16          **THE COURT:**  I'm stuck on it too.

17          **MR. FEDDER:**  And I came back though and I don't know

18   if you'll be where I am after we talk this through today or

19   not.

20          **THE COURT:**  All right, bring me back.

21          **MR. FEDDER:**  I'm in a Zen place with it now.

22   Because at first I was like why, you know, it was the old

23   where is the beef in the *PennEast* opinion when the District

24   Court denied the sovereign immunity challenge raised by New

25   Jersey.

1           **THE COURT:**  It could be the Impossible Burger.

2           **MR. FEDDER:**  Well, it could be the Impossible

3    Burger, but I think the simple answer is it doesn't require

4    more.  What the State -- what the District Court found was as

5    I read it now after looking through all these other cases, is

6    that you can't separate from the delegation of eminent domain

7    authority the exercise of the federal right of eminent domain,

8    the sovereign's right.  And I'm going to take you back to a

9    couple other pieces of _Kohl_ and _Mississippi Boom_ to help

10   expedite this a little bit.  It's a right that's complete in

11   and of itself.  Because if you have to require another

12   consent, it renders it -- and the language from _Kohl_ that gets

13   played forward in _Carmack_ which is the case that the State

14   talks about a lot, it renders the right they say nugatory.  It

15   basically said it does away with it.  You can't give the

16   states the right through a consent to take away the

17   effectiveness of what's granted.  And it's the opposite of

18   what the eminent domain power that's supreme and we recognize

19   in the federal court, that the federal power of eminent domain

20   is supreme over the State.  You can't take that supremacy away

21   by giving the State a power of consent or to not consent over

22   a power.

23           **THE COURT:**  Well, you can take it away by the

24   Federal Government coming in and intervening.  I mean, as soon

25   as the -- as soon as -- if the Federal Government comes in and

```
 1       says we're exercising our power, it's game over.  And the
 2       Federal Government then has the accountability as opposed to a
 3       private entity.
 4               MR. FEDDER:  If I might, Your Honor, so I'm going to
 5       just quickly take us back to Sage, the granddaddy case.  I
 6       think Sage always answers all my questions.
 7               THE COURT:  But out of Sage you have all these
 8       grandchildren and you've got Supreme Court cases --
 9               MR. FEDDER:  I like my grandchildren.
10               THE COURT:  --interpreting it a different way.
11               MR. FEDDER:  But if I might.
12               THE COURT:  Sure.
13               MR. FEDDER:  I am looking at one of these printouts
14       here, but it looks like it's appearing texts from Sage
15       beginning at page 821.  But it's talking about where the
16       authority generally in the United States and federal court can
17       come from to condemn.  There's three different places.
18       Congress sometimes exercises the power of eminent domain
19       directly by enacting a statute that appropriates specific
20       property, and then it cites some examples.  Congress normal
21       practice however is to delegate the power of eminent domain to
22       certain officers who may condemn property in the name of the
23       United States for public use.  Okay?  So it can delegate that
24       power to officers.  That's not what we're talking about here,
25       and hasn't done that in the context of the NGA.  So the first
```

two don't apply. Then it comes to the third one. It says, and Congress may as it did in the NGA, grant condemnation power to, quote, private corporations, close quote, executing works in which the public is interested in. That's us. So you have three paths to condemnation as recognized by the Fourth Circuit, none of which are this magical just ask the Federal Government to come in and do it for you. So it would take an act of Congress -- and you know, not to be flippant about this but we're here talking about exigency. I don't know where that fits into what we're talking about today. It's not a remedy that's available. Is it possible or conceivable that at some day in the future somebody could petition Congress and get somebody to change the law and get an act of Congress? And I don't know, Your Honor, but it's not an avenue that's available to pipeline companies.

And, you know, New Jersey conveniently threw that out there and it got some traction in pennies and I think it's unfortunate. It's got some intuitive appeal to it because it would be great. If we could ask FERC to jump in, but I guarantee you if we ask FERC to jump in, the first thing we get back as a challenge is show us the specific authority by statute or otherwise where the Federal Energy Regulatory Commission has authority to condemn property on behalf of itself or anybody else and the answer to that is, they don't. You know, so --

1          **THE COURT:**  Well, it would be -- it wouldn't be

2     them, it would be I guess the appropriate Secretary of the

3     Interior who would come in and intervene.

4          But going back to your previous point, I get that

5     the NGA allows private gas companies like Columbia to go in

6     and condemn and take property by eminent domain and that

7     Congress empowered them to do it.  I'm with you on that.  The

8     big question I've got to decide is this abrogation issue.  And

9     there's nothing expressly in that statute which allows that,

10    except for your argument in broad terms.

11         **MR. FEDDER:**  And if I could circle back, because I'm

12    kind of coming at my argument in pieces here, but I think

13    actually I'm liking it more the way it's coming out now than

14    last night in my hotel room when I was writing it down.  So

15    thank you for your help with that, Your Honor.

16         But with respect to the abrogation, the reason the

17    *Sabine* Court got to abrogation and the reason -- and that's

18    how my opposition here got there, is because first they said

19    *Kohl* plus *Blatchford* means -- *Kohl* plus *Blatchford* means you

20    have to look for consent.  That's how they got to this issue

21    of consent, because you have to analyze it in the context of

22    the Eleventh Amendment, so we're saying that's wrong.  And

23    they're saying because we're looking for consent, you have to

24    look to *Blatchford*.  *Blatchford* as His Honor acknowledged,

25    looked at two things.  It mentions delegation and it mentions

1    abrogation, two separate concepts.

2          So the first one, delegation we've talked about and

3    that was the one that they looked at with a somewhat jaundiced

4    eye in dicta under very, very different circumstances the way

5    it was raised there in the other cases.  And the second one

6    was abrogation, so there's two separate concepts.  But in

7    *Sabine*, then played forward by New Jersey, now played forward

8    by the State of Maryland, what all of the people challenging

9    the pipeline companies now are trying to do is saying okay, so

10   now we talked about delegation.  We're going to switch it up

11   without really making it clear that we're switching it up.

12   We're going to move to abrogation where there is an

13   established case law and we're going to analyze the delegation

14   argument under the microscope of the Supreme Court's

15   abrogation analysis.  And abrogation is a different thing.

16   Abrogation -- and Your Honor, you can look to it.  A good

17   example, I think, would be if Congress and the NGA had said

18   implicitly or expressly, we grant to aggrieve natural gas

19   pipeline companies the right to bring causes of action against

20   states for violations of the Natural Gas Act.  That's more

21   akin to what's been presented.  *Blatchford* was jurisdictional,

22   but the other ones where they're creating substantive rights,

23   then you're on all fours with what's going on with the other

24   cases the Supreme Court has looked at.  That's taking away

25   what is a constitutional defense to a statutory enactment by

 1    Congress.  That's what they're looking at in the abrogation

 2    cases.

 3            THE COURT:  And that would be under the Fourteenth

 4    Amendment?

 5            MR. FEDDER:  That part of Congress' -- I'm sorry,

 6    that is part of the Supreme Court's analysis which Justices

 7    Blackmun and Brennan really don't like and they also don't

 8    like that clear -- I always say it wrong.

 9            THE COURT:  But it's the law of the land.

10            MR. FEDDER:  It's the law of the land, you're right.

11    But they take issue with the heightened scrutiny that's given

12    to how you determine whether it was or was not Congressional

13    intent.  They say that's the convenient thing the Court is

14    using to try to avoid getting to what was really done.  But

15    regardless, they're analyzing a different issue coming from a

16    different place.

17            So my point here is that the reason we're having

18    this discussion about abrogation is because the smoke and

19    mirrors worked and it worked on us too initially when this

20    challenge got raised.  And it worked in New Jersey when the

21    challenge got raised.  And I'm not saying we're any smarter

22    than anybody else, I'm saying it takes a lot of staring at

23    this stuff and drilling down to the cases and then the cases

24    that are cited in the cases and going back to like you said,

25    the old, old -- you know, you took issue with me going back to

1     where this came from.  That's what you have to do, because

2     that's where you identify why, what we're talking about is

3     fundamentally different than what they're talking about.

4              But all of that being said, that's why the

5     abrogation test and what you're struggling with, Your Honor,

6     about how do we answer that question and where is abrogation

7     listed, it's not.  There aren't words of abrogation, but

8     another simple answer to that, Your Honor, if the test was as

9     the State suggests is you have to show me, the Court, where in

10    the statute it expresses words of -- invokes State's rights,

11    Eleventh Amendment, waiver, put it back to the State.  Have

12    them show you where in the False Claims Act --

13             **THE COURT:**  You're incorporating it, just

14    incorporating the Fourteenth Amendment clause in there.

15             **MR. FEDDER:**  Fair enough, but Your Honor my response

16    back to that is show me where in the False Claims Act there's

17    any mention of the Eleventh Amendment, State's rights, waiver,

18    amendment, the Fourteenth Amendment.  There isn't, but the

19    Court has recognized clearly that first it's not a bar to

20    bringing claims, that it's being brought by somebody other

21    than the U.S. Government.  It's being brought by what they

22    call Private Attorneys General.  It's a self-appointed

23    plaintiff trying to get paid, but it's allowed.  So the test

24    can't be that nobody other than the U.S. Government can bring

25    a claim, because qui tam actions rely.  I'm not saying we're a

1    qui tam action, I'm just saying it can't be their test.

2           And then the second part is it can't be that, the

3    answer to if you go down an abrogation analysis, the answer

4    has to be -- it has to be and it's identified in their brief.

5    I'm sorry, Your Honor, I've kind of lost my place, but there's

6    three pieces they say have to be expressed based on those

7    Supreme Court cases.  And if those pieces are not expressed on

8    the face of the statute, you fail out of the box.  If that was

9    the test in the Fourth Circuit, you can't have qui tam actions

10   because that's not in the False Claim Act.

11          So again, not saying we're the same as qui tam, I'm

12   just saying the test can't be what they propose it is.  But

13   more importantly, you don't have to go there because the only

14   reason we're having this discussion is it was a diversion and

15   distraction from what the real discussion is.  And with that

16   said, Your Honor, so --

17          **THE COURT:**  How do you distinguish *Chao* from this?

18          **MR. FEDDER:**  I'm sorry?

19          **THE COURT:**  The *Chao* case involved private entities.

20          **MR. FEDDER:**  Right.

21          **THE COURT:**  And it was dismissed twice.

22          **MR. FEDDER:**  It was dismissed twice until as Your

23   Honor pointed out, until the Secretary of Labor brought the

24   cause of action.  And that's actually -- I was trying to

25   figure out how to use that affirmatively and for factual

 1        distinction between our case and *Sabine* it's helpful, but

 2        talking it through right now I think that's an interesting one

 3        too because the State in that case tried to still raise

 4        Eleventh Amendment immunity saying it's not really the

 5        Secretary of Labor bringing the claim because this is the same

 6        claim that's been dismissed twice because it's really for

 7        these plaintiffs, right?  And the Court said, no, no, no.  It's

 8        being --

 9                THE COURT:  Wait, repeat that again.

10                MR. FEDDER:  So the twice dismissed claims, they

11        tried to get the Secretary of Labor to intercede before they

12        got dismissed when the challenge came up the second time and

13        they couldn't get the Federal Government to intercede.  After

14        it got dismissed, then the Secretary of Labor I think or

15        somewhere in the process, but in any event when the Secretary

16        of Labor brought the case in the name of the U.S. Government,

17        the State raised Eleventh Amendment again.

18                So here you've got a suit that's been filed by the

19        U.S. Government and the State said wait a minute, wait a

20        minute.  It's the same claims.  And it still led to a Fourth

21        Circuit opinion, right?  So it still got all the way up the

22        chain because the State was arguing the reverse of qui tam

23        which is saying it's really not the State, the real party

24        interests are the individuals and the State didn't just say

25        no, no, no, all we look to is who the party named is.  They

1     couldn't say that because that would then knock them out of

2     the box on qui tam.  What they said was we look to see who --

3     if the U.S. Government is taking appropriate responsibility

4     for the cause of action, and here the Secretary of Labor has

5     authorized the suit and has filed the suit.

6            In *Sabine* -- and this is getting into the weeds a

7     little bit more, this is a Fourth --

8            **THE COURT:**  But the Fourth Circuit said the

9     dismissals were correct and that the immunity defenses didn't

10    apply.

11           **MR. FEDDER:**  The immunity defenses applied when the

12    individuals brought the claims.

13           **THE COURT:**  But not when the Federal Government

14    intervened.

15           **MR. FEDDER:**  Right, but it wasn't as clean, Judge,

16    as if the -- you would think if it's as black letter as what

17    they say, it was only the -- based on what they're saying is

18    the Eleventh Amendment immunity is only available to the

19    Federal Government.  And if that's really what the principle

20    is, then *Chao* would have been a very simple motion to dismiss

21    because the Federal Government brought that claim, the one

22    that went up on appeal and was affirmed.  Right?  It's a very

23    long and well-reasoned opinion explaining why you look beyond

24    that to really see if the Federal Government is exercising

25    control and a responsible officer is taking under the Alden

1    principle, they got into the weeds to see does this really

2    offend the constitutional notions that are at play. And

3    looking at that from the other side, and this is again, so we

4    had the three primary legal arguments, this is the factual

5    difference between us and *Sabine*. That case in Texas -- well,

6    let's start with ours. EPE as is alleged in the complaint and

7    the declaration of Jacob Haney that's been filed in support of

8    the complaint and the supplemental affidavit, has been

9    certificated by the Federal Energy Regulatory Commission, a

10    two year or so process, public analysis, environmental

11    analysis, it's all detailed in the certificate that's before

12    the Court. It's a long process.

13    **THE COURT:** Maryland Department of Environment

14    signed off on it.

15    **MR. FEDDER:** I was going to get to that part too,

16    but yeah. And the Maryland Department of Environment

17    corresponded with FERC as part of the process. So they were

18    very much aware of the State's concerns about the state-owned

19    property. But at the end of that process, FERC certificated

20    the project which includes necessary approval of the project

21    route. That certification authorized under the NGA, the cited

22    section, Columbia as certificated pipeline company, to acquire

23    all necessary right-of-way. So it doesn't say go get that

24    property, that property. The right-of-way -- because you have

25    to remember, when you're talking about a pipeline, it's point

 1    A to point B.  You've got to take it from the source to the

 2    delivery point.  Without all the property between, it's not a

 3    pipeline, right?  I mean, it's stating the obvious.  And if

 4    the State happens to own a piece in the middle which they do,

 5    it doesn't give us anything if we don't have the right to

 6    acquire all necessary property.  And that's understood in the

 7    context of the NGA and any type of, you know, railway or

 8    telecommunication or any kind of project like that where

 9    you've got to acquire a right-of-way to communicate from one

10    point to another.

11         So in our case, we had this federal agency that has

12    approved our project authorizing us to condemn.  And as we

13    talk about in *Kohl* and *Carmack* and *Mississippi Boom*, the

14    delegated right of eminent domain under those cases which

15    expressly recognize the right to delegate the sovereign's

16    right and exercise the sovereign's right of eminent domain --

17         **THE COURT:**  Over a private -- definitely over

18    private citizens.

19         **MR. FEDDER:**  Doesn't differentiate.

20         **THE COURT:**  Right, exactly.  And that's where maybe

21    the ambiguity comes in.

22         **MR. FEDDER:**  Well, only because -- only because one

23    has been suggested improperly, Your Honor, and I'll circle

24    back again --

25         **THE COURT:**  Right.

1          **MR. FEDDER:** --to guess what case?  *Sage*.  But it

2     doesn't have all the answers, but it's got a lot of them.  But

3     the difference -- the point I was trying to make was so the

4     federal agency, so *Alden* was saying you can't -- what we're

5     trying to protect against is the Federal Government can't just

6     authorize unspecified citizens to go out and exercise its

7     power without control.  I mean, you can't go do that.  What

8     *Chao*, the case Your Honor asked about, inquired about a moment

9     ago did when it affirmed the District Court decision was look

10    to the underpinnings and looked at all of them and said, this

11    passes the Alden test because the Secretary of Labor reviewing

12    this case, deciding it's one that she would file, taking

13    responsibility for it, satisfies that standard.  It's the same

14    thing here, if you get to that level.  Because here, FERC has

15    done the authorization.  And we're not done with FERC by any

16    means.  These projects are FERC controlled and supervised from

17    the beginning and for the life of the project, which means

18    they are, you know, they tell us when we can proceed.  They

19    monitor construction.  We are regulated through the life of

20    the project.  So we're not just turned out in the world and

21    authorized to go condemn property and do with it what we want

22    at all.  So this is exactly what *Alden* as applied by *Chao* was

23    saying is okay.  The only piece that's not there is it's not

24    being filed by the Secretary of the Department of the Interior

25    if that was a possibility, but the difference is --

1          **THE COURT:**  Well, it could be a possibility.  I

2    mean, the Secretary of Department of Interior can do that.  I

3    don't think there's any question about that.

4          **MR. FEDDER:**  Possibly, Your Honor, but what I'm

5    saying is that we don't need that because the difference

6    between this and an action under the Fair Labor Standards Act

7    is we have been delegated the sovereign's power of eminent

8    domain which is an inherent right, independent of the

9    Constitution, independent of States' consent as recognized by

10   the U.S. Supreme Court back from the late 1800s.  It's

11   different.  So that's why this is fundamentally different than

12   all of that.

13          But here's where _Sabine_ -- and I don't know exactly

14   -- I don't know what happened.  I would love to hear

15   subsequent history more factually than legally, because

16   literally it ended with the District Court opinion.

17          But the difference with _Sabine_, Your Honor, is in

18   their case they hadn't gone through the FERC regulatory

19   process.  That project was from the 1960s.  It was constructed

20   under FERC's predecessor under what's called a blanket

21   certificate.  So the project that was at issue in that

22   condemnation had not been specifically reviewed, certificated

23   and approved.  The property that was at issue at the time that

24   it was certificated wasn't owned by the state.  It was

25   subsequently transferred to the state.  So there are enough

1    differences there factually.  I don't know if that played a

2    factor or not, but you can see where that might start as a

3    jumping off point where it's so different, that from this

4    where it could lead one down a different _Alden_ path if that's

5    where somebody was inclined to go.

6              But our point is, you don't need to go there at all

7    because they missed it so badly with the application of _Kohl_

8    and _Carmack_ and _Mississippi Boom_, that ends it.  But then

9    after that, then they applied Fourth Circuit Law.  That should

10   have ended it, and then for all the other reasons we talked

11   about.

12             I think there are a couple other little sound bites

13   here about the fundamental distinction.

14        **THE COURT:**  Let me ask you this, Columbia Gas is

15   asking for not to maintain the status quo.  They're asking to

16   do anything but maintain the status quo.  In other words, be

17   disruptive to the property that's owned by the State of

18   Maryland and it's citizenry.  Isn't that kind of injunctive

19   relief that is being sought one that the District Court should

20   exercise extraordinary care in disrupting the status quo

21   related to this?  In fact, I think what's going to happen --

22   if you could articulate for me the practical aspects of this

23   that there are going to be back loaders and drills and all

24   sorts of heavy equipment that is going to be traipsing over

25   Maryland's property, drilling is going to begin, that sort of

1  disruption.  Doesn't the case law suggest that that kind of

2  affirmative relief is something that the Court should

3  exercise, be very, very cautious in exercising authority over?

4       **MR. FEDDER:**  Your Honor, absolutely.  And we would

5  never suggest to the Court that granting extraordinary relief

6  like an injunction should be anything other than very cautious

7  and --

8       **THE COURT:**  Well, it's one thing to maintain the

9  status quo.  It's another thing digging up and putting in a

10  natural gas pipe and undermining the autonomy of the state of

11  Maryland and its citizenry.  It's a very serious aspect of

12  this at a preliminary level when I haven't even reached the

13  final merits of the case, taking away the sovereign's property

14  is -- without a ruling on the merits and digging it up is

15  extraordinarily serious.

16       **MR. FEDDER:**  Yes, Your Honor.  And we understand and

17  we appreciate that.  We have at pages 20 through 22 primarily

18  in our memorandum in support of preliminary injunction

19  summarized the primary contemporary law supporting our

20  position on the award of affirmative mandatory injunctive

21  relief at this very stage in the proceedings.  And quoting

22  from -- it's one of my favorite -- one of my other favorite

23  cases in the Fourth Circuit form Judge Copenhaver recently in

24  the Southern District of West Virginia and we're on page 21.

25  He wrote or recognized that the paradox that the NGA presents

 1    that relief as extraordinary as preliminary injunction relief

 2    is granted so ordinarily -- so he recognized that paradox --

 3    but found that the paradox notwithstanding on preliminary

 4    injunction was warranted as, quote, there are no unique

 5    circumstances that would place Mountain Valley outside the

 6    ambit of those cases.  And he had collected -- it was a page

 7    worth of cites to recent cases primarily from the Fourth

 8    Circuit.  It's the nature, Your Honor, of these -- the timing

 9    of the FERC process, when these are issued and the timeline is

10    outlined in Mr. Haney's declaration and the construction

11    process that must follow, that pipeline companies can't wait

12    until just compensation is finally adjudicated on the merits a

13    year-and-a-half to two-and-a-half years after the filing of

14    the lawsuit to begin construction, which is when they would

15    get access under the law.  I mean, the title is not going to

16    transfer until they pay the money in to court and take title.

17         **THE COURT:**  Well, you can't have access, you can't

18    complete the project anyway because you don't have the other

19    three tracts.

20         **MR. FEDDER:**  That's a risk we're running and we're

21    running it to the ground and we've addressed it in our

22    declaration.  And there's always -- there are always things in

23    construction that you're chasing down at the last minute, but

24    high confidence level and -- it's another federal agency, so

25    FERC will at the appropriate time, we believe, hopefully bring

```
 1    their resources to bear because there is federal precedent

 2    they cited.

 3               THE COURT:  Maybe not.

 4               MR. FEDDER:  Well, maybe not.  We can't guarantee

 5    it.

 6               THE COURT:  Maybe the Maryland Department of -- no,

 7    Maryland Department of Environment approved this and yet still

 8    the public works denied approval of the project.

 9               MR. FEDDER:  No, that's true, Your Honor, but we are

10    exercising the federal power and it's footnote --

11               THE COURT:  And by the way, it's going to have to go

12    to the merits, isn't it?  This is going to have to go to the

13    merits.  I mean, I think the Fourth Circuit has made clear and

14    this is something that I'll have the Government address -- the

15    Fourth Circuit has made clear in a couple of cases, the

16    Washington Metro Area Transit Authority case that Rule 71.1

17    simply basically has no other pleadings beside the answer

18    that's contemplated.  So I'm not quite sure this pending

19    Motion to Dismiss is even appropriate.  So then that leaves

20    just merely an answer and going to the merits of the case,

21    right?

22               MR. FEDDER:  But today we're taking up my

23    understanding, Your Honor, all outstanding motions which

24    includes our Motion for Preliminary Injunctive Relief.  So

25    typically the posture we're in without a challenge for
```

1    jurisdiction is we would be before the Court on our pending

2    motion for order of condemnation and for preliminary

3    injunction.

4            **THE COURT:**  Right, but I'm just dealing with the PI

5    right now today.

6            **MR. FEDDER:**  Right.  So upon issuance of the PI, we

7    deposit into the registry of the Court the amount set by the

8    Court and then we post the injunction bond and then take

9    access to the property and begin construction.  There's case

10   law under -- it's in *Sage* again -- that talks about because

11   property owner said well, what happens if they abandon and go

12   away during construction?  What happens to us then?  We're not

13   protected because they don't own the property yet.  And the

14   case law in *Sage* says well, then they're a trespasser and if

15   they damage you there, they owe you damages.  That was the

16   answer to the specific challenge raised by the Fourth Circuit.

17           So coming back to your other question, Your Honor,

18   about what happens to their property --

19           **THE COURT:**  And there wouldn't be any immunity

20   issues from the Federal Government standpoint, they'd just sue

21   Columbia Gas, right?

22           **MR. FEDDER:**  Your Honor, we face claims from

23   property owners.  You know, it's a common thing on pipeline

24   construction.

25           **THE COURT:**  But they couldn't sue the federal --

1    that's a whole another issue, whether or not they could sue

2    the Federal Government for damage caused by a burst natural

3    gas pipeline even though the Federal Government delegated the

4    responsibility to Columbia Gas and Columbia Gas would be

5    accused of not constructing things properly.  But then would

6    the citizenry of Maryland be foreclosed from suing the

7    Secretary of Interior directly if, in fact, bad things

8    happened?

9         **MR. FEDDER:**  Your Honor, I am but a poor

10   condemnation lawyer.

11        **THE COURT:**  No, I'm just thinking sort of around

12   these alternative theories.

13        **MR. FEDDER:**  I don't know the answer to that one,

14   Your Honor.  But coming back to where we started the

15   discussion before I lose the second point is -- the first is

16   that this paradox recognized by Judge Copenhaver is these

17   mandatory injunctions, the ones the state acknowledges in

18   their briefing, they acknowledge that we've satisfied the

19   standards by our allegations, but for their sovereign immunity

20   challenge.  But that the case law fits our allegations and

21   that they recognize but for the fact that it's state-owned

22   property and they say we can't condemn it at all, otherwise --

23   and I don't want to put words in their mouth, but basically I

24   think that's, I think, the gist of their pleadings.  They

25   recognize this is the norm.  These are all mandatory

1    injunctions that are issued.  All the ones that are cited in

2    our brief, all the ones Judge Copenhaver has.  That's just

3    what happens in these NGE cases.

4              As far as the actual construction on this property,

5    this is what's unique here, Judge.  You asked about the MDE

6    permit, the Maryland Department of the Environment.  So this

7    construction that's going to take place -- and it's described

8    in better detail in the two declarations submitted by Mr.

9    Haney in support of our filings.  So to the extent I'm

10   inconsistent, I'm going to rely on those declarations.  But

11   the drill for the deep -- it's a horizontal directional drill.

12   So first and foremost, there will be no disturbance in any

13   manner of any property that's owned by the State of Maryland

14   or the Maryland Department of Natural Resources.  Not going to

15   be touched.  The drill entry point is in West Virginia.

16   They're going to start and it goes under the ground.  It's

17   going to go under the Potomac River and I think when it goes

18   under the Potomac it's about a depth of 114 feet.  About 800

19   feet past that point, then it crosses underneath the Rails to

20   Trails tract at a depth of about 175 feet.  And that's a

21   distance of about 102 feet, so we're talking about a 102-foot

22   long easement at that point.  And that's going to continue

23   along past any Maryland state-owned property.  -

24              **THE COURT:**  Have you been out to the tract?

25              **MR. FEDDER:**  This one, no.  I've seen the aerials.

 1          THE COURT:  Give me a perspective.  Is it from this

 2    wall to the back wall?  I'm just curious what the perspective

 3    is.

 4          MR. FEDDER:  Do we have Exhibit 1?  Do you mind if I

 5    show that demonstrative, guys, that I showed you?  We have a

 6    route exhibit that might give us a little bit of -- so Your

 7    Honor, I'm going to put these screens on here, what has been

 8    marked as --

 9          THE COURT:  We're talking about a little over 100

10    feet, right?

11          MR. FEDDER:  Well, the actual pipeline is -- or the

12    actual easement underneath the Rails to Trails pipeline --

13          THE COURT:  That's an aside from the legal argument.

14    I was just curious.

15          MR. FEDDER:  Sure, I think it's always helpful to

16    see what we're talking about here, but so you can see the

17    river that once we get it focused here a little better.

18          THE COURT:  There we go.

19          MR. FEDDER:  Okay.  It helps when you read it the

20    correct way.  Thank you.  It's labeled.  There you go.  So you

21    see the entry point on the West Virginia labeled parcel, the

22    bottom right of the exhibit.

23          THE COURT:  Right.

24          MR. FEDDER:  Then we cross the river.  And then you

25    can see what's been labeled as the Western Maryland Rail Trail

1    Tract.  And then you can see where the approximate exit point

2    has been identified.

3            **THE COURT:**  Gotcha.

4            **MR. FEDDER:**  And this is as close as could be

5    approximated on an aerial.  But the point of it is that as far

6    as concerns of the State of Maryland and the citizenry about a

7    massive disruption and what's going to happen if the State

8    grants injunctive relief, nothing in any manner whatsoever

9    that anybody in the State of Maryland would ever know at all.

10   I mean, you will not know with an 8-inch line being installed,

11   175 feet beneath this tract that it's ever happened, that it

12   was ever there.  Period.

13           **THE COURT:**  Well there was -- I note and again, it

14   wasn't -- it may have been recorded, but I noted that in the

15   teleconference earlier regarding scheduling, there was -- I

16   may have raised an issue regarding the tract and there was

17   some concern -- and I don't want to put words in the mouths of

18   the State -- but there was some concern that some

19   environmental precautions that had been recommended were not

20   being implemented by the Federal Government or Columbia Gas or

21   that there were some concerns regarding -- there were concerns

22   regarding the environmental impact.  Whether or not it's 100

23   feet or 100 acres really is irrelevant and I get that.  But

24   there were some issues regarding the environmental issue.  But

25   I don't think the State is really raising it.  The State's

raising as their balance of equities and argument that look,
the Federal Government through its delegees is taking away
states' rights in invading on our sovereign immunity without
the express permission of Congress through its enforcement
powers.  And they can't -- the Supreme Court said hey, we
can't delegate it or they've expressed skepticism regarding
delegation and there's no abrogation and they're saying, you
know, our citizens have a real significant interest in
protecting our sovereign and that's a pretty heavy preliminary
order that this Court would be imposing, albeit the Government
can do it to private citizens any way they want.  Just
comments.

        **MR. FEDDER:**  Right.  One stray thought which I don't
think I came back to when we talked a little bit about the
interpretation of the delegation of the right of eminent
domain to be circularly construed.  There's a string cite in
Counsel's briefing that was originally in the briefing or in
the opinion from *Sabine*, which at the tail end cites to *Sage*.
And I would just invite the Court to look at the actual
language from *Sage* on that point as controlling, because it
doesn't state the proposition the way it's being played
forward.  It's not a blanket statement about strict
construction.  It's talking about how you look at a grant of
power.  And here the grant of power has no limitations on it.
The grant of power that's expressed in the NGA is pipeline

1  companies upon certification by FERC, can acquire the

2  necessary right-of-way from the owners.

3        **THE COURT:**  And do you believe that that is -- you

4  believe that the likelihood of success on the merits is clear

5  and substantial?

6        **MR. FEDDER:**  Yes.  I believe that this case is no

7  different than any of the other cases where as the State

8  stipulates on private parties that own property, that it's a

9  given that likelihood of success on the merits is -- it's a

10  certainty.  I think it's self-executing.  We don't think

11  there's any difference under a proper analysis of the

12  constitutional rights at play that you don't go down this path

13  of -- the right has been delegated, the right of eminent

14  domain and that right of eminent domain is rendered nugatory.

15  It's meaningless unless you interpret it correctly to include

16  that it's superior to the State's rights.  Because if the

17  State has the right to say, no then there's no pipeline.

18        **THE COURT:**  Now let me ask you this, there's no

19  question that Columbia Gas is incurring and will incur

20  significant financial losses as a result of the failed

21  implementation of the preliminary injunctive relief that

22  they're seeking.  And putting aside the three tracts that

23  haven't been acquired, that certainly is a significant harm.

24  But balancing the precedent and harm to the state, to a state

25  and its citizenry for the purposes of preliminary relief is

1      pretty significant as well.  Correct?

2              **MR. FEDDER:**  I don't --

3              **THE COURT:**  Waivers of sovereign immunity should be

4      taken very, very seriously.

5              **MR. FEDDER:**  Which is why we're discussing it now as

6      a preliminary matter, Your Honor.  I don't know that it's a

7      proper counterbalance to the other factors I guess is the

8      reason.  We tried to articulate that in our briefing.  We're

9      not saying that this shouldn't be discussed and that His Honor

10     shouldn't take it up first.  I think the sovereign immunity

11     challenge needs to be addressed and disposed of first.  But

12     once that's disposed of, then there is no counterbalance to

13     the other preliminary injunctive prongs.  That's the reason

14     why they say we're not entitled to injunctive relief and I

15     don't think that's really a challenge to injunctive relief.  I

16     think it's a challenge to jurisdiction for these proceedings

17     to go forward.  And it's not form over substance because I

18     think that otherwise it just invites us to have a second

19     proceeding about injunctive relief after this.  And we had a

20     brief conversation.  I'm not going to put words in Counsel's

21     mouth, but I don't think anybody envisions a knock-down

22     drag-out on evidentiary matters on the injunctive relief

23     factors after the Court disposes one way or the other of

24     sovereign immunity.  If the State wins, we're done and we'll

25     have to decide what we do at that point.  If we win, then the

1    State has to decide what they're going to do and we go forward

2    with the project, assuming the Court grants also the

3    injunction.

4        But just kind of to if I could just put a bow on a

5    couple of those points.

6        **THE COURT:**  Please.

7        **MR. FEDDER:**  I think I'm about done, Your Honor.

8    But you'll tell me when I'm done, but --

9        **THE COURT:**  No, no, no, these are very important

10   issues and I want to make sure that -- I want to make sure I

11   understand the points.  And that's why I'm asking questions

12   and I asked you to repeat certain things because I'm really

13   trying to take care in understanding.

14       **MR. FEDDER:**  I was driving my team somewhat crazy

15   this past week because my thinking on some of these points has

16   been evolving because I keep looking at things and reading

17   them and drilling down like I said to the case under the case

18   under the case to kind of figure out where things went.

19       **THE COURT:**  You thought of things first thing this

20   morning, didn't you?

21       **MR. FEDDER:**  Some of it, and then I read *Sage* again

22   and it all came to me.

23       So in going back to *Kohl* again, so what *Kohl* had

24   asked was if the United States has the power and the power of

25   eminent domain, it says it must be complete in itself.  It can

1    neither be enlarged nor diminished by the State, nor can any

2    state prescribe the manner in which it must be exercised.  The

3    consent of a state can never be a condition proceeding to its

4    enjoyment.  That's at page 374.  The powers vested by the

5    constitution and the general Government demand for their

6    exercise the acquisition of lands in all states.  If the right

7    to acquire property for such uses may be made barren by right

8    -- by right by the action of a state prohibiting a sale to the

9    Federal Government, the constitutional grants of power may be

10   rendered nugatory and the Government is dependent for its

11   practical existence upon the will of a state or even upon that

12   of a private citizen.

13        **THE COURT:**  Isn't that where the Federal Government

14   comes in, though?

15        **MR. FEDDER:**  Right.

16        **THE COURT:**  As opposed to the delegation to a

17   private company?

18        **MR. FEDDER:**  This is the underpinning telling us why

19   eminent domain is so fundamentally different than all those

20   other Fair Labor Standards Act, and ADEA cases.  Yes, Your

21   Honor.  So that's why this is a different animal.  And then --

22        **THE COURT:**  Nobody is disputing the Federal

23   Government can come in.

24        **MR. FEDDER:**  Well, but it's not just that the

25   Federal Government can do it.  It's the nature of that which

 1    they are doing and why it's this inherent right independent of

 2    the Constitution.  It's an inherent right of the sovereign.

 3            **THE COURT:**  Isn't there something to be said for the

 4    Federal Government intervening because they have to take some

 5    political responsibility for this and that shouldn't -- in

 6    taking of a state sovereign land should only be done by the

 7    Federal Government and not somebody that the Federal

 8    Government ended up designated or appointing through a bidding

 9    -- how is it that Columbia Gas got this in the first place?

10    Was it an open bidding process?

11            **MR. FEDDER:**  A bidding process is part of what FERC

12    looks to to justify -- this one is a little different because

13    it was a market driven by their end user Mountaineer Gas, but

14    in the typical project there's an open season bidding process

15    that is lengthy that goes into play and they have to

16    demonstrate a lot of competitive factors.

17            But you just hit the nail on the head, Judge.  The

18    Federal Government has taken responsibility.  FERC -- we can't

19    just say I want to condemn a piece of property.  It's a very

20    lengthy, expensive, exhaustive process and it's described in

21    detail in the FERC certificate itself.  And it doesn't even

22    hit all the high notes about what has to be done in order to

23    become a FERC-certificated project.  And it's only with that

24    project in hand then can under the Natural Gas Act as amended

25    to fix problems that were being caused by states not letting

1    the pipeline companies condemn or acquire the right-of-way

2    through state law, when Congress amended the Act in 1947 to

3    give them the federal power of condemnation to delegate that

4    federal right.  It's not a new right.  It's not a new statute,

5    it's just you may exercise eminent domain which is just here,

6    use our right.  That's what they were trying to do.  And

7    there's nothing in when you look at _Sage_ about the grant of

8    the power, there's no limitation except as to state property.

9    There's no words of limitation to be construed from that.  And

10    if you go to some of their cases talk about what can be

11    necessarily implied, you can't by implication imply states out

12    of there because it would render like _Kohl_ said, it would

13    render it nugatory.  The grant is meaningless.  You can't get

14    the whole right-of-way if you can't -- if I can't connect

15    point A to point B because the state owns the middle, then I

16    don't have a right-of-way.

17         THE COURT:  Well, you don't have the whole

18    right-of-way right now.

19         MR. FEDDER:  Yeah, exactly.

20         THE COURT:  I mean --

21         MR. FEDDER:  Right.

22         THE COURT:  You're missing three parcels.

23         MR. FEDDER:  Well, but --

24         THE COURT:  You're saying oh, it's the Federal

25    Government so we're just going to get them, Judge, so it's no

1    worries.  But obviously there's a hold up because you don't

2    have them.  They wanted more information, right?

3            MR. FEDDER:  Well, all I can say to that, Your

4    Honor, is there's always a process.

5            THE COURT:  Oh, I thought you said in the beginning

6    of this -- that's why I asked the status because it sort of

7    doesn't change the legal dynamic of what we're talking about.

8            MR. FEDDER:  No.

9            THE COURT:  But to a certain extent it does with the

10   irreparable harm, but it points to -- it's not a gimme.  In

11   other words --

12           MR. FEDDER:  Well --

13           THE COURT:  You don't have them and they asked for

14   more information, so --

15           MR. FEDDER:  My point was we're not there yet.  If

16   you can look to, Your Honor, at page 35 of the FERC

17   certificate which is appended as an exhibit to our

18   condemnation complaint, in Footnote 171 it's --

19           THE COURT:  Hang on, let me get there.

20           MR. FEDDER:  Sure.

21           THE COURT:  Okay, so I got the FERC certificate

22   here.

23           MR. FEDDER:  So page 35.

24           THE COURT:  35.  Yes, all right.  I'm there.

25           MR. FEDDER:  Footnote 171.

1        **THE COURT:**  Got it.

2        **MR. FEDDER:**  So here FERC is setting forth what's

3   black letter law and actually the State cites to some Fourth

4   Circuit law about preemption in their filing talking about how

5   the state and federal regulatory and statutory law is

6   preempted by federal law in the field of natural gas

7   regulation and the matters that are at hand.

8            But the law I'm pointing to, Your Honor, is from the

9   DC Circuit down below.  Knowing the state and local regulation

10  is preempted by the NGA, the ascendant conflicts with federal

11  regulation that would delay the construction and operation of

12  facilities approved by the Commission.  And I'm not saying

13  that that's dispositive, all I'm saying is there's law out

14  there and the agencies know that at the end of the day, this

15  is a FERC regulated and approved project.  They're working

16  cooperatively together.  No one is taking a position like the

17  State is taking no, you cannot build this under any

18  circumstances.  The permits are getting issued and our company

19  who is in the business of building these pipelines and has

20  built many, many projects, has a high confidence level they're

21  going to get it within the timeline they need.  But they're

22  not in a situation -- in a position where they can wait until

23  that timeline closes to come to you at that point and then

24  have this fight.  So that was my only point.

25       **THE COURT:**  Okay.

1          **MR. FEDDER:**  So I don't have a crystal ball, but we

2      have a high confidence level based on that, based on how the

3      agencies work with each other, based on our understanding of

4      the process from other processes that we're well situated.

5              **THE COURT:**  Um-hum, okay.

6              **MR. FEDDER:**  Factually.

7              So we had talked about some of the cases about -- I

8      want to talk about a few of the cases where there have

9      actually been delegations which the State ignores in their

10     brief, just to give the Court a better comfort level that

11     we're not just out here on our own.  We cite to one of them in

12     our reply and the State distinguishes it, but they actually

13     misstate the holding of it in their treatment of the case.

14     And that is a Seventh Circuit case -- going out of order here

15     a little bit if you'll bear with me, Your Honor.

16              **THE COURT:**  Take your time.

17              **MR. FEDDER:**  It's the City of _Davenport versus 3/5_

18     _of an Acre of Land_, Seventh Circuit from 1958.  So in that

19     case, the Federal Government had delegated the federal right

20     of eminent domain by an act of Congress to the city of

21     Davenport to build a bridge, I think it was across the

22     Mississippi River.  The city of Moline -- the city, not a

23     state -- but the city of Moline opposed the project.  We know

24     cities can't raise Eleventh Amendment statutory immunity, but

25     the city came up with theories by which they were acting on

 1    behalf of the State and its citizens saying the streets and

 2    other things are going to be affected by the project were held

 3    in trust for the State and the State's citizens.  And they

 4    raised in the Eleventh Amendment among other things, challenge

 5    to the exercise of the power of eminent domain by the entity

 6    that had been delegated the authority by an act of Congress.

 7    Okay?  So very similar to us, not the NGA, but federal

 8    delegation, Eleventh Amendment immunity.

 9            **THE COURT:**  To a public entity.

10            **MR. FEDDER:**  Well, right.  But I've got a couple

11    instances.

12            **THE COURT:**  Not a private company.

13            **MR. FEDDER:**  Okay, but I've got some instances, but

14    it's not the Federal Government.  It's a delegation to

15    somebody other than the Federal Government is my point.  So

16    it's, you know, the point is can they delegate to somebody

17    here and here they said they could.  But in response, in

18    holding, the project could go forward and reject the Eleventh

19    Amendment claim, the Seventh Circuit held, the fact that land

20    is owned by a state is no barrier to its condemnation by the

21    United States.  So they didn't say by the city of Davenport,

22    they said by the United States.  So that's a very good

23    example.  Two other cases --

24            **THE COURT:**  Now what's the cite on that case?

25            **MR. FEDDER:**  Yes, Your Honor.  It appears in our

 1    brief at -- just if it's easier -- at pages 3, 9 and 10 in our

 2    reply.  But it is City of _Davenport versus 3/5 of an Acre of_

 3    _Land_, 252 F.2d 354.  And the quote that I just read was at

 4    356.

 5         And there's two other cases which we identified in

 6    our opening brief, but our opponents didn't address at all in

 7    their response.  There's a case, a U.S. Supreme Court case

 8    from 1941, _State of Oklahoma ex rel. Phillips versus Guy F._

 9    _Atkinson Company_, 313 U.S. 508.  And in that case it was

10    state-owned land that was being condemned to effectuate a

11    private company's construction of a dam that served public and

12    private purposes, both.  And the State raised challenges

13    saying it was being done for the benefit of private citizens,

14    improper delegation, improper condemnation.  And the Court

15    recognized there's no interference with sovereignty of the

16    state when state-owned land was being condemned to effectuate

17    a private company's construction of a dam that served public

18    and private purposes.

19         And then in _Stockton versus Baltimore_ which is a New

20    Jersey district case from 1887, that's 32 F.9, in that case

21    rejecting a challenge by the State of New Jersey, again

22    another bridge.  People don't like bridges.  There is nothing

23    in the constitution to prevent Congress from inferring powers

24    upon state corporations for carrying out Congress' own

25    legitimate purposes.  What right of a state would be invaded.

And there the state corporation, it was a private corporation of another state and they were trying to say that's a private citizen of another state violating the Eleventh Amendment. The Court said no, not a violation. And this was -- it was interesting, _Stockton versus Baltimore_, it was a Supreme Court Justice on circuit sitting in the Court that made this opinion. I don't have his name written here, but it was made note of in the _Carmack_ opinion that the State cites. This I think is instructive for our purposes here too. It says it was explained by the Court that its conclusion was further supported by the practical necessity of interstate activities and the federal supremacy and the fact that private company acting pursuant to a lawful act of Congress was standing in the shoes of the Federal Government exercising the same sovereign power to the same extent as if it were exercised by the Federal Government itself. There's a, quote, dilemma of requiring the consent of the State in almost every case of interstate line of communication by railroad, for hardly a case can arise in which some property belonging to a state will not be crossed. Period, close quote. That's pages 17 and 18. That could have been written for our case, Judge. That's exactly what we're talking about here today. Mr. Haney's supplemental affidavit that was submitted, he's affirming that you can't route an interstate pipeline project without crossing state-owned property. State's-owned

1  highways, state's-owned parks, state's-owned rivers,

2  state's-owned, you know, all kinds of things.  In New Jersey,

3  they're going out and creating protective barriers.  They're

4  literally buying up ground to prevent pipelines.  Given what

5  the State here has articulated as the real purpose -- they're

6  saying sovereign immunity, but at the tail end of their brief

7  they talk about the purpose of the Board of Public Works' anti

8  -- no vote was anti-fracking and fossil fuel concerns.  What's

9  to say that Maryland is not going to start doing the same

10  thing?

11          So this is exactly what is talked about from those

12  old cases, from this case.  It's not just that they've got a

13  25-mile long rail trail that creates an effective barrier to

14  this pipeline, it's anywhere they are, and any other

15  state-owned interest.  Unless it's recognized that the

16  inherent sovereign power of eminent domain includes the right

17  to build the pipeline as certificated by FERC, it's

18  meaningless.

19          **MR. FEDDER:**  Right.

20          **THE COURT:**  Right, and well, I guess to a certain

21  extent we may be in another age right now where the Federal

22  Government has to intervene.  I'm not -- I'm listening to you

23  and I haven't made any decisions yet, but clearly the Federal

24  Government has a right to do what they're doing.  It's just a

25  question of whether or not they can designate Columbia Gas to

1     do it for them.  Isn't that sort of broken down in a nutshell

2     what we're talking about here?

3                MR. FEDDER:  Your Honor, I think that -- I think

4     that is a reaction like we've talked about, but I think it's

5     also the response from Columbia -- and I can't speak on behalf

6     of the whole industry -- is it's not a feasible position for

7     us as we stand here today for this project whether it's a

8     theoretical legal alternative at some point in the future

9     possibly, but given the state of dysfunction with the Federal

10    Government, I'm not sure when that point might be.

11               THE COURT:  Well then I'm not -- then your optimism

12    regarding getting the Government lands may not be that great

13    either.

14               MR. FEDDER:  We're operating at an agency level.

15    It's a little bit easier, but I understand.

16               THE COURT:  Understood.  All right, is there

17    anything else?  And you'll have a brief -- I'll give you an

18    opportunity for a brief rebuttal as well.

19               MR. FEDDER:  Thank you, Your Honor.

20               THE COURT:  But I've let Mr. Snyder sit there

21    enough.  Who is going to be arguing?

22               MR. SNYDER:  I am.

23               THE COURT:  Oh, you were sitting there quiet for

24    about an hour-and-15 minutes, so --

25               MR. SNYDER:  I'll be less quiet now.

         1              **THE COURT:**  Before you get started, Mr. Snyder --

         2     all right, Counsel.

         3              **MR. SNYDER:**  Good morning, Your Honor.  You

         4     indicated at the beginning of your proceedings today that you

         5     read the materials and from your questions, you've backed that

         6     up.  You definitely know the issues here, so I'm going to

         7     focus my remarks on some of the points that the Columbia Gas

         8     folks have made and then I'm sure, have the opportunity to

         9     answer questions you might have about the State's position.

        10              **THE COURT:**  Very good, thank you.

        11              **MR. SNYDER:**  We do concede that the Federal

        12     Government can condemn this property.  As you indicated, we've

        13     kind of come close to that.  I think we do say that in our

        14     pleadings, that if the Federal Government were here, if the

        15     Department of Justice were here to condemn this land, we

        16     wouldn't be here.  They would clearly have that power and they

        17     have that power under existing law.

        18              The Condemnation Act which can be found at 40 USC

        19     3113, already provides that an officer of the Federal

        20     Government authorized to acquire real estate for the erection

        21     of a public building or for other public uses may acquire the

        22     real estate for the Government by condemnation when the

        23     officer believes that it is necessary or advantageous to the

        24     Government to do so.  The Attorney General of the United

        25     States exercises that condemnation authority and appears on

1    behalf of the United States in court.  And it matters in the

2    Eleventh Amendment context who the plaintiff is.  You see that

3    from Chao where as Your Honor pointed out, initially the

4    private litigant was trying to obtain the relief, was

5    dismissed twice, then the Federal Government came in as the

6    plaintiff and the Eleventh Amendment argument goes away.

7         It is clear that FERC is involved in the planning of

8    this process, but they are not involved in this lawsuit.

9    They're not a party to this lawsuit, they're not sitting

10   across the aisle.  And that's the important thing.  When you

11   read *Blatchford*, it talks about a suit by the United States

12   under the control of federal officers, politically responsible

13   federal officers.  It's not a project that is approved by.  So

14   the fact that the plaintiff here is a private company is

15   dispositive for the Eleventh Amendment argument because as

16   *Alden v. Maine* and Supreme Court cases repeatedly hold, the

17   State has only consented to suits against -- brought by two

18   types of plaintiffs, other states and the Federal Government.

19   So unless you fit into one of those two categories, you can't

20   be a plaintiff and sue the state.

21        Now Counsel talked about the *Carmack* case which

22   plaintiff actually cited in their brief first.  We then

23   responded and elaborated on it and some discussion of the

24   facts here might be helpful of *Carmack*.  What went on in

25   *Carmack* was the Federal Government, a federal condemnation

officer wanted to condemn a state courthouse or a local

courthouse for purposes of a federal post office.  And the

defendants opposed that saying well, that's not appropriate

for the Federal Government to condemn a public land like that.

And the Supreme Court in footnote 13, a very long footnote,

makes the point that when the Federal Government delegates its

condemnation power to a federal officer, it delegates the full

sovereign authority.  But when it delegates that eminent

domain authority to someone other than a federal officer, you

don't get the full sovereign authority.  It is a more limited

authority and it is an authority that must yield to others who

have a sovereign authority.  So even within the world of

eminent domain -- you can put aside the Eleventh Amendment --

even within the world of eminent domain, the Federal

Government when it delegates its eminent domain authority to

private entities, delegates only a subset of its sovereign

powers, not its full sovereign authority.

Now there was a lot of talk about the origin of

eminent domain and the *Kohl* case.  And what *Kohl* involved was

whether the Federal Government had any eminent domain power on

its own or did the Federal Government if it wanted to condemn

land, did it have to go to a state in which the land is

located and get the state's permission under state law to

condemn the land or does the Federal Government have its own

eminent domain authority?  And the Court held that the Federal

1    Government has its own eminent domain authority, but so does

2    the state.  All sovereigns have that eminent domain authority.

3    The question is, who can sue the State in order to take its

4    property or to bring it into federal court?  That's a

5    different issue.

6         **THE COURT:**  And that's distinguished in some of the

7    case law.  It's not whether or not there can be an exercise of

8    eminent domain, it's a question of whether or not the state

9    has waived or abrogated or otherwise consented to being sued

10   by a private entity.

11        **MR. SNYDER:**  That's right.  Now you see that in the

12   Court's abrogation jurisprudence, but you also see it in the

13   waiver and consent jurisprudence.  You have to find some sort

14   of clear, unmistakable language that shows either that

15   Congress intended to abrogate the State's immunity, or that

16   the State has consented to suit in federal court.  And here we

17   don't hear any of that from Columbia Gas.  There's no mention

18   of the State having consented.  It's all implied.  It's all

19   carried with the Federal Government's eminent domain power.

20        **THE COURT:**  Pursuant to the Natural Gas Act which is

21   an Article I statute and not expressly received or created as

22   part of the enforcement clause of the Fourteenth Amendment.

23        **MR. SNYDER:**  Right.  I mean, _Seminole Tribe_

24   establishes two requirements.  There's the clear statement

25   that we talk about in terms of abrogation, but there also has

 1     to be a valid source of authority which has to be as Your

 2     Honor pointed out, Section 5 of the Fourteenth Amendment.  It

 3     can't be Article I legislation like legislation like the

 4     Natural Gas Act that's enacted under the commerce clause.

 5          So from an abrogation standpoint, they don't have an

 6     argument.  I don't hear them making an argument as opposed to

 7     abrogation.  I think they concede that.  I think all of their

 8     eggs are in the delegation basket.  And _Blatchford_ clearly

 9     expresses great skepticism of that.  Lower courts, including

10     Chao have followed _Blatchford_ and applied that language.

11          And I want to highlight one other court decision,

12     the Supreme Court decision subsequent to _Blatchford_ that

13     amplifies this point, but in the qui tam context.  And Counsel

14     talked a lot about qui tam about how the _Milam_ case by the

15     Fourth Circuit and disagreed with by the Texas Tech case in

16     the Fifth Circuit and that the law in the Fourth Circuit is

17     that qui tam realtors can bring claims against the State.

18     That was a 1992 Fourth Circuit case.  In 2000, the Supreme

19     Court issued a decision in _Vermont v. Stevens_ -- _Vermont_

20     _Agency of Natural Resources v. U.S. ex rel Stevens_, that's 529

21     U.S. 765 where the Court said no, qui tam realtors can't sue

22     the State under the False Claims Act because the State is not

23     a person under that statute.  Now they've ruled, they base

24     their decision on statutory grounds in order to avoid the

25     constitutional issue as to whether or not the Eleventh

1    Amendment would present a bar to such suits.  So they avoided

2    that.  But the Court, the majority went on to say we, of

3    course, express no view on the question whether an action in

4    federal court by a qui tam realtor against the State would run

5    afoul of the Eleventh Amendment, but we note that there is a

6    serious doubt on that score.

7         So here you have the Supreme Court eight years after

8    the Fourth Circuit decision in Milam, resolving that issue on

9    different grounds, but saying there's a serious doubt whether

10   private qui tam realtors could bring a suit against the State

11   under the False Claims Act in federal court.

12        And the qui tam context is very different from the

13   Natural Gas Act context because a qui tam realtor -- or the

14   Federal Government has a continuing role to play in qui tam

15   actions throughout the course of the litigation that FERC

16   doesn't have here.  FERC is not involved in this case in any

17   way, but in a qui tam context the Federal Government has the

18   right to intervene.  They have the right to have a say as to

19   whether the case is going to be settled.

20        There's several points within the lifetime of a qui

21   tam proceeding where the Federal Government has a statutory

22   role to play.  None of that is present here.  FERC has nothing

23   to do with the conduct of this lawsuit.

24        Now Counsel referred to the *Sabine* argument and the

25   State's position here is -- I think he used the term "smoke

 1    and mirrors."  But when you read *Blatchford*, it's clear that
 2    the smoke and mirrors is going the other way around here.  The
 3    Supreme Court says in *Blatchford* that the reason why the
 4    litigants in that case were presenting this delegation
 5    argument was because they knew they couldn't satisfy the clear
 6    statement rule in the Court's abrogation jurisprudence.
 7    That's exactly where we are here.  They know they can't
 8    satisfy that and so they're trying to circumvent that
 9    jurisprudence.  And that's what would happen if this decision,
10    if this issue were resolved in their favor.  Because what
11    would stop the Federal Government from just delegating its
12    authority to sue the states generally?  There's really no
13    limiting principle here.  The eminent domain, yes it stems
14    from sovereignty, but the reason why the Federal Government
15    can sue a state is because of the states enjoining the union,
16    consented to suits by the Federal Government.  And if the
17    Federal Government can just willy-nilly delegate its authority
18    in the eminent domain context, there's no reason why they
19    wouldn't be able to delegate in other contexts and that gets
20    squarely into the teeth of *Seminole Tribe*, *Alden v. Maine*,
21    *Atascadero*, all of the numerous Supreme Court cases that say
22    you can't hale the State -- the private party can't hale the
23    State into federal court in the absence of consent or some
24    sort of clear statement from Congress.  And here there's
25    nothing anywhere, there's nothing in the language of the

1    Natural Gas Act that suggests that Congress intended to

2    abrogate sovereign immunity.  There's nothing in the language

3    of the Natural Gas Act that suggests that they intended to

4    delegate its authority to hale the State into federal court.

5    And that's why this delegation theory was described by the

6    Supreme Court as a strange notion, because it just doesn't

7    make sense either in terms of constitutional theory or in

8    terms of common sense.

9        When the State consents to the Federal Government to

10   suing in federal court, it does so because the Federal

11   Government and federal officers are politically accountable in

12   a way that private companies are not.  They live by different

13   considerations.  There's again, political accountability, but

14   there's also just how you're going to conduct the lawsuit may

15   be completely different depending on who the plaintiff

16   actually is.  The States agreed to that, that concession to

17   the Federal Government in the plan of the Constitution, but

18   not to private entities.

19       And just as a matter of common sense, I mean, if I

20   provide consent to you or anyone to say, you know, drive my

21   car.  You can't turn around and say well, I'm going to convey

22   that consent to someone else and let them drive your car.

23   That's not the way it works, particularly in the

24   constitutional context where we're talking about federal

25   actors who are politically responsible.

1          And ultimately here, a lot of what we're talking

2     about is the dignity of the States as co-equal sovereigns.

3     That what lay behind the Eleventh --

4          **THE COURT:**  But they're not co-equal sovereigns.

5          **MR. SNYDER:**  Fair point, as sovereign entities, yes.

6     The states are co-equal themselves, but not with the Federal

7     Government.

8          **THE COURT:**  Correct.

9          **MR. SNYDER:**  Supremacy clause.  But the idea was

10    that it would be an indignity and the Supreme Court talks

11    about this a lot, an indignity to have states, sovereign

12    states being haled into court by private entities.  And that's

13    where we are here.  And the Supreme Court proceeding --

14    Supreme Court jurisprudence just doesn't allow it.

15         Now you only have two cases that are addressing this

16    issue within the Natural Gas Act.  You have the _PennEast_ case

17    and you have the _Sabine_ case.  And as Your Honor pointed out,

18    the _PennEast_ case is one paragraph with no analysis and

19    doesn't even mention _Blatchford_ anywhere.  Then you have the

20    _Sabine_ case that goes into this in great detail, looks at it

21    from all different angles and concludes that suits exactly

22    like this one because of _Blatchford_ and its progeny, cannot be

23    brought under the Eleventh Amendment.  And this Court should

24    rule the same way.  And if it does, we don't have to have a

25    hearing on the merits as Counsel has acknowledged, that if the

 1    State is right about its Eleventh Amendment argument, that's

 2    the end of this case because the Court doesn't have subject

 3    matter jurisdiction.

 4            Your Honor, if you have questions, otherwise I'll

 5    conclude.

 6            **THE COURT:**  Thank you.  Mr. Fedder, last word.

 7            **MR. FEDDER:**  A couple very brief points, Your Honor.

 8    Counsel didn't touch, because he can't, this issue about in

 9    the Fourth Circuit, how do you explain in the qui tam context

10    somebody other than the Federal Government can bring suit and

11    withstand challenges on a sovereign immunity basis as a

12    delegated power and under this clear on the face of the

13    statute, it has to be evidence of abrogation.  The reason

14    Stevens overturned it as Counsel does state is because the

15    State was not deemed to be a person as defined by the False

16    Claims Act.  So as far as the standing to bring a claim in a

17    delegated or representative capacity in the Fourth Circuit,

18    the qui tam cases still stand for that proposition.

19            The _Chao_ case as we discussed in detail, didn't just

20    simply dispose of the issue of sovereign immunity based on the

21    fact that the Secretary of Labor brought the renewed claim, it

22    went into the analysis of why it was actually an act of a

23    responsible party.  It wasn't a summary rejection.  It was

24    looking past the name of the party to the substance of the

25    degree of responsible control of the party.  And as we

1    discussed, we believe that the FERC control here and oversight

2    in the process more than satisfies that if we get to that

3    level of the analysis, and that distinguishes us.

4         But more importantly, Your Honor, this --

5         **THE COURT:**  FERC isn't involved in any way in this

6    litigation; is that correct?

7         **MR. FEDDER:**  I'm sorry?

8         **THE COURT:**  FERC is not involved in any way in this

9    litigation.

10        **MR. FEDDER:**  Specifically in the litigation no,

11   Judge, but it was the FERC act of the certificate that got us

12   here and when we get the right-of-way hopefully with issuance

13   of the injunction, we have to then go to FERC to get a notice

14   to proceed.  FERC monitors each and every step of the process

15   of the construction of the project.  So to say that FERC isn't

16   involved, FERC is involved.  FERC is very much cognizant of

17   the prosecution of every stage of this.  And if something

18   controversial or untoward happened in the course of the

19   prosecution of the litigation, you can bet FERC would be aware

20   of it.  And to say that FERC is done with this upon our filing

21   of the lawsuit is inaccurate.  They're not a party to the

22   lawsuit though, no.

23        But if we could just circle back to delegation, a

24   couple of the cases that we talked about, the Supreme Court in

25   the *Mississippi River Boom* case at page 406, expressly states

1  the Supreme Court has said that the power of eminent domain

2  can be delegated to private corporations.  This is not

3  anything that is controversial or in dispute.  And that is the

4  case that *Sage* relies on to affirm in the NGA context.

5          *Kohl* states, when that right is delegated, the power

6  does not change by a transfer to another holder.  That's at

7  page 372.

8          The footnote that Counsel keeps coming back to from

9  *Carmack*, that footnote 13, you have to read it carefully but

10  what it says is if the rights aren't limited, you get all the

11  rights that are delegated that are express or necessarily

12  implied, so -- unless there are conflicting rights of a

13  sovereign.  There are no conflicting rights here other than --

14  superior sovereign rights aren't conflicting.  They're saying

15  if they're at play we can't condemn.  That's not a conflicting

16  right.  They are a sovereign.  Our sovereign rights are

17  superior.  There is a host of superior sovereign litigation

18  out there.  That's where *Carmack* actually goes through and

19  talks about the superiority of the federal power of eminent

20  domain over state.  And it does a very nice job of explaining

21  why the federal power is supreme.  What Counsel is doing is

22  mixing concepts.  Federal power is supreme.  The federal power

23  can be delegated.  Boom tells us when it's delegated, the

24  sovereignty still attaches.  It doesn't then become a private

25  right of eminent domain.  It's still the federal power of

1    eminent domain.  What that footnote from *Carmack* tells us,

2    unless it's expressly limited, you get the rights that are

3    expressly transferred and those that are necessarily implied.

4    And our point is to make the grant of eminent domain

5    effective, it has to be if it's not expressed, necessarily

6    implied that you have to have the ability to condemn the whole

7    right-of-way.  And Congress very well knew that.  That was the

8    problem they were trying to solve as evidenced by the

9    legislative history that's attached to our reply brief, Your

10   Honor.

11           **THE COURT:**  But that amendment didn't really go to

12   the immunity issues, that amendment went to another issue.

13           **MR. FEDDER:**  No, immunity hadn't been raised at that

14   point.  And I won't guess why it hadn't been raised.  At that

15   point it was issues about being able to actually go to court

16   and acquire the right-of-way.  And if it was a simple matter

17   -- well, I won't say.  But when you look at the cases, the

18   problem they were attacking was states interfering with the

19   NGA certificated company's ability to go out and construct

20   projects that the Federal Government authorized under the NGA.

21   So in 1947, that's why they amended the Act, to give private

22   pipeline corporations the power of eminent domain, to fix that

23   problem.  This is just a new form of that problem.  It's

24   70-plus years later, but this is the new form of that problem

25   under the *Sabine* case.  It's the same thing, just under a

 1    different theory.

 2            And the last thing, Your Honor, didn't hear a word

 3    about the actual instances we cited as we did in our opening

 4    brief about actual instances of delegation that were upheld in

 5    the face of state immunity challenges, which shows that, you

 6    know, this is something that is not only theoretical, but in a

 7    practical and legal sense has been done.  This isn't a first

 8    instance.  And the fact that the *PennEast* opinion is short,

 9    it's short we think out of necessity.  It didn't need to be

10    long.

11            **THE COURT:**  All right, thank you.  Here's what I'm

12    going to do, Counsel:  First, I want to compliment Counsel on

13    the oral argument in the case.  I think it was significant

14    oral argument.  What I'd like to do is just digest what I've

15    heard.  I note that we're here for the purposes of preliminary

16    relief, so I understand that there's a time table that is very

17    important.  I dispatched my law clerk to give us some days

18    next week in which I can either present an oral opinion

19    related to the preliminary injunctive relief -- I wouldn't

20    entertain any argument at that point in time, but lawyers

21    always like to get an answer sooner rather than later, even if

22    they disagree with the answer.

23            So what I'm going to do is I'm going to find a time

24    that works with your individual schedules and looking at maybe

25    Tuesday in the afternoon potentially at 2:30, or I'm looking

 1    for sometime also on Wednesday as well.  Again, I'm not going

 2    to entertain any additional argument.  So for folks such as

 3    Mr. Fedder, if you went out of town, it's not a question of me

 4    entertaining or asking you any direct questions.  I would just

 5    simply be reading into the record a decision regarding the

 6    preliminary injunctive relief with a subsequent follow-up

 7    either here or there with regard to the -- I guess arguably,

 8    you would need someone here to discuss bond issues, unless

 9    you're prepared to discuss that now.  But at this point in

10    time I'm looking -- it's no secret, I'm looking at the

11    likelihood of success on the merits and the balancing of the

12    equities and the irreparable harm aspect.  I think I've

13    telegraphed where my thought process is on this issue and I've

14    got a rather tight body of case law or a limited case law upon

15    which to rely.

16         Counsel, you can pull out your schedules.  Any

17    objection to proceeding in that manner, Mr. Fedder?

18         **MR. FEDDER:**  No, Your Honor.  One housekeeping

19    matter, we had shared with Counsel a binder of four exhibits

20    that were two demonstratives and two other exhibits.  One was

21    the FERC certificate and one was the Maryland Department of

22    the Environment permit with the letter.  Both sides have

23    submitted to the Court in other forms.  Would there be an

24    objection if we move it for the Court to reference it for the

25    record?

1          **MR. SNYDER:**  No objection.

2          **THE COURT:**  That's fine.  Okay, very good.  All

3     right, so how is -- looks like I'm good for Tuesday at let's

4     say 3:00, Wednesday at anywhere between 2:30 and 3:00 as well.

5          **MR. FEDDER:**  I will represent to you, Your Honor,

6     that I will move anything that I have that is a conflict

7     Tuesday or Wednesday afternoon basically?

8          **THE COURT:**  Yeah, correct.

9          **MR. FEDDER:**  Yes, I will make --

10         **THE COURT:**  Where were you traveling from, Mr.

11    Fedder?

12         **MR. FEDDER:**  Saint Louis and we have Southwest that

13    gets us here and out.

14         **THE COURT:**  Understood.  I want to work with your

15    schedule.  Counsel?

16         **MR. SNYDER:**  Either of those are fine.

17         **THE COURT:**  So why don't we do Wednesday at 3 then.

18    And I'll be prepared to issue my ruling at that particular

19    time.

20         All right, Counsel, is there anything else?

21         **MR. FEDDER:**  Nothing from Columbia, Your Honor.

22         **MR. SNYDER:**  No, Your Honor.  Thank you.

23         **THE COURT:**  All right, Counsel, it's a pleasure.

24    All right, very good.

25              **(Proceeding concluded at 11:12 a.m.)**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5          I, Nadine M. Gazic, Registered Merit Reporter and

6    Certified Realtime Reporter, in and for the United States

7    District Court for the District of Maryland, do hereby

8    certify, pursuant to 28 U.S.C. § 753, that the foregoing is a

9    true and correct transcript of the stenographically-reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the regulations

12   of the Judicial Conference of the United States.

13

14                    Dated this 20th day of August, 2019.

15

16                    _NAdine M. Gazic_

17                    **NADINE M. GAZIC   RMR, CRR**

18                    **FEDERAL OFFICIAL COURT REPORTER**

19

20

21

22

23

24

25

**1**

**1** [1] - 36:4
**10** [1] - 49:1
**100** [3] - 36:9, 37:22, 37:23
**101** [1] - 1:23
**102** [1] - 35:21
**102-foot** [1] - 35:21
**114** [1] - 35:18
**11:12** [1] - 68:25
**12** [4] - 1:5, 2:4, 2:7, 2:18
**13** [3] - 1:9, 55:5, 64:9
**17** [1] - 50:20
**171** [2] - 45:18, 45:25
**175** [2] - 35:20, 37:11
**18** [1] - 50:21
**1800s** [2] - 7:5, 28:10
**1878** [1] - 11:23
**1887** [2] - 11:20, 49:20
**1897** [1] - 11:20
**1941** [1] - 49:8
**1947** [2] - 44:2, 65:21
**1958** [1] - 47:18
**1960s** [1] - 28:19
**1992** [1] - 57:18
**1:19-cv-01444-GLR** [1] - 1:4

**2**

**20** [1] - 30:17
**2000** [1] - 57:18
**2017** [1] - 6:5
**2019** [2] - 1:9, 69:14
**20th** [1] - 69:14
**21** [1] - 30:24
**21201** [1] - 1:24
**22** [1] - 30:17
**25-mile** [1] - 51:13
**252** [1] - 49:3
**28** [1] - 69:8
**2:30** [2] - 66:25, 68:4

**3**

**3** [3] - 7:15, 49:1, 68:17
**3/5** [2] - 47:17, 49:2
**3113** [1] - 53:19
**313** [1] - 49:9
**32** [1] - 49:20
**35** [3] - 45:16, 45:23, 45:24
**354** [1] - 49:3
**356** [1] - 49:4
**372** [1] - 64:7
**374** [1] - 42:4

**3:00** [2] - 68:4

**4**

**40** [1] - 53:18
**403** [1] - 11:23
**406** [1] - 63:25
**410-962-4753** [1] - 1:24
**4th** [1] - 1:23

**5**

**5** [1] - 57:2
**5/4** [1] - 10:9
**508** [1] - 49:9
**529** [1] - 57:20

**7**

**70-plus** [2] - 5:7, 65:24
**71.1** [1] - 32:16
**753** [1] - 69:8
**765** [1] - 57:21
**7A** [1] - 1:9

**8**

**8-inch** [1] - 37:10
**80** [1] - 13:23
**800** [1] - 35:18
**806** [1] - 11:23
**821** [1] - 16:15

**9**

**9** [1] - 49:1
**98** [1] - 11:22

**A**

**a.m** [1] - 68:25
**abandon** [1] - 33:11
**ability** [3] - 10:1, 65:6, 65:19
**able** [3] - 6:18, 59:19, 65:15
**above-entitled** [1] - 69:10
**abrogate** [2] - 56:15, 60:2
**abrogated** [1] - 56:9
**abrogation** [22] - 18:8, 18:16, 18:17, 19:1, 19:6, 19:12, 19:15, 19:16, 20:1, 20:18, 21:5, 21:6, 21:7, 22:3, 38:7, 56:12, 56:25, 57:5, 57:7,
59:6, 62:13
**absence** [1] - 59:23
**absolutely** [3] - 9:15, 10:4, 30:4
**access** [3] - 31:15, 31:17, 33:9
**Accommodation** [1] - 11:2
**accountability** [2] - 16:2, 60:13
**accountable** [1] - 60:11
**accused** [1] - 34:5
**acknowledge** [1] - 34:18
**acknowledged** [2] - 18:24, 61:25
**acknowledges** [1] - 34:17
**acquire** [10] - 13:12, 25:22, 26:6, 26:9, 39:1, 42:7, 44:1, 53:20, 53:21, 65:16
**acquired** [3] - 3:15, 3:24, 39:23
**acquisition** [1] - 42:6
**Acre** [2] - 47:18, 49:2
**Acres** [2] - 2:4, 2:7
**acres** [2] - 2:18, 37:23
**ACRES** [1] - 1:5
**Act** [26] - 5:7, 5:9, 7:18, 8:22, 9:15, 11:2, 12:12, 19:20, 21:12, 21:16, 22:10, 28:6, 42:20, 43:24, 44:2, 53:18, 56:20, 57:4, 57:22, 58:11, 58:13, 60:1, 60:3, 61:16, 62:16, 65:21
**act** [7] - 17:8, 17:14, 47:20, 48:6, 50:13, 62:22, 63:11
**acting** [2] - 47:25, 50:13
**action** [8] - 11:5, 19:19, 22:1, 22:24, 24:4, 28:6, 42:8, 58:3
**actions** [3] - 21:25, 22:9, 58:15
**activities** [1] - 50:11
**actors** [1] - 60:25
**Acts** [1] - 11:2
**actual** [6] - 35:4, 36:11, 36:12, 38:19, 42:3, 66:4
**Adam** [2] - 1:19, 2:10
**adding** [1] - 13:8
**additional** [2] - 8:20, 67:2

**address** [7] - 14:6, 14:7, 14:8, 14:9, 32:14, 49:6
**addressed** [2] - 31:21, 40:11
**addressing** [1] - 61:15
**ADEA** [1] - 42:20
**adjacent** [1] - 2:19
**adjudicated** [1] - 31:12
**advantageous** [1] - 53:23
**aerial** [1] - 37:5
**aerials** [1] - 35:25
**affected** [1] - 48:2
**affidavit** [2] - 25:8, 50:23
**affirm** [1] - 64:4
**affirmatively** [1] - 22:25
**affirmed** [2] - 9:14, 24:22, 27:9
**affirming** [1] - 50:24
**affirms** [1] - 11:18
**afforded** [1] - 2:15
**afoul** [1] - 58:5
**afternoon** [2] - 66:25, 68:7
**age** [1] - 51:21
**agencies** [2] - 46:14, 47:3
**agency** [4] - 26:11, 27:4, 31:24, 52:14
**Agency** [1] - 57:20
**aggrieve** [1] - 19:18
**ago** [2] - 13:9, 27:9
**agreed** [1] - 60:16
**ahead** [2] - 3:13, 9:17
**aisle** [1] - 54:10
**akin** [1] - 19:21
**albeit** [1] - 38:10
**Alden** [8] - 14:8, 24:25, 27:4, 27:11, 27:22, 29:4, 54:16, 59:20
**allegations** [2] - 34:19, 34:20
**alleged** [1] - 25:6
**allow** [1] - 61:14
**allowed** [2] - 2:16, 21:23
**allows** [2] - 18:5, 18:9
**alludes** [1] - 13:22
**almost** [3] - 5:1, 50:17
**alternative** [2] - 34:12, 52:8
**ambiguity** [1] - 26:21
**ambit** [1] - 31:6
**amended** [4] - 13:7,

43:24, 44:2, 65:21
**Amendment** [32] - 3:2, 7:24, 8:14, 9:2, 9:4, 9:16, 10:3, 13:16, 18:22, 20:4, 21:11, 21:14, 21:17, 21:18, 23:4, 23:17, 24:18, 47:24, 48:4, 48:8, 48:19, 50:3, 54:2, 54:6, 54:15, 55:13, 56:22, 57:2, 58:1, 58:5, 61:23, 62:1
**amendment** [3] - 21:18, 65:11, 65:12
**amount** [1] - 33:7
**amplifies** [1] - 57:13
**analysis** [14] - 8:4, 8:5, 8:7, 9:11, 14:13, 19:15, 20:6, 22:3, 25:10, 25:11, 39:11, 61:18, 62:22, 63:3
**analyze** [2] - 18:21, 19:13
**analyzed** [1] - 8:2
**analyzing** [1] - 20:15
**angles** [1] - 61:21
**animal** [2] - 13:19, 42:21
**answer** [13] - 15:3, 17:24, 21:6, 21:8, 22:3, 32:17, 32:20, 33:16, 34:13, 53:9, 66:21, 66:22
**answers** [2] - 16:6, 27:2
**anti** [2] - 51:7, 51:8
**anti-fracking** [1] - 51:8
**anyway** [1] - 31:18
**appeal** [2] - 17:18, 24:22
**appeared** [1] - 14:10
**appearing** [1] - 16:14
**appended** [2] - 13:5, 45:17
**appertains** [1] - 11:25
**application** [1] - 29:7
**applied** [4] - 24:11, 27:22, 29:9, 57:10
**apply** [2] - 17:1, 24:10
**appointed** [1] - 21:22
**appointing** [1] - 43:8
**appreciate** [2] - 14:9, 30:17
**appropriate** [5] - 18:2, 24:3, 31:25, 32:19, 55:3
**appropriates** [1] - 16:19
**approval** [1] - 25:20,

2

32:8
**approvals** [1] - 4:12
**approved** [7] - 13:10, 26:12, 28:23, 32:7, 46:12, 46:15, 54:13
**approximate** [1] - 37:1
**approximated** [1] - 37:5
**area** [1] - 2:18
**Area** [1] - 32:16
**arguably** [1] - 67:7
**argue** [2] - 2:23, 11:4
**argues** [1] - 9:18
**arguing** [3] - 6:3, 23:22, 52:21
**argument** [21] - 4:1, 6:2, 6:4, 7:14, 9:23, 18:10, 18:12, 19:14, 36:13, 38:1, 54:6, 54:15, 57:6, 58:24, 59:5, 62:1, 66:13, 66:14, 66:20, 67:2
**arguments** [1] - 25:4
**arise** [1] - 50:19
**Arnold** [2] - 1:16, 2:9
**arose** [1] - 10:19
**Article** [2] - 12:5, 56:21, 57:3
**articulate** [4] - 10:21, 13:6, 29:22, 40:8
**articulated** [1] - 51:5
**ascendant** [1] - 46:10
**aside** [3] - 34:13, 39:22, 55:13
**aspect** [2] - 30:11, 67:12
**aspects** [1] - 29:22
**asserted** [2] - 5:20, 12:22
**assuming** [1] - 41:2
**Atascadero** [1] - 59:21
**Atkinson** [1] - 49:9
**attached** [1] - 65:9
**attaches** [1] - 64:24
**attacking** [1] - 65:18
**Attorney** [1] - 53:24
**Attorneys** [2] - 1:17, 21:22
**attribute** [1] - 12:1
**August** [2] - 1:9, 69:14
**authority** [33] - 3:1, 5:10, 8:13, 8:19, 10:2, 11:16, 12:4, 12:25, 13:3, 15:7, 16:16, 17:21, 17:23, 30:3, 48:6, 53:25, 55:8, 55:9, 55:10, 55:11, 55:12, 55:15, 55:17, 55:25, 56:1, 56:2, 57:1, 59:12,

59:17, 60:4
**Authority** [1] - 32:16
**authorization** [1] - 27:15
**authorize** [1] - 27:6
**authorized** [5] - 24:5, 25:21, 27:21, 53:20, 65:20
**authorizing** [1] - 26:12
**autonomy** [1] - 30:10
**available** [3] - 17:11, 17:15, 24:18
**avenue** [1] - 17:15
**avoid** [2] - 20:14, 57:24
**avoided** [1] - 58:1
**award** [1] - 30:20
**aware** [3] - 9:13, 25:18, 63:19

## B

**backed** [1] - 53:5
**bad** [1] - 34:7
**badly** [1] - 29:7
**balance** [1] - 38:1
**balancing** [2] - 39:24, 67:11
**ball** [1] - 47:1
**Baltimore** [4] - 1:10, 1:24, 49:19, 50:5
**bar** [3] - 9:2, 21:19, 58:1
**barred** [1] - 9:15
**barren** [1] - 42:7
**barrier** [2] - 48:20, 51:13
**barriers** [1] - 51:3
**base** [1] - 57:23
**based** [7] - 9:5, 22:6, 24:17, 47:2, 47:3, 62:20
**bases** [1] - 6:23
**basis** [2] - 6:17, 62:11
**basket** [1] - 57:8
**battle** [1] - 4:20
**bear** [2] - 32:1, 47:15
**become** [2] - 43:23, 64:24
**beef** [1] - 14:23
**BEFORE** [1] - 1:12
**begin** [4] - 2:16, 29:25, 31:14, 33:9
**beginning** [5] - 4:6, 16:15, 27:17, 45:5, 53:4
**behalf** [6] - 8:25, 9:3, 17:23, 48:1, 52:5, 54:1
**behind** [1] - 61:3

**believes** [1] - 53:23
**belonging** [1] - 50:19
**below** [1] - 46:9
**beneath** [1] - 37:11
**benefit** [2] - 12:24, 49:13
**beside** [1] - 32:17
**bet** [1] - 63:19
**better** [4] - 6:19, 35:8, 36:17, 47:10
**between** [6] - 10:23, 23:1, 25:5, 26:2, 28:6, 68:4
**beyond** [1] - 24:23
**bidding** [4] - 43:8, 43:10, 43:11, 43:14
**big** [1] - 18:8
**binder** [1] - 67:19
**bit** [10] - 6:11, 9:17, 14:11, 14:15, 15:10, 24:7, 36:6, 38:14, 47:15, 52:15
**bites** [1] - 29:12
**black** [2] - 24:16, 46:3
**Blackmun** [2] - 10:12, 20:7
**blanket** [1] - 28:20, 38:22
**Blatchford** [15] - 6:7, 14:8, 18:19, 18:24, 19:21, 54:11, 57:8, 57:10, 57:12, 59:1, 59:3, 61:19, 61:22
**Board** [1] - 51:7
**body** [3] - 11:15, 12:12, 67:14
**bond** [2] - 33:8, 67:8
**Boom** [9] - 8:2, 11:11, 11:21, 11:22, 15:9, 26:13, 29:8, 63:25, 64:20
**bottom** [1] - 36:22
**bow** [1] - 41:4
**box** [2] - 22:8, 24:2
**Brennan** [2] - 10:12, 20:7
**brethren** [1] - 14:10
**bridge** [2] - 47:21, 49:22
**bridges** [1] - 49:22
**brief** [23] - 3:7, 4:4, 8:18, 9:7, 9:8, 9:9, 12:8, 12:21, 13:5, 14:7, 22:4, 35:2, 40:20, 47:10, 49:1, 49:6, 51:6, 52:17, 52:18, 54:22, 62:7, 65:9, 66:4
**briefing** [6] - 3:14, 6:10, 34:18, 38:17,

40:8
**briefs** [3] - 2:22, 3:6, 4:24
**bring** [10] - 9:3, 14:20, 19:19, 21:24, 31:25, 56:4, 57:17, 58:10, 62:10, 62:16
**bringing** [2] - 21:20, 23:5
**broad** [1] - 18:10
**broken** [1] - 52:1
**brought** [9] - 21:20, 21:21, 22:23, 23:16, 24:12, 24:21, 54:17, 61:23, 62:21
**build** [3] - 46:17, 47:21, 51:17
**building** [2] - 46:19, 53:21
**built** [1] - 46:20
**bunch** [1] - 52:1
**Burger** [2] - 15:1, 15:3
**burst** [1] - 34:2
**business** [1] - 46:19
**buying** [1] - 51:4

## C

**cannot** [5] - 4:2, 5:5, 7:17, 46:17, 61:22
**capacity** [2] - 8:25, 62:17
**car** [2] - 60:21, 60:22
**care** [2] - 29:20, 41:13
**carefully** [1] - 64:9
**Carmack** [14] - 6:21, 7:4, 8:3, 15:13, 26:13, 29:8, 50:8, 54:21, 54:24, 54:25, 64:9, 64:18, 65:1
**carried** [1] - 56:19
**carrying** [1] - 49:24
**CASE** [1] - 1:4
**case** [88] - 2:23, 3:6, 3:14, 3:16, 4:3, 4:10, 4:19, 6:5, 6:21, 7:5, 7:16, 7:17, 8:17, 8:21, 8:22, 8:23, 9:5, 10:18, 11:11, 11:12, 11:14, 11:19, 11:20, 11:21, 12:3, 13:21, 14:2, 14:5, 14:10, 15:13, 16:5, 19:13, 22:19, 23:1, 23:3, 23:16, 25:5, 26:11, 27:1, 27:8, 27:12, 28:18, 30:1, 30:13, 32:16, 32:20, 33:9, 33:14, 34:20, 39:6, 41:17, 41:18, 47:13,

47:14, 47:19, 48:24, 49:7, 49:9, 49:20, 50:17, 50:19, 50:21, 51:12, 54:21, 55:19, 56:7, 57:14, 57:15, 57:18, 58:16, 58:19, 59:4, 61:16, 61:17, 61:18, 61:20, 62:2, 62:19, 63:25, 64:4, 65:25, 66:13, 67:14
**cases** [38] - 4:11, 9:14, 10:25, 11:2, 11:13, 11:17, 13:24, 14:1, 14:6, 15:5, 16:8, 19:5, 19:24, 20:2, 20:23, 20:24, 22:7, 26:14, 30:23, 31:6, 31:7, 32:15, 35:3, 39:7, 42:20, 44:10, 47:7, 47:8, 48:23, 49:5, 51:12, 54:16, 59:21, 61:15, 62:18, 63:24, 65:17
**categories** [1] - 54:19
**category** [1] - 14:12
**caused** [4] - 6:18, 7:3, 34:2, 43:25
**causes** [2] - 11:5, 19:19
**cautious** [2] - 30:3, 30:6
**certain** [4] - 16:22, 41:12, 45:9, 51:20
**certainly** [1] - 39:23
**certainty** [1] - 39:10
**CERTIFICATE** [1] - 69:1
**certificate** [7] - 25:11, 28:21, 43:21, 45:17, 45:21, 63:11, 67:21
**certificated** [8] - 25:9, 25:19, 25:22, 28:22, 28:24, 43:23, 51:17, 65:19
**certification** [4] - 5:10, 13:9, 25:21, 39:1
**Certified** [1] - 69:6
**certify** [1] - 69:8
**chain** [1] - 23:22
**challenge** [14] - 9:4, 14:24, 17:21, 20:20, 20:21, 23:12, 32:25, 33:16, 34:20, 40:11, 40:15, 40:16, 48:4, 49:21
**challenges** [3] - 49:12, 62:11, 66:5
**challenging** [3] - 13:25, 14:1, 19:8
**change** [3] - 17:13,

Nadine M. Gazic, RMR, CRR - Federal Official Court Reporter

45:7, 64:6
**changed** [1] - 12:9
**Chao** [11] - 4:19, 4:23, 5:22, 22:17, 22:19, 24:20, 27:8, 27:22, 54:3, 57:10, 62:19
**chasing** [1] - 31:23
**circle** [3] - 18:11, 26:23, 63:23
**circuit** [1] - 50:6
**Circuit** [33] - 6:7, 6:25, 8:16, 8:21, 8:23, 9:5, 9:8, 9:10, 9:12, 9:13, 9:20, 17:6, 22:9, 23:21, 24:8, 29:9, 30:23, 31:8, 32:13, 32:15, 33:16, 46:4, 46:9, 47:14, 47:18, 48:19, 57:15, 57:16, 57:18, 58:8, 62:9, 62:17
**circularly** [1] - 38:16
**circumstances** [3] - 19:4, 31:5, 46:18
**circumvent** [1] - 59:8
**cite** [7] - 4:3, 6:22, 8:20, 9:6, 38:16, 47:11, 48:24
**cited** [8] - 8:17, 14:6, 20:24, 25:21, 32:2, 35:1, 54:22, 66:3
**cites** [6] - 11:19, 16:20, 31:7, 38:18, 46:3, 50:8
**cities** [1] - 47:24
**citizen** [3] - 7:24, 42:12, 50:3
**citizenry** [6] - 7:21, 29:18, 30:11, 34:6, 37:6, 39:25
**citizens** [9] - 8:19, 10:2, 26:18, 27:6, 38:8, 38:11, 48:1, 48:3, 49:13
**City** [2] - 47:17, 49:2
**city** [6] - 47:20, 47:22, 47:23, 47:25, 48:21
**Civil** [1] - 2:3
**claim** [7] - 21:25, 23:5, 23:6, 24:21, 48:19, 62:16, 62:21
**Claim** [1] - 22:10
**Claims** [7] - 8:22, 9:15, 21:12, 21:16, 57:22, 58:11, 62:16
**claims** [6] - 21:20, 23:10, 23:20, 24:12, 33:22, 57:17
**classification** [1] - 10:15

**clause** [6] - 10:3, 13:16, 21:14, 56:22, 57:4, 61:9
**clean** [1] - 24:15
**clear** [12] - 19:11, 20:8, 32:13, 32:15, 39:4, 54:7, 56:14, 56:24, 59:1, 59:5, 59:24, 62:12
**clearly** [6] - 10:21, 13:6, 21:19, 51:23, 53:16, 57:8
**CLERK** [2] - 2:2, 2:8
**clerk** [1] - 66:17
**client** [1] - 4:17
**climb** [1] - 4:20
**close** [4] - 17:3, 37:4, 50:20, 53:13
**closely** [1] - 10:8
**closes** [1] - 46:23
**co** [3] - 61:2, 61:4, 61:6
**co-equal** [3] - 61:2, 61:4, 61:6
**cognizant** [1] - 63:16
**collected** [1] - 31:6
**COLUMBIA** [1] - 1:3
**Columbia** [18] - 1:17, 2:3, 2:15, 2:23, 18:5, 25:22, 29:14, 33:21, 34:4, 37:20, 39:19, 43:9, 51:25, 52:5, 53:7, 56:17, 68:21
**comfort** [1] - 47:10
**coming** [8] - 11:15, 15:24, 18:12, 18:13, 20:15, 33:17, 34:14, 64:8
**comments** [1] - 38:12
**commerce** [1] - 57:4
**Commission** [3] - 17:23, 25:9, 46:12
**common** [3] - 33:23, 60:8, 60:19
**communicate** [1] - 26:9
**communication** [1] - 50:18
**companies** [10] - 5:10, 13:9, 17:15, 18:5, 19:9, 19:19, 31:11, 39:1, 44:1, 60:12
**company** [11] - 7:1, 7:17, 8:12, 13:2, 25:22, 42:17, 46:18, 48:12, 50:12, 54:14
**Company** [2] - 11:22, 49:9
**company's** [3] - 49:11, 49:17, 65:19

**compared** [1] - 10:11
**compensation** [1] - 31:12
**competitive** [1] - 43:16
**complaint** [3] - 25:6, 25:8, 45:18
**complete** [3] - 15:10, 31:18, 41:25
**completely** [4] - 6:20, 9:10, 9:12, 60:15
**complex** [1] - 14:11
**complicated** [1] - 5:11
**compliment** [1] - 66:12
**concede** [3] - 5:1, 53:11, 57:7
**conceivable** [1] - 17:12
**concept** [1] - 9:18
**concepts** [3] - 19:1, 19:6, 64:22
**concern** [2] - 37:17, 37:18
**concerned** [1] - 12:15
**concerns** [5] - 25:18, 37:6, 37:21, 51:8
**concession** [1] - 60:16
**conclude** [1] - 62:5
**concluded** [1] - 68:25
**concludes** [1] - 61:21
**conclusion** [2] - 8:6, 50:10
**condemn** [21] - 5:8, 7:17, 8:13, 13:3, 16:17, 16:22, 17:23, 18:6, 26:12, 27:21, 34:22, 43:19, 44:1, 53:12, 53:15, 55:1, 55:4, 55:21, 55:24, 64:15, 65:6
**Condemnation** [1] - 53:18
**condemnation** [17] - 5:9, 12:25, 13:3, 13:12, 17:2, 17:5, 28:22, 33:2, 34:10, 44:3, 45:18, 48:20, 49:14, 53:22, 53:25, 54:25, 55:7
**condemned** [2] - 49:10, 49:16
**condition** [2] - 3:25, 42:3
**conduct** [2] - 58:23, 60:14
**Conference** [1] - 69:12
**confidence** [3] -

31:24, 46:20, 47:2
**conflict** [1] - 68:6
**conflicting** [4] - 64:12, 64:13, 64:14, 64:15
**conflicts** [1] - 46:10
**conformance** [1] - 69:11
**confused** [1] - 6:11
**Congress** [26] - 11:3, 11:4, 12:5, 12:16, 13:6, 13:7, 13:14, 16:18, 16:20, 17:2, 17:8, 17:13, 17:14, 18:7, 19:17, 20:1, 38:4, 44:2, 47:20, 48:6, 49:23, 50:13, 56:15, 59:24, 60:1, 65:7
**Congress'** [2] - 20:5, 49:24
**Congressional** [1] - 20:12
**connect** [1] - 44:14
**consent** [17] - 7:8, 7:11, 9:19, 15:12, 15:16, 15:21, 18:20, 18:21, 18:23, 28:9, 42:3, 50:17, 56:13, 59:23, 60:20, 60:22
**consented** [5] - 54:17, 56:9, 56:16, 56:18, 59:16
**consents** [1] - 60:9
**considerations** [1] - 60:13
**constitution** [2] - 42:5, 49:23
**Constitution** [5] - 7:8, 7:10, 28:9, 43:2, 60:17
**Constitutional** [1] - 7:19
**constitutional** [8] - 12:1, 19:25, 25:2, 39:12, 42:9, 57:25, 60:7, 60:24
**construct** [2] - 2:16, 65:19
**constructed** [2] - 4:3, 28:19
**constructing** [1] - 34:5
**construction** [15] - 12:14, 27:19, 31:10, 31:14, 31:23, 33:9, 33:12, 33:24, 35:4, 35:7, 38:23, 46:11, 49:11, 49:17, 63:15
**construed** [2] - 38:16, 44:9

**contemplated** [1] - 32:18
**contemporary** [1] - 30:19
**context** [14] - 6:22, 10:5, 16:25, 18:21, 26:7, 54:2, 57:13, 58:12, 58:13, 58:17, 59:18, 60:24, 62:9, 64:4
**contexts** [1] - 59:19
**continue** [1] - 35:22
**continuing** [1] - 58:14
**control** [6] - 12:17, 24:25, 27:7, 54:12, 62:25, 63:1
**controlled** [1] - 27:16
**controlling** [1] - 38:20
**controversial** [2] - 63:18, 64:3
**convenient** [1] - 20:13
**conveniently** [1] - 17:16
**conversant** [1] - 3:8
**conversation** [1] - 40:20
**convey** [1] - 60:21
**cooperatively** [1] - 46:16
**Copenhaver** [4] - 4:9, 30:23, 34:16, 35:2
**corporation** [2] - 50:1
**corporations** [4] - 17:3, 49:24, 64:2, 65:22
**correct** [8] - 10:8, 24:9, 36:20, 40:1, 61:8, 63:6, 68:8, 69:9
**correctly** [2] - 6:8, 39:15
**corresponded** [1] - 25:17
**counsel** [5] - 2:6, 2:8, 2:9, 62:8, 68:15
**Counsel** [15] - 2:13, 53:2, 54:21, 57:13, 58:24, 61:25, 62:14, 64:8, 64:21, 66:12, 67:16, 67:19, 68:20, 68:23
**Counsel's** [2] - 38:17, 40:20
**counterbalance** [2] - 40:7, 40:12
**County** [2] - 1:5, 2:4
**couple** [7] - 15:9, 29:12, 32:15, 41:5, 48:10, 62:7, 63:24
**course** [3] - 58:3,

58:15, 63:18
**Court** [72] - 1:23, 2:2, 2:11, 6:6, 6:8, 6:9, 6:12, 6:19, 6:21, 8:10, 8:24, 9:2, 9:4, 9:7, 9:13, 9:22, 10:5, 10:25, 11:6, 14:24, 15:4, 16:8, 18:17, 19:24, 20:13, 21:9, 21:19, 22:7, 23:7, 25:12, 27:9, 28:10, 28:16, 29:19, 30:2, 30:5, 33:1, 33:7, 33:8, 38:5, 38:10, 38:19, 40:23, 41:2, 47:10, 49:7, 49:14, 50:4, 50:5, 50:6, 50:10, 54:16, 55:5, 55:25, 57:12, 57:19, 57:21, 58:2, 58:7, 59:3, 59:21, 60:6, 61:10, 61:13, 61:14, 61:23, 62:2, 63:24, 64:1, 67:23, 67:24, 69:7
**COURT** [106] - 1:1, 2:7, 2:12, 3:13, 3:23, 4:16, 5:15, 5:19, 5:23, 7:20, 9:22, 9:25, 10:14, 12:3, 13:13, 14:5, 14:16, 14:20, 15:1, 15:23, 16:7, 16:10, 16:12, 18:1, 20:3, 20:9, 21:13, 22:17, 22:19, 22:21, 23:9, 24:8, 24:13, 25:13, 26:17, 26:20, 26:25, 28:1, 29:14, 30:8, 31:17, 32:3, 32:6, 32:11, 33:4, 33:19, 33:25, 34:11, 35:24, 36:1, 36:9, 36:13, 36:18, 36:23, 37:3, 37:13, 39:3, 39:18, 40:3, 41:6, 41:9, 41:19, 42:13, 42:16, 42:22, 43:3, 44:17, 44:20, 44:22, 44:24, 45:5, 45:9, 45:13, 45:19, 45:21, 45:24, 46:1, 46:25, 47:5, 47:16, 48:9, 48:12, 48:24, 51:20, 52:11, 52:16, 52:20, 52:23, 53:1, 53:10, 56:6, 56:20, 61:4, 61:8, 62:6, 63:5, 63:8, 65:11, 66:11, 68:2, 68:8, 68:10, 68:14, 68:17, 68:23, 69:18

**court** [14] - 15:19, 16:16, 31:16, 54:1, 56:4, 56:16, 57:11, 58:4, 58:11, 59:23, 60:4, 60:10, 61:12, 65:15
**Court's** [5] - 2:25, 19:14, 20:6, 56:12, 59:6
**courthouse** [2] - 55:1, 55:2
**Courtroom** [1] - 1:9
**courtroom** [1] - 2:13
**courts** [1] - 57:9
**covered** [1] - 7:25
**crazy** [1] - 41:14
**created** [2] - 12:10, 56:21
**creates** [1] - 12:12, 51:13
**creating** [2] - 19:22, 51:3
**CRIMINAL** [1] - 1:4
**cross** [1] - 36:24
**crossed** [1] - 50:20
**crosses** [1] - 35:19
**crossing** [1] - 50:25
**CRR** [2] - 1:22, 69:17
**crystal** [1] - 47:1
**curious** [2] - 36:2, 36:14
**cut** [1] - 6:24

## D

**dam** [1] - 49:11, 49:17
**damage** [2] - 33:15, 34:2
**damages** [1] - 33:15
**Dated** [1] - 69:14
**Davenport** [4] - 47:17, 47:21, 48:21, 49:2
**David** [2] - 1:15, 2:8
**days** [1] - 66:17
**DC** [1] - 46:9
**dealing** [2] - 12:20, 33:4
**decide** [3] - 18:8, 40:25, 41:1
**deciding** [1] - 27:12
**decision** [11] - 6:6, 6:25, 8:9, 27:9, 57:11, 57:12, 57:19, 57:24, 58:8, 59:9, 67:5
**decisions** [3] - 10:9, 10:10, 51:23
**declaration** [2] - 25:7, 31:10, 31:22
**declarations** [2] -

35:8, 35:10
**decline** [1] - 4:18
**deemed** [1] - 62:15
**deep** [1] - 35:11
**deeper** [1] - 6:18
**defendant** [1] - 2:9
**Defendant** [2] - 1:7, 1:18
**defendants** [1] - 55:3
**defense** [1] - 19:25
**defenses** [2] - 24:9, 24:11
**defined** [1] - 62:15
**definitely** [2] - 26:17, 53:6
**degree** [1] - 62:25
**delay** [1] - 46:11
**delegate** [11] - 8:18, 10:1, 16:21, 16:23, 26:15, 38:6, 44:3, 48:16, 59:17, 59:19, 60:4
**delegated** [18] - 5:13, 8:12, 8:15, 9:20, 10:23, 26:14, 28:7, 34:3, 39:13, 47:19, 48:6, 62:12, 62:17, 64:2, 64:5, 64:11, 64:23
**delegates** [5] - 55:6, 55:7, 55:8, 55:15, 55:16
**delegating** [1] - 59:11
**delegation** [18] - 3:1, 9:23, 15:6, 18:25, 19:2, 19:10, 19:13, 38:7, 38:15, 42:16, 48:8, 48:14, 49:14, 57:8, 59:4, 60:5, 63:23, 66:4
**delegations** [1] - 47:9
**delegees** [1] - 38:2
**delivering** [1] - 12:24
**delivery** [1] - 26:2
**demand** [1] - 42:5
**demonstrate** [1] - 43:16
**demonstrative** [1] - 36:5
**demonstratives** [1] - 67:20
**denied** [2] - 14:24, 32:8
**Department** [12] - 1:6, 2:5, 25:13, 25:16, 27:24, 28:2, 32:6, 32:7, 35:6, 35:14, 53:15, 67:21
**dependent** [3] - 7:11, 8:9, 42:10

**deposit** [1] - 33:7
**depth** [3] - 6:16, 35:18, 35:20
**deputy** [1] - 2:13
**described** [3] - 35:7, 43:20, 60:5
**designate** [1] - 51:25
**designated** [2] - 8:19, 43:8
**detail** [5] - 12:21, 35:8, 43:21, 61:20, 62:19
**detailed** [1] - 25:11
**determinative** [1] - 3:10
**determine** [1] - 20:12
**developed** [1] - 12:3
**dicta** [2] - 10:18, 19:4
**differ** [1] - 10:17
**difference** [8] - 10:22, 11:8, 25:5, 27:3, 27:25, 28:5, 28:17, 39:11
**differences** [1] - 29:1
**different** [25] - 7:25, 10:19, 13:19, 16:10, 16:17, 19:4, 19:15, 20:15, 20:16, 21:3, 28:11, 29:3, 29:4, 39:7, 42:19, 42:21, 43:12, 56:5, 58:9, 58:12, 60:12, 60:15, 61:21, 66:1
**differentiate** [1] - 26:19
**digest** [1] - 66:14
**digging** [2] - 30:9, 30:14
**dignity** [1] - 61:2
**dilemma** [1] - 50:16
**diminished** [1] - 42:1
**direct** [1] - 67:4
**directional** [1] - 35:11
**directly** [3] - 2:19, 16:19, 34:7
**disagree** [1] - 66:22
**disagreed** [1] - 57:15
**discuss** [2] - 67:8, 67:9
**discussed** [3] - 40:9, 62:19, 63:1
**discussing** [1] - 40:5
**discussion** [6] - 5:22, 20:18, 22:14, 22:15, 34:15, 54:23
**dismiss** [2] - 6:14, 24:20
**Dismiss** [1] - 32:19
**dismissals** [1] - 24:9
**dismissed** [7] - 22:21, 22:22, 23:6, 23:10,

23:12, 23:14, 54:5
**dispatched** [1] - 66:17
**dispose** [1] - 62:20
**disposed** [2] - 40:11, 40:12
**disposes** [1] - 40:23
**dispositive** [2] - 46:13, 54:15
**dispute** [1] - 64:3
**disputing** [1] - 42:22
**disrupting** [1] - 29:20
**disruption** [2] - 30:1, 37:7
**disruptive** [1] - 29:17
**dissents** [1] - 10:10
**distance** [1] - 35:21
**distinction** [2] - 23:1, 29:13
**distinguish** [1] - 22:17
**distinguished** [1] - 56:6
**distinguishes** [2] - 47:12, 63:3
**distraction** [1] - 22:15
**DISTRICT** [2] - 1:1, 1:1
**district** [1] - 49:20
**District** [13] - 4:8, 6:6, 8:24, 9:2, 9:4, 14:23, 15:4, 27:9, 28:16, 29:19, 30:24, 69:7
**districts** [1] - 4:10
**disturbance** [1] - 35:12
**dive** [1] - 6:18
**diversion** [1] - 22:14
**DIVISION** [1] - 1:2
**Docket** [1] - 2:3
**dockets** [1] - 5:6
**domain** [43] - 5:14, 7:7, 11:9, 11:24, 12:11, 15:6, 15:7, 15:18, 15:19, 16:18, 16:21, 18:6, 26:14, 26:16, 28:8, 38:16, 39:14, 41:25, 42:19, 44:5, 47:20, 48:5, 51:16, 55:9, 55:13, 55:14, 55:15, 55:19, 55:20, 55:25, 56:1, 56:2, 56:8, 56:19, 59:13, 59:18, 64:1, 64:20, 64:25, 65:1, 65:4, 65:22
**done** [13] - 5:15, 16:25, 20:14, 27:15, 40:24, 41:7, 41:8, 43:6, 43:22, 49:13, 63:20, 66:7
**doubles** [1] - 9:8
**doubt** [2] - 58:6, 58:9

**down** [16] - 6:3, 6:6, 8:3, 9:9, 9:10, 14:2, 18:14, 20:23, 22:3, 29:4, 31:23, 39:12, 40:21, 41:17, 46:9, 52:1
**drag** [1] - 40:22
**drag-out** [1] - 40:22
**drill** [3] - 35:11, 35:15
**drilling** [3] - 20:23, 29:25, 41:17
**drills** [1] - 29:23
**drive** [2] - 60:20, 60:22
**driven** [1] - 43:13
**driving** [1] - 41:14
**during** [1] - 33:12
**dynamic** [1] - 45:7
**dysfunction** [1] - 52:9

### E

**easement** [2] - 35:22, 36:12
**easier** [2] - 49:1, 52:15
**Education** [1] - 11:2
**effective** [3] - 11:7, 51:13, 65:5
**effectiveness** [1] - 15:17
**effectuate** [2] - 49:10, 49:16
**eggs** [1] - 57:8
**eight** [2] - 2:16, 58:7
**eight-inch** [1] - 2:16
**either** [7] - 11:4, 52:13, 56:14, 60:7, 66:18, 67:7, 68:16
**elaborated** [1] - 54:23
**Eleventh** [26] - 3:2, 7:24, 8:14, 9:2, 9:4, 9:16, 18:22, 21:11, 21:17, 23:4, 23:17, 24:18, 47:24, 48:4, 48:8, 48:18, 50:3, 54:2, 54:6, 54:15, 55:13, 57:25, 58:5, 61:3, 61:23, 62:1
**eliminated** [1] - 4:22
**emergency** [1] - 3:5
**eminent** [43] - 5:13, 7:7, 11:9, 11:23, 12:11, 15:6, 15:7, 15:18, 15:19, 16:18, 16:21, 18:6, 26:14, 26:16, 28:7, 38:15, 39:13, 39:14, 41:25, 42:19, 44:5, 47:20, 48:5, 51:16, 55:8, 55:13, 55:14, 55:15, 55:19, 55:20, 55:25,

56:1, 56:2, 56:8, 56:19, 59:13, 59:18, 64:1, 64:19, 64:25, 65:1, 65:4, 65:22
**empowered** [1] - 18:7
**enacted** [3] - 11:3, 12:16, 57:4
**enacting** [1] - 16:19
**enactment** [1] - 19:25
**encountered** [1] - 12:20
**end** [9] - 3:8, 4:20, 5:22, 25:19, 38:18, 43:13, 46:14, 51:6, 62:2
**ended** [3] - 28:16, 29:10, 43:8
**ends** [1] - 29:8
**Energy** [2] - 17:22, 25:9
**enforcement** [3] - 13:16, 38:4, 56:22
**enjoining** [1] - 59:15
**enjoyment** [1] - 42:4
**enlarged** [1] - 42:1
**entertain** [2] - 66:20, 67:2
**entertaining** [1] - 67:4
**entire** [2] - 12:13, 12:16
**entirely** [1] - 9:9
**entities** [5] - 22:19, 55:16, 60:18, 61:5, 61:12
**entitled** [2] - 40:14, 69:10
**entity** [5] - 7:20, 16:3, 48:5, 48:9, 56:10
**entry** [2] - 35:15, 36:21
**Environment** [5] - 25:13, 25:16, 32:7, 35:6, 67:22
**environmental** [4] - 25:10, 37:19, 37:22, 37:24
**envisions** [1] - 40:21
**EPE** [1] - 25:6
**equal** [3] - 61:2, 61:4, 61:6
**equipment** [1] - 29:24
**equities** [2] - 38:1, 67:12
**erection** [1] - 53:20
**especially** [1] - 3:4
**Esquire** [5] - 1:15, 1:16, 1:16, 1:19, 1:20
**established** [1] - 19:13

**establishes** [1] - 56:24
**estate** [2] - 53:20, 53:22
**event** [1] - 23:15
**evidence** [3] - 13:23, 13:24, 62:13
**evidenced** [1] - 65:8
**evidentiary** [1] - 40:22
**evolving** [1] - 41:16
**ex** [2] - 49:8, 57:20
**exactly** [9] - 13:18, 26:20, 27:22, 28:13, 44:19, 50:22, 51:11, 59:7, 61:21
**example** [2] - 19:17, 48:23
**examples** [1] - 16:20
**except** [2] - 18:10, 44:8
**exception** [1] - 10:14
**executing** [2] - 17:3, 39:10
**exercise** [12] - 4:19, 10:23, 13:11, 15:7, 26:16, 27:6, 29:20, 30:3, 42:6, 44:5, 48:5, 56:7
**exercised** [2] - 42:2, 50:15
**exercises** [2] - 16:18, 53:25
**exercising** [5] - 16:1, 24:24, 30:3, 32:10, 50:14
**exhaustive** [1] - 43:20
**Exhibit** [1] - 36:4
**exhibit** [4] - 13:5, 36:6, 36:22, 45:17
**exhibits** [2] - 67:19, 67:20
**exigency** [1] - 17:9
**existence** [1] - 42:11
**existing** [1] - 53:17
**exit** [1] - 37:1
**expedite** [1] - 15:10
**expensive** [1] - 43:20
**explain** [2] - 6:19, 62:9
**explained** [2] - 7:6, 50:10
**explaining** [2] - 24:23, 64:20
**explains** [1] - 7:9
**express** [7] - 7:22, 12:4, 12:8, 13:13, 38:4, 58:3, 64:11
**expressed** [6] - 10:6, 22:6, 22:7, 38:6, 38:25, 65:5
**expresses** [2] - 21:10,

57:9
**expressly** [9] - 9:8, 11:4, 18:9, 19:18, 26:15, 56:21, 63:25, 65:2, 65:3
**extent** [4] - 35:9, 45:9, 50:15, 51:21
**extraordinarily** [1] - 30:15
**extraordinary** [3] - 29:20, 30:5, 31:1
**extreme** [1] - 2:25
**extremely** [1] - 10:11
**eye** [1] - 19:4

### F

**F.2d** [1] - 49:3
**F.9** [1] - 49:20
**face** [5] - 6:2, 22:8, 33:22, 62:12, 66:5
**facilities** [2] - 12:14, 46:12
**fact** [11] - 4:24, 11:11, 13:24, 29:21, 34:7, 34:21, 48:19, 50:12, 54:14, 62:21, 66:8
**factor** [1] - 29:2
**factors** [3] - 40:7, 40:23, 43:16
**facts** [3] - 3:8, 3:9, 54:24
**factual** [2] - 22:25, 25:4
**factually** [3] - 28:15, 29:1, 47:6
**fail** [2] - 22:8
**failed** [1] - 39:20
**Fair** [3] - 11:1, 28:6, 42:20
**fair** [2] - 21:15, 61:5
**False** [8] - 8:22, 9:15, 21:12, 21:16, 22:10, 57:22, 58:11, 62:15
**far** [3] - 35:4, 37:5, 62:16
**favor** [2] - 8:24, 59:10
**favorite** [2] - 30:22
**feasible** [1] - 52:6
**Fedder** [7] - 1:15, 2:8, 3:3, 62:6, 67:3, 67:17, 68:11
**FEDDER** [94] - 3:12, 3:17, 4:2, 5:4, 5:17, 5:21, 5:24, 7:23, 9:24, 10:4, 10:16, 12:6, 13:18, 14:14, 14:17, 14:21, 15:2, 16:4, 16:9, 16:11, 16:13, 18:11, 20:5,

20:10, 21:15, 22:18, 22:20, 22:22, 23:10, 24:11, 24:15, 25:15, 26:19, 26:22, 27:1, 28:4, 30:4, 30:16, 31:20, 32:4, 32:9, 32:22, 33:6, 33:22, 34:9, 34:13, 35:25, 36:4, 36:11, 36:15, 36:19, 36:24, 37:4, 38:13, 39:6, 40:2, 40:5, 41:7, 41:14, 41:21, 42:15, 42:18, 42:24, 43:11, 44:19, 44:21, 44:23, 45:3, 45:8, 45:12, 45:15, 45:20, 45:23, 45:25, 46:2, 47:1, 47:6, 47:17, 48:10, 48:13, 48:25, 51:19, 52:3, 52:14, 52:19, 62:7, 63:7, 63:10, 65:13, 67:18, 68:5, 68:9, 68:12, 68:21
**Federal** [76] - 1:23, 3:15, 3:20, 4:23, 5:2, 5:8, 5:11, 5:12, 5:17, 7:10, 8:5, 9:1, 10:1, 10:24, 11:8, 15:24, 15:25, 16:2, 17:7, 17:22, 23:13, 24:13, 24:19, 24:21, 24:24, 25:9, 27:5, 33:20, 34:2, 34:3, 37:20, 38:2, 42:9, 42:13, 42:22, 42:25, 43:4, 43:7, 43:18, 44:24, 47:19, 48:14, 48:15, 50:14, 50:16, 51:21, 51:23, 52:9, 53:11, 53:14, 53:19, 54:5, 54:18, 54:25, 55:4, 55:6, 55:14, 55:20, 55:21, 55:24, 55:25, 56:19, 58:14, 58:17, 58:21, 59:11, 59:14, 59:16, 59:17, 60:9, 60:10, 60:17, 61:6, 62:10, 65:20
**FEDERAL** [1] - 69:18
**federal** [42] - 7:6, 7:7, 13:2, 13:11, 15:7, 15:19, 16:16, 26:11, 27:4, 31:24, 32:1, 32:10, 33:25, 44:3, 44:4, 46:5, 46:6, 46:10, 47:19, 48:7, 50:12, 54:12, 54:13, 54:25, 55:2, 55:7, 55:9, 56:4, 56:16, 58:4, 58:11, 59:23,

60:4, 60:10, 60:11, 60:24, 64:19, 64:21, 64:22, 64:25

**feet** [7] - 35:18, 35:19, 35:20, 35:21, 36:10, 37:11, 37:23

**FERC** [39] - 5:6, 5:12, 13:9, 17:19, 17:20, 25:17, 25:19, 27:14, 27:15, 27:16, 28:18, 31:9, 31:25, 39:1, 43:11, 43:18, 43:21, 43:23, 45:16, 45:21, 46:2, 46:15, 51:17, 54:7, 58:15, 58:16, 58:22, 63:1, 63:5, 63:8, 63:11, 63:13, 63:14, 63:15, 63:16, 63:19, 63:20, 67:21

**FERC's** [1] - 28:20

**FERC-certificated** [1] - 43:23

**few** [1] - 47:8

**field** [3] - 12:13, 12:16, 46:6

**Fifth** [9] - 6:7, 6:25, 8:16, 8:20, 8:23, 9:7, 9:10, 9:19, 57:16

**fight** [1] - 46:24

**figure** [2] - 22:25, 41:18

**file** [1] - 27:12

**filed** [5] - 6:14, 23:18, 24:5, 25:7, 27:24

**filing** [4] - 13:22, 31:13, 46:4, 63:20

**filings** [1] - 35:9

**final** [2] - 13:22, 30:13

**finally** [1] - 31:12

**financial** [1] - 39:20

**fine** [2] - 68:2, 68:16

**first** [19] - 7:5, 7:16, 12:19, 14:3, 14:22, 16:25, 17:20, 18:18, 19:2, 21:19, 34:15, 35:12, 40:10, 40:11, 41:19, 43:9, 54:22, 66:7, 66:12

**fit** [1] - 54:19

**fits** [2] - 17:10, 34:20

**fix** [2] - 43:25, 65:22

**flippant** [1] - 17:8

**Floor** [1] - 1:23

**focus** [1] - 53:7

**focused** [1] - 36:17

**folks** [2] - 53:8, 67:2

**follow** [2] - 31:11, 67:6

**follow-up** [1] - 67:6

**followed** [1] - 57:10

**Footnote** [1] - 45:18

**footnote** [7] - 32:10, 45:25, 55:5, 64:8, 64:9, 65:1

**FOR** [2] - 1:1, 1:11

**foreclosed** [1] - 34:6

**foregoing** [1] - 69:8

**foremost** [1] - 35:12

**form** [4] - 30:23, 40:17, 65:23, 65:24

**format** [1] - 69:11

**forms** [1] - 67:23

**forth** [1] - 46:2

**forward** [11] - 3:24, 8:10, 9:17, 13:11, 15:13, 19:7, 38:22, 40:17, 41:1, 48:18

**fossil** [1] - 51:8

**four** [1] - 67:19

**fours** [1] - 19:23

**Fourteenth** [7] - 10:3, 13:15, 20:3, 21:14, 21:18, 56:22, 57:2

**Fourth** [21] - 9:5, 9:12, 9:13, 17:6, 22:9, 23:20, 24:7, 24:8, 29:9, 30:23, 31:7, 32:13, 32:15, 33:16, 46:3, 57:15, 57:16, 57:18, 58:8, 62:9, 62:17

**fracking** [1] - 51:8

**fuel** [1] - 51:8

**full** [3] - 55:7, 55:10, 55:17

**fundamental** [2] - 10:22, 29:13

**fundamentally** [4] - 13:19, 21:3, 28:11, 42:19

**future** [2] - 17:12, 52:8

### G

**game** [1] - 16:1

**gas** [11] - 2:17, 5:9, 5:16, 7:17, 12:14, 12:15, 18:5, 19:18, 30:10, 34:3, 46:6

**GAS** [1] - 1:3

**Gas** [27] - 1:17, 2:3, 2:15, 2:23, 5:7, 5:9, 7:18, 12:12, 19:20, 29:14, 33:21, 34:4, 37:20, 39:19, 43:9, 43:13, 43:24, 51:25, 53:7, 56:17, 56:20, 57:4, 58:13, 60:1, 60:3, 61:16

**Gazic** [2] - 1:22, 69:5

**GAZIC** [1] - 69:17

**general** [1] - 42:5

**General** [2] - 21:22, 53:24

**generally** [2] - 16:16, 59:12

**GEORGE** [1] - 1:12

**gimme** [1] - 45:10

**gist** [1] - 34:24

**given** [7] - 2:25, 7:10, 9:19, 20:11, 39:9, 51:4, 52:9

**GLR-19-1444** [1] - 2:3

**gotcha** [1] - 37:3

**governing** [1] - 12:12

**Government** [85] - 3:15, 3:20, 4:23, 5:2, 5:8, 5:11, 5:17, 7:11, 8:5, 9:1, 10:1, 10:24, 11:9, 11:25, 15:24, 15:25, 16:2, 17:7, 21:21, 21:24, 23:13, 23:16, 23:19, 24:3, 24:13, 24:19, 24:21, 24:24, 27:5, 32:14, 33:20, 34:2, 34:3, 37:20, 38:2, 38:10, 42:5, 42:9, 42:10, 42:13, 42:23, 42:25, 43:4, 43:7, 43:8, 43:18, 44:25, 47:19, 48:14, 48:15, 50:14, 50:16, 51:22, 51:24, 52:10, 52:12, 53:12, 53:14, 53:20, 53:22, 53:24, 54:5, 54:18, 54:25, 55:4, 55:6, 55:15, 55:20, 55:21, 55:24, 56:1, 58:14, 58:17, 58:21, 59:11, 59:14, 59:16, 59:17, 60:9, 60:11, 60:17, 61:7, 62:10, 65:20

**Government's** [2] - 5:13, 56:19

**grandchildren** [2] - 16:8, 16:9

**granddaddy** [2] - 11:12, 16:5

**grant** [8] - 17:2, 19:18, 38:23, 38:24, 38:25, 44:7, 44:13, 65:4

**granted** [3] - 8:14, 15:17, 31:2

**granting** [1] - 30:5

**grants** [3] - 37:8, 41:2, 42:9

**great** [5] - 9:25, 17:19, 52:12, 57:9, 61:20

**ground** [3] - 31:21, 35:16, 51:4

**grounds** [2] - 57:24, 58:9

**guarantee** [2] - 17:20, 32:4

**guess** [7] - 2:23, 18:2, 27:1, 40:7, 51:20, 65:14, 67:7

**Guy** [1] - 49:8

**guys** [1] - 36:5

### H

**hale** [3] - 59:22, 60:4

**haled** [1] - 61:12

**half** [2] - 31:13

**hand** [4] - 4:13, 43:24, 46:7

**handed** [1] - 6:6

**Handicap** [1] - 11:2

**Haney** [2] - 25:7, 35:9

**Haney's** [2] - 31:10, 50:23

**hang** [1] - 45:19

**happy** [1] - 3:11

**hardly** [1] - 50:18

**harm** [5] - 4:1, 39:23, 39:24, 45:10, 67:12

**harmed** [1] - 6:2

**Harriss** [2] - 1:16, 2:9

**head** [1] - 43:17

**hear** [5] - 3:11, 28:14, 56:17, 57:6, 66:2

**heard** [1] - 66:15

**hearing** [2] - 2:14, 61:25

**heavy** [2] - 29:24, 38:9

**heightened** [1] - 20:11

**held** [6] - 8:17, 8:18, 48:2, 48:19, 55:25, 69:10

**help** [2] - 15:9, 18:15

**helpful** [3] - 23:1, 36:15, 54:24

**helps** [1] - 36:19

**hereby** [1] - 69:7

**high** [4] - 31:24, 43:22, 46:20, 47:2

**highlight** [1] - 57:11

**highways** [1] - 51:1

**history** [2] - 28:15, 65:9

**hit** [2] - 43:17, 43:22

**hold** [2] - 45:1, 54:16

**holder** [1] - 64:6

**holding** [2] - 47:13, 48:18

**hone** [1] - 3:9

**Honor** [61] - 3:12, 3:17, 4:3, 5:4, 5:18, 7:23, 10:4, 11:22,

**Honor's** [1] - 5:25

**HONORABLE** [1] - 1:12

**hope** [1] - 10:21

**hopefully** [2] - 31:25, 63:12

**horizontal** [1] - 35:11

**host** [2] - 13:4, 64:17

**hotel** [1] - 18:14

**hour-and-15** [1] - 52:24

**housekeeping** [1] - 67:18

**Howard** [2] - 1:20, 2:10

**huge** [1] - 11:15

**hum** [1] - 47:5

### I

**idea** [1] - 61:9

**identified** [2] - 22:4, 37:2, 49:5

**identify** [1] - 21:2

**ignores** [1] - 47:9

**Ill** [1] - 1:12

**immunity** [30] - 3:2, 4:21, 5:20, 6:2, 6:3, 6:4, 8:14, 9:16, 13:14, 14:24, 23:4, 24:9, 24:11, 24:18, 33:19, 34:19, 38:3, 40:3, 40:10, 40:24, 47:24, 48:8, 51:6, 56:15, 60:2, 62:11, 62:20, 65:12, 65:13, 66:5

**impact** [1] - 37:22

**implementation** [1] - 39:21

**implemented** [1] - 37:20

12:8, 13:6, 13:18, 14:15, 16:4, 17:14, 18:15, 18:24, 19:16, 21:5, 21:8, 21:15, 22:5, 22:16, 22:23, 26:23, 27:8, 28:4, 28:17, 30:4, 30:16, 31:8, 32:9, 32:23, 33:17, 33:22, 34:9, 34:14, 36:7, 40:6, 40:9, 41:7, 42:21, 45:4, 45:16, 46:8, 47:15, 48:25, 52:3, 52:19, 53:3, 54:3, 57:2, 61:17, 62:4, 62:7, 63:4, 65:10, 66:2, 67:18, 68:5, 68:21, 68:22

**implication** [1] - 44:11
**implicitly** [1] - 19:18
**implied** [5] - 44:11, 56:18, 64:12, 65:3, 65:6
**impliedly** [1] - 11:4
**imply** [1] - 44:11
**important** [3] - 41:9, 54:10, 66:17
**importantly** [2] - 22:13, 63:4
**imposing** [1] - 38:10
**Impossible** [2] - 15:1, 15:2
**improper** [2] - 49:14
**improperly** [1] - 26:23
**IN** [1] - 1:1
**inaccurate** [1] - 63:21
**inch** [1] - 2:16
**inclined** [1] - 29:5
**include** [1] - 39:15
**includes** [3] - 25:20, 32:24, 51:16
**including** [2] - 12:14, 57:9
**inconsistent** [1] - 35:10
**incorporating** [2] - 21:13, 21:14
**incur** [1] - 39:19
**incurring** [1] - 39:19
**independent** [4] - 11:25, 28:8, 28:9, 43:1
**Indiana** [1] - 13:1
**indicated** [3] - 2:13, 53:4, 53:12
**indignity** [2] - 61:10, 61:11
**individual** [1] - 66:24
**individuals** [2] - 23:24, 24:12
**industry** [1] - 52:6
**inferring** [1] - 49:23
**information** [2] - 45:2, 45:14
**inherent** [6] - 7:9, 12:11, 28:8, 43:1, 43:2, 51:16
**injunction** [12] - 2:11, 6:13, 11:13, 11:19, 30:6, 30:18, 31:1, 31:4, 33:3, 33:8, 41:3, 63:13
**INJUNCTION** [1] - 1:11
**injunctions** [3] - 11:16, 34:17, 35:1
**Injunctive** [1] - 32:24
**injunctive** [13] - 2:15,

3:5, 29:18, 30:20, 37:8, 39:21, 40:13, 40:14, 40:15, 40:19, 40:22, 66:19, 67:6
**inquired** [1] - 27:8
**installed** [1] - 37:10
**instance** [1] - 66:8
**instances** [5] - 11:3, 48:11, 48:13, 66:3, 66:4
**instructive** [1] - 50:9
**intended** [4] - 7:25, 56:15, 60:1, 60:3
**intent** [1] - 20:13
**intercede** [2] - 23:11, 23:13
**interest** [3] - 12:18, 38:8, 51:15
**interested** [1] - 17:4
**interesting** [3] - 8:21, 23:2, 50:5
**interests** [1] - 23:24
**interference** [1] - 49:15
**interfering** [1] - 65:18
**Interior** [5] - 4:22, 18:3, 27:24, 28:2, 34:7
**interjecting** [1] - 3:8
**interpret** [1] - 39:15
**interpretation** [1] - 38:15
**interpreting** [1] - 16:10
**interrupting** [1] - 3:9
**interstate** [4] - 13:1, 50:11, 50:18, 50:24
**intervene** [3] - 18:3, 51:22, 58:18
**intervened** [1] - 24:14
**intervenes** [1] - 4:23
**intervening** [2] - 15:24, 43:4
**intuitive** [1] - 17:18
**invaded** [1] - 49:25
**invading** [1] - 38:3
**invite** [1] - 38:19
**invites** [2] - 9:7, 40:18
**invokes** [1] - 21:10
**invoking** [1] - 12:10
**involved** [9] - 22:19, 54:7, 54:8, 55:19, 58:16, 63:5, 63:8, 63:16
**irrelevant** [1] - 37:23
**irreparable** [3] - 3:25, 45:10, 67:12
**irreparably** [1] - 6:1
**issuance** [2] - 33:6, 63:12

**issue** [23] - 10:18, 10:25, 11:1, 18:8, 18:20, 20:11, 20:15, 20:25, 28:21, 28:23, 34:1, 37:16, 37:24, 56:5, 57:25, 58:8, 59:10, 61:16, 62:8, 62:20, 65:12, 67:13, 68:18
**issued** [4] - 31:9, 35:1, 46:18, 57:19
**issues** [9] - 13:4, 14:12, 33:20, 37:24, 41:10, 53:6, 65:12, 65:15, 67:8
**itself** [7] - 2:19, 4:2, 15:11, 17:24, 41:25, 43:21, 50:16

## J

**Jacob** [1] - 25:7
**jaundiced** [1] - 19:3
**Jersey** [10] - 14:3, 14:6, 14:10, 14:25, 17:16, 19:7, 20:20, 49:20, 49:21, 51:2
**job** [1] - 64:20
**John** [2] - 1:20, 2:10
**Jr** [2] - 1:20, 2:10
**Judge** [12] - 1:12, 4:9, 7:13, 24:15, 30:23, 34:16, 35:2, 35:5, 43:17, 44:25, 50:21, 63:11
**Judicial** [1] - 69:12
**jump** [2] - 17:19, 17:20
**jumping** [1] - 29:3
**jurisdiction** [3] - 33:1, 40:16, 62:3
**jurisdictional** [1] - 19:21
**jurisprudence** [5] - 56:12, 56:13, 59:6, 59:9, 61:14
**justice** [1] - 10:12
**Justice** [3] - 10:12, 50:6, 53:15
**Justices** [1] - 20:6
**justify** [1] - 43:12

## K

**keep** [1] - 41:16
**keeps** [1] - 64:8
**kick** [1] - 5:25
**kind** [5] - 5:22, 7:13, 11:14, 18:12, 22:5, 26:8, 29:18, 30:1,

41:4, 41:18, 53:13
**kinds** [1] - 51:2
**knock** [2] - 24:1, 40:21
**knock-down** [1] - 40:21
**knowing** [1] - 46:9
**knowledge** [1] - 5:18
**Kohl** [17] - 7:5, 7:9, 8:2, 8:10, 11:10, 15:9, 15:12, 18:19, 26:13, 29:7, 41:23, 44:12, 55:19, 64:5

## L

**labeled** [3] - 36:20, 36:21, 36:25
**Labor** [11] - 11:1, 22:23, 23:5, 23:11, 23:14, 23:16, 24:4, 27:11, 28:6, 42:20, 62:21
**LAND** [1] - 1:5
**Land** [4] - 2:4, 2:7, 47:18, 49:3
**land** [11] - 20:9, 20:10, 43:6, 48:19, 49:10, 49:16, 53:15, 55:4, 55:22, 55:24
**lands** [2] - 42:6, 52:12
**language** [8] - 7:23, 11:18, 15:12, 38:20, 56:14, 57:10, 59:25, 60:2
**last** [10] - 3:21, 4:14, 6:14, 6:15, 6:16, 18:14, 31:23, 62:6, 66:2
**late** [2] - 7:5, 28:10
**law** [36] - 4:4, 6:8, 9:5, 9:8, 9:10, 12:3, 12:9, 12:10, 12:12, 13:2, 13:21, 17:13, 19:13, 20:9, 20:10, 30:1, 30:19, 31:15, 33:10, 33:14, 34:20, 44:2, 46:3, 46:4, 46:5, 46:6, 46:8, 46:13, 53:17, 55:23, 56:7, 57:16, 66:17, 67:14
**Law** [6] - 6:7, 7:19, 29:9
**lawful** [1] - 50:13
**lawsuit** [7] - 31:14, 54:8, 54:9, 58:23, 60:14, 63:21, 63:22
**lawyer** [1] - 34:10
**lawyers** [1] - 66:20
**lay** [1] - 61:3
**lead** [2] - 3:3, 7:13,

29:4
**leaves** [1] - 32:19
**led** [2] - 8:6, 23:20
**legal** [5] - 25:4, 36:13, 45:7, 52:8, 66:7
**legally** [1] - 28:15
**legislation** [4] - 11:3, 12:17, 57:3
**legislative** [1] - 65:9
**legitimate** [1] - 49:25
**lengthy** [3] - 10:11, 43:15, 43:20
**less** [1] - 52:25
**Less** [2] - 1:5, 2:4
**letter** [3] - 24:16, 46:3, 67:22
**letting** [1] - 43:25
**level** [8] - 27:14, 30:12, 31:24, 46:20, 47:2, 47:10, 52:14, 63:3
**LEVI** [1] - 1:12
**life** [2] - 27:17, 27:19
**lifetime** [1] - 58:20
**light** [2] - 4:19, 8:13
**likelihood** [4] - 2:24, 39:4, 39:9, 67:11
**limitation** [2] - 44:8, 44:9
**limitations** [1] - 38:24
**limited** [4] - 55:10, 64:10, 65:2, 67:14
**limiting** [1] - 59:13
**line** [2] - 37:10, 50:18
**listed** [1] - 21:7
**listening** [1] - 51:22
**literally** [2] - 28:16, 51:4
**litigant** [1] - 54:4
**litigants** [1] - 59:4
**litigation** [6] - 58:15, 63:6, 63:9, 63:10, 63:19, 64:17
**live** [1] - 60:12
**LLC** [3] - 1:3, 1:17, 2:4
**loaders** [1] - 29:23
**local** [2] - 46:9, 55:1
**located** [1] - 55:23
**Lombard** [1] - 1:23
**look** [20] - 5:6, 7:4, 7:20, 8:22, 10:7, 11:18, 18:20, 18:24, 19:16, 23:25, 24:2, 24:23, 27:9, 38:1, 38:19, 38:23, 44:7, 45:16, 65:17
**looked** [5] - 5:18, 18:25, 19:3, 19:24, 27:10
**looking** [13] - 6:8,

10:7, 15:5, 16:13, 18:23, 20:1, 25:3, 41:16, 62:24, 66:24, 66:25, 67:10
**looks** [5] - 11:6, 16:14, 43:12, 61:20, 68:3
**lose** [1] - 34:15
**loses** [2] - 7:1
**losses** [1] - 39:20
**lost** [1] - 22:5
**Louis** [1] - 68:12
**love** [1] - 28:14
**lower** [1] - 57:9

## M

**magical** [1] - 17:6
**Maine** [2] - 54:16, 59:20
**maintain** [3] - 29:15, 29:16, 30:8
**majority** [2] - 10:14, 58:2
**mandatory** [3] - 30:20, 34:17, 34:25
**manner** [4] - 35:13, 37:8, 42:2, 67:17
**marked** [1] - 36:8
**market** [1] - 43:13
**MARYLAND** [1] - 1:1
**Maryland** [27] - 1:5, 1:6, 1:10, 1:24, 2:5, 5:19, 12:22, 14:3, 19:8, 25:13, 25:16, 29:18, 30:11, 32:6, 32:7, 34:6, 35:6, 35:13, 35:14, 35:23, 36:25, 37:6, 37:9, 51:9, 67:21, 69:7
**Maryland's** [1] - 29:25
**massive** [1] - 37:7
**materials** [1] - 53:5
**matter** [12] - 2:2, 2:10, 2:20, 2:22, 3:10, 13:2, 40:6, 60:19, 62:3, 65:16, 67:19, 69:10
**matters** [3] - 40:22, 46:7, 54:1
**MDE** [1] - 35:5
**mean** [13] - 4:24, 14:5, 14:9, 15:24, 26:3, 27:7, 28:2, 31:15, 32:13, 37:10, 44:20, 56:23, 60:19
**meaningless** [3] - 39:15, 44:13, 51:18
**means** [4] - 18:19, 27:16, 27:17
**memorandum** [2] -

4:4, 30:18
**mention** [3] - 21:17, 56:17, 61:19
**mentions** [2] - 18:25
**merely** [1] - 32:20
**Merit** [1] - 69:5
**merits** [11] - 2:25, 30:13, 30:14, 31:12, 32:12, 32:13, 32:20, 39:4, 39:9, 61:25, 67:11
**met** [1] - 3:22
**Metro** [1] - 32:16
**Michael** [2] - 1:16, 2:9
**microscope** [1] - 19:14
**middle** [2] - 26:4, 44:15
**might** [8] - 10:14, 16:4, 16:11, 29:2, 36:6, 52:10, 53:9, 54:24
**Milam** [3] - 9:5, 9:6, 9:14, 57:14, 58:8
**mind** [2] - 3:23, 36:4
**minds** [1] - 10:17
**minute** [3] - 23:19, 23:20, 31:23
**minutes** [1] - 52:24
**mirrors** [3] - 20:19, 59:1, 59:2
**misapplied** [1] - 8:10
**misapplies** [1] - 7:19
**misapplying** [1] - 6:7
**mischaracterize** [1] - 6:22
**missed** [1] - 29:7
**missing** [1] - 44:22
**Mississippi** [9] - 8:3, 11:11, 11:20, 11:22, 15:9, 26:13, 29:8, 47:22, 63:25
**misstate** [1] - 47:13
**mixing** [1] - 64:22
**Moline** [2] - 47:22, 47:23
**moment** [1] - 27:8
**Monday** [2] - 3:21
**money** [1] - 31:16
**monitor** [1] - 27:19
**monitors** [1] - 63:14
**morning** [3] - 2:12, 41:20, 53:3
**motion** [6] - 6:15, 6:17, 12:21, 24:20, 33:2
**Motion** [2] - 32:19, 32:24
**MOTION** [1] - 1:11
**motions** [1] - 32:23

**Mountain** [2] - 4:9, 31:5
**Mountaineer** [1] - 43:13
**mouth** [3] - 4:25, 34:23, 40:21
**mouths** [1] - 37:17
**move** [4] - 3:24, 19:12, 67:24, 68:6
**moved** [2] - 6:13, 6:14
**MR** [105] - 3:12, 3:17, 4:2, 5:4, 5:17, 5:21, 5:24, 7:23, 9:24, 10:4, 10:16, 12:6, 13:18, 14:14, 14:17, 14:21, 15:2, 16:4, 16:9, 16:11, 16:13, 18:11, 20:5, 20:10, 21:15, 22:18, 22:20, 22:22, 23:10, 24:11, 24:15, 25:15, 26:19, 26:22, 27:1, 28:4, 30:4, 30:16, 31:20, 32:4, 32:9, 32:22, 33:6, 33:22, 34:9, 34:13, 35:25, 36:4, 36:11, 36:15, 36:19, 36:24, 37:4, 38:13, 39:6, 40:2, 40:5, 41:7, 41:14, 41:21, 42:15, 42:18, 42:24, 43:11, 44:19, 44:21, 44:23, 45:3, 45:8, 45:12, 45:15, 45:20, 45:23, 45:25, 46:2, 47:1, 47:6, 47:17, 48:10, 48:13, 48:25, 51:19, 52:3, 52:14, 52:19, 52:22, 52:25, 53:3, 53:11, 56:11, 56:23, 61:5, 61:9, 62:7, 63:7, 63:10, 65:13, 67:18, 68:1, 68:5, 68:9, 68:12, 68:16, 68:21, 68:22
**must** [4] - 31:11, 41:25, 42:2, 55:11

## N

**Nadine** [2] - 1:22, 69:5
**NADINE** [1] - 69:17
**nail** [1] - 43:17
**name** [4] - 16:22, 23:16, 50:7, 62:24
**named** [1] - 23:25
**nation** [1] - 12:10
**Natural** [16] - 1:6, 2:5, 5:7, 5:9, 7:18, 12:12, 19:20, 35:14, 43:24,

56:20, 57:4, 57:20, 58:13, 60:1, 60:3, 61:16
**natural** [10] - 2:17, 5:8, 5:16, 7:17, 12:14, 12:15, 19:18, 30:10, 34:2, 46:6
**nature** [4] - 4:11, 31:8, 42:25
**necessarily** [6] - 5:5, 7:3, 44:11, 64:11, 65:3, 65:5
**necessary** [7] - 4:12, 13:12, 25:20, 25:23, 26:6, 39:2, 53:23
**necessity** [2] - 50:11, 66:9
**need** [7] - 12:4, 13:17, 28:5, 29:6, 46:21, 66:9, 67:8
**needs** [1] - 40:11
**never** [6] - 4:14, 5:15, 5:18, 5:19, 30:5, 42:3
**new** [6] - 6:9, 13:8, 44:4, 65:23, 65:24
**New** [10] - 14:3, 14:5, 14:10, 14:24, 17:16, 19:7, 20:20, 49:19, 49:21, 51:2
**next** [1] - 66:18
**NGA** [15] - 13:7, 16:25, 17:2, 18:5, 19:17, 25:21, 26:7, 30:25, 38:25, 46:10, 48:7, 64:4, 65:19, 65:20
**NGE** [1] - 35:3
**nice** [1] - 64:20
**night** [1] - 18:14
**nilly** [1] - 59:17
**NO** [1] - 1:4
**nobody** [2] - 21:24, 42:22
**non** [1] - 8:19
**non-designated** [1] - 8:19
**none** [2] - 17:6, 58:22
**norm** [1] - 34:25
**normal** [1] - 16:20
**NORTHERN** [1] - 1:2
**note** [4] - 37:13, 50:8, 58:5, 66:15
**noted** [1] - 37:14
**notes** [1] - 43:22
**nothing** [9] - 18:9, 37:8, 44:7, 49:22, 58:22, 59:25, 60:2, 68:21
**notice** [1] - 63:13
**notion** [1] - 60:6

**notions** [1] - 25:2
**notwithstanding** [1] - 31:3
**nugatory** [4] - 15:14, 39:14, 42:10, 44:13
**Number** [1] - 2:3
**numerous** [1] - 59:21
**nutshell** [1] - 52:1

## O

**objection** [3] - 67:17, 67:24, 68:1
**obtain** [1] - 54:4
**obvious** [1] - 26:3
**obviously** [1] - 45:1
**OF** [3] - 1:1, 1:5, 69:1
**offend** [1] - 25:2
**office** [1] - 55:2
**officer** [6] - 24:25, 53:19, 53:23, 55:1, 55:7, 55:9
**officers** [5] - 16:22, 16:24, 54:12, 54:13, 60:11
**Official** [1] - 1:23
**OFFICIAL** [2] - 69:1, 69:18
**Oklahoma** [1] - 49:8
**old** [4] - 14:22, 20:25, 51:12
**once** [5] - 2:12, 9:18, 9:19, 36:17, 40:12
**one** [33] - 4:16, 4:17, 6:22, 10:9, 16:13, 17:1, 19:2, 19:3, 19:5, 23:2, 24:21, 26:9, 26:22, 27:12, 29:4, 29:19, 30:8, 30:22, 34:13, 35:25, 38:13, 40:23, 43:12, 46:16, 47:11, 54:19, 57:11, 61:18, 61:22, 67:18, 67:20, 67:21
**ones** [4] - 19:22, 34:17, 35:1, 35:2
**ongoing** [1] - 3:18
**open** [2] - 43:10, 43:14
**opening** [5] - 8:18, 9:8, 12:21, 49:6, 66:3
**operating** [1] - 52:14
**operation** [1] - 46:11
**opinion** [10] - 10:12, 14:23, 23:21, 24:23, 28:16, 38:18, 50:7, 50:8, 66:8, 66:18
**opinions** [1] - 10:7
**opponents** [1] - 49:6

**opportunity** [4] - 2:21, 3:6, 52:18, 53:8
**opposed** [5] - 16:2, 42:16, 47:23, 55:3, 57:6
**opposite** [1] - 15:17
**opposition** [1] - 18:18
**optimism** [1] - 52:11
**oral** [3] - 66:13, 66:14, 66:18
**order** [6] - 33:2, 38:10, 43:22, 47:14, 56:3, 57:24
**ordinarily** [1] - 31:2
**origin** [1] - 55:18
**originally** [1] - 38:17
**otherwise** [5] - 17:22, 34:22, 40:18, 56:9, 62:4
**outlier** [2] - 14:2, 14:5
**outline** [3] - 7:13, 12:20, 13:4
**outlined** [1] - 31:10
**outside** [1] - 31:5
**outstanding** [1] - 32:23
**oversight** [1] - 63:1
**overturned** [1] - 62:14
**owe** [1] - 33:15
**own** [8] - 26:4, 33:13, 39:8, 47:11, 49:24, 55:21, 55:24, 56:1
**owned** [17] - 2:17, 7:18, 25:18, 28:24, 29:17, 34:21, 35:13, 35:23, 48:20, 49:10, 49:16, 50:25, 51:1, 51:2, 51:15
**owner** [1] - 33:11
**owners** [2] - 33:23, 39:2
**owns** [1] - 44:15

## P

**page** [10] - 11:23, 16:15, 30:24, 31:6, 42:4, 45:16, 45:23, 63:25, 64:7, 69:11
**pages** [3] - 30:17, 49:1, 50:20
**paid** [1] - 21:23
**paradox** [4] - 30:25, 31:2, 31:3, 34:16
**paragraph** [1] - 61:18
**parallel** [1] - 4:7
**parcel** [1] - 36:21
**parcels** [1] - 44:22
**park** [1] - 3:16
**parks** [1] - 51:1

**part** [8] - 13:10, 20:5, 20:6, 22:2, 25:15, 25:17, 43:11, 56:22
**particular** [1] - 68:18
**particularly** [1] - 60:23
**parties** [2] - 4:21, 39:8
**party** [8] - 23:23, 23:25, 54:9, 59:22, 62:23, 62:24, 62:25, 63:21
**passes** [1] - 27:11
**past** [8] - 9:18, 9:19, 9:21, 10:8, 35:19, 35:23, 41:15, 62:24
**paste** [1] - 6:24
**path** [4] - 8:3, 9:10, 29:4, 39:12
**paths** [2] - 4:7, 17:5
**Patterson** [1] - 11:22
**pay** [1] - 31:16
**pending** [2] - 2:2, 32:18, 33:1
**PennEast** [4] - 14:23, 61:16, 61:18, 66:8
**pennies** [1] - 17:17
**people** [5] - 11:4, 11:5, 13:22, 19:8, 49:22
**period** [2] - 37:12, 50:20
**permission** [2] - 38:4, 55:23
**permit** [2] - 35:6, 67:22
**permits** [2] - 4:12, 46:18
**permitted** [1] - 9:15
**person** [2] - 57:23, 62:15
**perspective** [2] - 36:1, 36:2
**persuasive** [1] - 3:10
**petition** [1] - 17:13
**phenomenon** [1] - 9:23
**Phillips** [1] - 49:8
**PI** [2] - 33:4, 33:6
**piece** [5] - 4:14, 26:4, 27:23, 43:19
**pieces** [5] - 6:21, 15:9, 18:12, 22:6, 22:7
**pipe** [1] - 30:10
**pipeline** [29] - 2:16, 2:17, 5:10, 5:16, 6:25, 7:1, 8:12, 11:13, 11:17, 13:2, 13:8, 17:15, 19:9, 19:19, 25:22, 25:25, 26:3, 31:11, 33:23, 34:3, 36:11, 36:12,

38:25, 39:17, 44:1, 50:24, 51:14, 51:17, 65:22
**Pipeline** [1] - 4:9
**pipelines** [3] - 5:9, 46:19, 51:4
**place** [9] - 8:8, 9:11, 12:19, 14:21, 20:16, 22:5, 31:5, 35:7, 43:9
**places** [1] - 16:17
**Plaintiff** [1] - 1:14
**plaintiff** [10] - 2:6, 2:8, 8:25, 21:23, 54:2, 54:6, 54:14, 54:20, 62:10
**plaintiffs** [2] - 23:7, 54:18
**plan** [1] - 60:17
**planning** [1] - 54:7
**play** [6] - 25:2, 39:12, 43:15, 58:14, 58:22, 64:15
**played** [6] - 8:10, 15:13, 19:7, 29:1, 38:21
**playing** [1] - 9:17
**pleadings** [3] - 32:17, 34:24, 53:14
**pleasure** [1] - 68:23
**plus** [2] - 18:19
**point** [38] - 4:5, 5:25, 10:20, 18:4, 20:17, 25:25, 26:1, 26:2, 26:10, 27:3, 29:3, 29:6, 34:15, 35:15, 35:19, 35:22, 36:21, 37:1, 37:5, 38:20, 40:25, 44:15, 45:15, 46:23, 46:24, 48:15, 48:16, 52:8, 52:10, 55:6, 57:13, 61:5, 65:4, 65:14, 65:15, 66:20, 67:9
**pointed** [4] - 22:23, 54:3, 57:2, 61:17
**pointing** [1] - 46:8
**points** [7] - 41:5, 41:11, 41:15, 45:10, 53:7, 58:20, 62:7
**political** [2] - 5:2, 43:5, 60:13
**politically** [3] - 54:12, 60:11, 60:25
**poor** [1] - 34:9
**popped** [2] - 14:3
**position** [8] - 6:20, 7:15, 30:20, 46:16, 46:22, 52:6, 53:9, 58:25

**possibility** [2] - 27:25, 28:1
**possible** [1] - 17:11
**possibly** [2] - 28:4, 52:9
**post** [2] - 33:8, 55:2
**posture** [2] - 6:10, 32:25
**potentially** [1] - 66:25
**Potomac** [3] - 2:20, 35:17, 35:18
**power** [40] - 7:6, 11:9, 12:11, 15:18, 15:19, 15:21, 15:22, 16:1, 16:18, 16:21, 16:24, 17:3, 27:7, 28:7, 32:10, 38:24, 38:25, 41:24, 42:9, 44:3, 44:8, 48:5, 50:15, 51:16, 53:16, 53:17, 55:7, 55:20, 56:19, 62:12, 64:1, 64:5, 64:19, 64:21, 64:22, 64:25, 65:22
**powers** [4] - 38:5, 42:4, 49:23, 55:17
**practical** [4] - 29:22, 42:11, 50:11, 66:7
**practice** [2] - 5:7, 16:21
**pre** [1] - 3:25
**pre-condition** [1] - 3:25
**precautions** [1] - 37:19
**precedent** [2] - 32:1, 39:24
**predecessor** [1] - 28:20
**preempted** [2] - 46:6, 46:10
**preemption** [1] - 46:4
**preempts** [1] - 12:16
**preliminary** [20] - 2:11, 2:15, 3:5, 6:13, 11:13, 11:16, 11:19, 30:12, 30:18, 31:1, 31:3, 33:2, 38:9, 39:21, 39:25, 40:6, 40:13, 66:15, 66:19, 67:6
**Preliminary** [1] - 32:24
**PRELIMINARY** [1] - 1:11
**prepared** [2] - 67:9, 68:18
**prescribe** [1] - 42:2
**present** [3] - 58:1, 58:22, 66:18
**presented** [3] - 10:5,

11:1, 19:21
**presenting** [1] - 59:4
**presents** [1] - 30:25
**pretty** [3] - 3:8, 38:9, 40:1
**prevent** [2] - 49:23, 51:4
**previous** [1] - 18:4
**primarily** [3] - 7:16, 30:17, 31:7
**primary** [4] - 7:15, 10:12, 25:4, 30:19
**principle** [4] - 14:1, 24:19, 25:1, 59:13
**printouts** [1] - 16:13
**Private** [1] - 21:22
**private** [39] - 4:21, 5:10, 7:20, 7:21, 7:24, 8:19, 10:2, 11:24, 16:3, 17:3, 18:5, 22:19, 26:17, 26:18, 38:11, 39:8, 42:12, 42:17, 48:12, 49:11, 49:12, 49:13, 49:17, 49:18, 50:1, 50:2, 50:12, 54:4, 54:14, 55:16, 56:10, 58:10, 59:22, 60:12, 60:18, 61:12, 64:2, 64:24, 65:21
**problem** [5] - 65:8, 65:18, 65:23, 65:24
**problems** [2] - 12:19, 43:25
**proceed** [2] - 27:18, 63:14
**proceeding** [5] - 40:19, 42:3, 58:21, 61:13, 67:17
**Proceeding** [1] - 68:25
**proceedings** [4] - 30:21, 40:16, 53:4, 69:10
**process** [3] - 3:17, 5:12, 23:15, 25:10, 25:12, 25:17, 25:19, 28:19, 31:9, 31:11, 43:10, 43:11, 43:14, 43:20, 45:4, 47:4, 54:8, 63:2, 63:14, 67:13
**processes** [1] - 47:4
**progeny** [1] - 61:22
**progress** [1] - 3:19
**progressing** [1] - 3:22
**prohibiting** [1] - 42:8
**project** [28] - 2:19, 3:23, 4:2, 5:3, 13:9, 13:10, 25:20, 26:8,

26:12, 27:17, 27:20, 28:19, 28:21, 31:18, 32:8, 41:2, 43:14, 43:23, 43:24, 46:15, 47:23, 48:2, 48:18, 50:24, 52:7, 54:13, 63:15

**projects** [3] - 27:16, 46:20, 65:20
**prolonged** [1] - 5:12
**prongs** [1] - 40:13
**proper** [4] - 8:7, 9:21, 39:11, 40:7
**properly** [2] - 8:2, 34:5
**property** [36] - 2:17, 2:19, 3:16, 7:18, 11:24, 16:20, 16:22, 17:23, 18:6, 25:19, 25:24, 26:2, 26:6, 27:21, 28:23, 29:17, 29:25, 30:13, 33:9, 33:11, 33:13, 33:18, 33:23, 34:22, 35:4, 35:13, 35:23, 39:8, 42:7, 43:19, 44:8, 50:19, 50:25, 53:12, 56:4
**propose** [1] - 22:12
**proposition** [3] - 4:5, 38:21, 62:18
**prosecution** [2] - 63:17, 63:19
**protect** [1] - 27:5
**protected** [1] - 33:13
**protecting** [1] - 38:9
**protective** [1] - 51:3
**provide** [1] - 60:20
**provides** [1] - 53:19
**provisions** [3] - 3:2, 4:21, 5:20
**public** [12] - 11:24, 12:17, 16:23, 17:4, 25:10, 32:8, 48:9, 49:11, 49:17, 53:21, 55:4
**Public** [1] - 51:7
**pull** [1] - 67:16
**purpose** [3] - 2:11, 51:5, 51:7
**purposes** [8] - 2:14, 39:25, 49:12, 49:18, 49:25, 50:9, 55:2, 66:15
**pursuant** [4] - 13:15, 50:13, 56:20, 69:8
**pursue** [1] - 4:6
**put** [8] - 4:25, 21:11, 34:23, 36:7, 37:17, 40:20, 41:4, 55:13
**putting** [2] - 30:9,

39:22

## Q

**questions** [7] - 4:17, 16:6, 41:11, 53:5, 53:9, 62:4, 67:4
**qui** [22] - 8:21, 8:24, 9:14, 21:25, 22:1, 22:9, 22:11, 23:22, 24:2, 57:13, 57:14, 57:17, 57:21, 58:4, 58:10, 58:12, 58:13, 58:14, 58:17, 58:20, 62:9, 62:18
**quickly** [1] - 16:5
**quiet** [2] - 52:23, 52:25
**quite** [1] - 32:18
**quo** [4] - 29:15, 29:16, 29:20, 30:9
**quote** [7] - 11:21, 17:3, 31:4, 49:3, 50:16, 50:20
**quoting** [1] - 30:21

## R

**Rail** [1] - 36:25
**rail** [1] - 51:13
**railroad** [1] - 50:18
**rails** [3] - 2:18, 8:9, 9:12
**Rails** [2] - 35:19, 36:12
**railway** [1] - 26:7
**raise** [3] - 10:20, 23:3, 47:24
**raised** [13] - 9:1, 9:25, 14:24, 19:5, 20:20, 20:21, 23:17, 33:16, 37:16, 48:4, 49:12, 65:13, 65:14
**raising** [2] - 37:25, 38:1
**rather** [2] - 66:21, 67:14
**reached** [1] - 30:12
**reaction** [1] - 52:4
**read** [8] - 15:5, 36:19, 41:21, 49:3, 53:5, 54:11, 59:1, 64:9
**reading** [2] - 41:16, 67:5
**real** [6] - 22:15, 23:23, 38:8, 51:5, 53:20, 53:22
**really** [20] - 5:24, 7:3, 7:6, 14:9, 14:12, 19:11, 20:7, 20:14,

23:4, 23:6, 23:23, 24:19, 24:24, 25:1, 37:23, 37:25, 40:15, 41:12, 59:12, 65:11
**Realtime** [1] - 69:6
**realtor** [2] - 58:4, 58:13
**realtors** [3] - 57:17, 57:21, 58:10
**reason** [13] - 8:12, 13:20, 13:25, 18:16, 18:17, 20:17, 22:14, 40:8, 40:13, 59:3, 59:14, 59:18, 62:13
**reasonable** [1] - 10:17
**reasoned** [2] - 10:11, 24:23
**reasons** [3] - 7:15, 29:10
**rebuttal** [1] - 52:18
**received** [1] - 56:21
**recent** [4] - 6:5, 13:25, 31:7
**recently** [2] - 4:8, 30:23
**recognition** [1] - 12:1
**recognize** [5] - 13:3, 15:18, 26:15, 34:21, 34:25
**recognized** [11] - 4:7, 4:10, 7:6, 17:5, 21:19, 28:9, 30:25, 31:2, 34:16, 49:15, 51:15
**recognizes** [1] - 11:11
**recommended** [1] - 37:19
**record** [2] - 67:5, 67:25
**recorded** [1] - 37:14
**reference** [1] - 67:24
**referred** [1] - 58:24
**regard** [1] - 67:7
**regarding** [11] - 3:1, 3:7, 10:1, 37:15, 37:16, 37:21, 37:22, 37:24, 38:6, 52:12, 67:5
**regardless** [1] - 20:15
**Registered** [1] - 69:5
**registry** [1] - 33:7
**regulated** [2] - 27:19, 46:15
**regulating** [1] - 12:13
**regulation** [3] - 46:7, 46:9, 46:11
**regulations** [1] - 69:11
**regulatory** [5] - 5:12, 28:18, 46:5
**Regulatory** [2] -

17:22, 25:9
**reject** [1] - 48:18
**rejecting** [1] - 49:21
**rejection** [1] - 62:23
**rel** [2] - 49:8, 57:20
**related** [3] - 4:20, 29:21, 66:19
**relates** [1] - 9:12
**Relief** [1] - 32:24
**relief** [19] - 2:15, 3:5, 29:19, 30:2, 30:5, 30:21, 31:1, 37:8, 39:21, 39:25, 40:14, 40:15, 40:19, 40:22, 54:4, 66:16, 66:19, 67:6
**relies** [1] - 64:4
**rely** [5] - 7:16, 9:7, 21:25, 35:10, 67:15
**relying** [3] - 9:9, 9:10, 9:21
**remarks** [1] - 53:7
**remedy** [1] - 17:11
**remember** [1] - 25:25
**render** [2] - 44:12, 44:13
**rendered** [2] - 39:14, 42:10
**renders** [2] - 15:12, 15:14
**renewed** [1] - 62:21
**repeat** [2] - 23:9, 41:12
**repeatedly** [1] - 54:16
**reply** [11] - 4:4, 6:14, 6:15, 9:9, 10:21, 12:8, 12:21, 13:5, 47:12, 49:2, 65:9
**report** [1] - 13:5
**Reported** [1] - 1:21
**reported** [1] - 69:9
**Reporter** [3] - 1:23, 69:5, 69:6
**REPORTER** [2] - 69:1, 69:18
**represent** [1] - 68:5
**representative** [2] - 8:25, 62:17
**requests** [2] - 3:19, 3:22
**require** [2] - 15:3, 15:11
**requirements** [1] - 56:24
**requires** [1] - 11:25
**requiring** [1] - 50:17
**resolved** [1] - 59:10
**resolving** [1] - 58:8
**resources** [1] - 32:1
**Resources** [4] - 1:6,

2:5, 35:14, 57:20
**respect** [1] - 18:16
**respond** [1] - 4:18
**responded** [1] - 54:23
**response** [4] - 21:15, 48:17, 49:7, 52:5
**responsibility** [6] - 5:3, 24:3, 27:13, 34:4, 43:5, 43:18
**responsible** [5] - 24:25, 54:12, 60:25, 62:23, 62:25
**result** [1] - 39:20
**reverse** [1] - 23:22
**reversing** [1] - 8:23
**review** [3] - 2:21, 3:6, 4:24
**reviewed** [1] - 28:22
**reviewing** [1] - 27:11
**right-of-way** [12] - 13:12, 25:23, 25:24, 26:9, 39:2, 44:1, 44:14, 44:16, 44:18, 63:12, 65:7, 65:16
**rights** [13] - 19:22, 21:10, 21:17, 38:3, 39:12, 39:16, 64:10, 64:11, 64:12, 64:13, 64:14, 64:16, 65:2
**risk** [1] - 31:20
**river** [2] - 36:17, 36:24
**River** [4] - 2:20, 35:17, 47:22, 63:25
**rivers** [1] - 51:1
**RMR** [2] - 1:22, 69:17
**roadway** [1] - 21:18
**rogue** [2] - 14:2, 14:5
**role** [2] - 58:14, 58:22
**room** [1] - 18:14
**route** [4] - 13:10, 25:21, 36:6, 50:24
**Rule** [1] - 32:16
**rule** [2] - 59:6, 61:24
**ruled** [3] - 8:24, 9:4, 57:23
**ruling** [2] - 30:14, 68:18
**run** [1] - 58:4
**running** [2] - 31:20, 31:21
**RUSSELL** [1] - 1:12

## S

**Sabine** [24] - 6:5, 6:24, 6:25, 7:16, 8:9, 8:16, 9:9, 9:11, 9:20, 13:20, 14:2, 14:9, 18:17, 19:7, 23:1, 24:6, 25:5, 28:13,

28:17, 38:18, 58:24, 61:17, 61:20, 65:25
**Sage** [15] - 11:12, 11:19, 16:5, 16:6, 16:7, 16:14, 27:1, 33:10, 33:14, 38:18, 38:20, 41:21, 44:7, 64:4
**Saint** [1] - 68:12
**sale** [2] - 12:13, 42:8
**satisfied** [1] - 34:18
**satisfies** [2] - 27:13, 63:2
**satisfy** [2] - 59:5, 59:8
**schedule** [1] - 68:15
**schedules** [2] - 66:24, 67:16
**scheduling** [2] - 3:7, 37:15
**score** [1] - 58:6
**screens** [1] - 36:7
**scrutiny** [1] - 20:11
**season** [1] - 43:14
**second** [7] - 8:8, 9:11, 19:5, 22:2, 23:12, 34:15, 40:18
**secret** [1] - 67:10
**Secretary** [13] - 4:22, 18:2, 22:23, 23:5, 23:11, 23:14, 23:15, 24:4, 27:11, 27:24, 28:2, 34:7, 62:21
**Section** [2] - 13:15, 57:2
**section** [1] - 25:22
**see** [13] - 11:14, 24:2, 24:24, 25:1, 29:2, 36:16, 36:21, 36:25, 37:1, 54:2, 56:11, 56:12
**seek** [2] - 4:13, 11:19
**seeking** [1] - 39:22
**seem** [1] - 4:24
**self** [2] - 21:22, 39:10
**self-appointed** [1] - 21:22
**self-executing** [1] - 39:10
**Seminole** [3] - 14:7, 56:23, 59:20
**sense** [4] - 60:7, 60:8, 60:19, 66:7
**separate** [3] - 15:6, 19:1, 19:6
**serious** [4] - 30:11, 30:15, 58:6, 58:9
**seriously** [1] - 40:4
**served** [2] - 49:11, 49:17
**set** [2] - 3:14, 33:7

**setting** [1] - 46:2
**settled** [1] - 58:19
**Seventh** [3] - 47:14, 47:18, 48:19
**several** [3] - 4:17, 10:8, 58:20
**shared** [1] - 67:19
**shoes** [1] - 50:14
**short** [2] - 66:8, 66:9
**show** [5] - 17:21, 21:9, 21:12, 21:16, 36:5
**showed** [1] - 36:5
**shows** [2] - 56:14, 66:5
**side** [1] - 25:3
**sides** [1] - 67:22
**signed** [1] - 25:14
**significant** [5] - 38:8, 39:20, 39:23, 40:1, 66:13
**similar** [1] - 48:7
**simple** [4] - 15:3, 21:8, 24:20, 65:16
**simply** [4] - 13:8, 32:17, 62:20, 67:5
**sister** [2] - 12:23, 12:24
**sit** [1] - 52:20
**sitting** [3] - 50:6, 52:23, 54:9
**situated** [1] - 47:4
**situation** [3] - 7:1, 7:2, 46:22
**skepticism** [5] - 2:25, 9:25, 10:6, 38:6, 57:9
**smarter** [1] - 20:21
**smoke** [3] - 20:18, 58:25, 59:2
**Snyder** [4] - 1:19, 2:10, 52:20, 53:1
**SNYDER** [11] - 52:22, 52:25, 53:3, 53:11, 56:11, 56:23, 61:5, 61:9, 68:1, 68:16, 68:22
**solely** [1] - 13:2
**solve** [1] - 65:8
**someone** [3] - 55:9, 60:22, 67:8
**sometime** [1] - 67:1
**sometimes** [1] - 16:18
**somewhat** [2] - 19:3, 41:14
**somewhere** [1] - 23:15
**soon** [2] - 15:24, 15:25
**sooner** [1] - 66:21
**sorry** [4] - 20:5, 22:5,

22:18, 63:7
**sort** [10] - 3:3, 3:4, 3:25, 14:11, 29:25, 34:11, 45:6, 52:1, 56:13, 59:24
**sorts** [1] - 29:24
**sought** [1] - 29:19
**sound** [1] - 29:12
**source** [2] - 26:1, 57:1
**Southern** [2] - 4:8, 30:24
**Southwest** [1] - 68:12
**sovereign** [39] - 5:13, 6:2, 6:3, 6:4, 7:9, 8:4, 8:14, 9:16, 10:23, 12:11, 13:11, 13:14, 14:24, 34:19, 38:3, 38:9, 40:3, 40:10, 40:24, 43:2, 43:6, 50:15, 51:6, 51:16, 55:8, 55:10, 55:12, 55:16, 55:17, 60:2, 61:5, 61:11, 62:11, 62:20, 64:13, 64:14, 64:16, 64:17
**sovereign's** [5] - 15:8, 26:15, 26:16, 28:7, 30:13
**sovereigns** [3] - 56:2, 61:2, 61:4
**sovereignty** [6] - 11:8, 11:10, 12:2, 49:15, 59:14, 64:24
**specific** [4] - 12:4, 16:19, 17:21, 33:16
**specifically** [2] - 28:22, 63:10
**squarely** [1] - 59:20
**stage** [2] - 30:21, 63:17
**stand** [2] - 52:7, 62:18
**Standard** [1] - 11:1
**standard** [1] - 27:13
**standards** [1] - 34:19
**Standards** [2] - 28:6, 42:20
**standing** [2] - 50:13, 62:16
**standpoint** [3] - 7:21, 33:20, 57:5
**staring** [1] - 20:22
**start** [5] - 2:22, 25:6, 29:2, 35:16, 51:9
**started** [2] - 34:14, 53:1
**starting** [1] - 5:24
**state** [50] - 2:17, 7:18, 9:16, 9:18, 12:23, 12:24, 25:18, 28:24, 28:25, 30:10, 34:17,

34:21, 35:23, 38:21, 39:24, 42:2, 42:3, 42:8, 42:11, 43:6, 44:2, 44:8, 44:15, 46:5, 46:9, 47:23, 48:20, 49:10, 49:16, 49:24, 49:25, 50:1, 50:2, 50:3, 50:19, 50:25, 51:15, 52:9, 54:20, 55:1, 55:22, 55:23, 56:2, 56:8, 59:15, 62:14, 64:20, 66:5
**State** [66] - 1:6, 2:5, 5:19, 6:1, 6:14, 8:5, 9:1, 9:6, 9:7, 9:18, 11:7, 12:6, 13:22, 15:4, 15:13, 15:20, 15:21, 19:8, 21:9, 21:11, 23:3, 23:17, 23:19, 23:22, 23:23, 23:24, 26:4, 29:17, 35:13, 37:6, 37:7, 37:9, 37:18, 37:25, 39:7, 39:17, 40:24, 41:1, 42:1, 46:3, 46:17, 47:9, 47:12, 48:1, 48:3, 49:8, 49:12, 49:21, 50:8, 50:17, 51:5, 54:17, 56:3, 56:16, 56:18, 57:17, 57:22, 58:4, 58:10, 59:22, 59:23, 60:4, 60:9, 62:1, 62:15
**state's** [4] - 51:1, 51:2, 55:23
**State's** [14] - 4:24, 6:14, 7:14, 8:18, 21:10, 21:17, 25:18, 37:25, 39:16, 48:3, 50:25, 53:9, 56:15, 58:25
**State's-owned** [1] - 50:25
**state's-owned** [3] - 51:1, 51:2
**state-owned** [9] - 2:17, 7:18, 25:18, 34:21, 35:23, 49:10, 49:16, 50:25, 51:15
**statement** [4] - 38:22, 56:24, 59:6, 59:24
**states** [21] - 4:5, 4:21, 7:8, 7:12, 11:5, 12:20, 12:22, 15:16, 19:20, 42:6, 43:25, 44:11, 54:18, 59:12, 59:15, 61:6, 61:11, 61:12, 63:25, 64:5,

65:18
**STATES** [1] - 1:1
**States** [14] - 9:3, 12:18, 16:16, 16:23, 41:24, 48:21, 48:22, 53:25, 54:1, 54:11, 60:16, 61:2, 69:6, 69:12
**States'** [1] - 28:9
**states'** [1] - 38:3
**stating** [1] - 26:3
**status** [5] - 29:15, 29:16, 29:20, 30:9, 45:6
**statute** [10] - 12:5, 16:19, 17:22, 18:9, 21:10, 22:8, 44:4, 56:21, 57:23, 62:13
**statutory** [5] - 19:25, 46:5, 47:24, 57:24, 58:21
**stems** [1] - 59:13
**stenographically** [1] - 69:9
**stenographically-reported** [1] - 69:9
**step** [1] - 63:14
**Stevens** [3] - 57:19, 57:20, 62:14
**still** [7] - 23:3, 23:20, 23:21, 32:7, 62:18, 64:24, 64:25
**stipulates** [1] - 39:8
**Stockton** [2] - 49:19, 50:5
**stop** [1] - 59:11
**strange** [2] - 9:23, 60:6
**stray** [1] - 38:13
**Street** [1] - 1:23
**streets** [1] - 48:1
**strict** [1] - 38:22
**string** [1] - 38:16
**struggling** [1] - 21:5
**stuck** [2] - 14:14, 14:16
**studied** [1] - 6:9
**stuff** [1] - 20:23
**subject** [1] - 62:2
**submitted** [4] - 6:10, 35:8, 50:23, 67:23
**subsequent** [3] - 28:15, 57:12, 67:6
**subsequently** [1] - 28:25
**subset** [2] - 14:11, 55:16
**substance** [2] - 40:17, 62:24
**substantial** [1] - 39:5

**substantially** [2] - 6:16, 10:19
**substantive** [3] - 3:18, 14:12, 19:22
**success** [4] - 2:24, 39:4, 39:9, 67:11
**sue** [8] - 33:20, 33:25, 34:1, 54:20, 56:3, 57:21, 59:12, 59:15
**sued** [1] - 56:9
**suggest** [2] - 30:1, 30:5
**suggested** [1] - 26:23
**suggests** [3] - 21:9, 60:1, 60:3
**suing** [4] - 4:21, 8:25, 34:6, 60:10
**suit** [8] - 9:3, 23:18, 24:5, 54:11, 56:16, 58:10, 62:10
**suits** [4] - 54:17, 58:1, 59:16, 61:21
**summarized** [1] - 30:19
**summary** [1] - 62:23
**superior** [5] - 8:4, 39:16, 64:14, 64:17
**superiority** [1] - 64:19
**supervised** [1] - 27:16
**supplemental** [2] - 25:8, 50:23
**support** [4] - 4:4, 25:7, 30:18, 35:9
**supported** [1] - 50:11
**supporting** [1] - 30:19
**supremacy** [3] - 15:20, 50:12, 61:9
**Supreme** [28] - 2:25, 6:8, 6:20, 9:22, 10:5, 10:25, 16:8, 19:14, 19:24, 20:6, 22:7, 28:10, 38:5, 49:7, 50:5, 54:16, 55:5, 57:12, 57:18, 58:7, 59:3, 59:21, 60:6, 61:10, 61:13, 61:14, 63:24, 64:1
**supreme** [4] - 15:18, 15:20, 64:21, 64:22
**switch** [1] - 19:10
**switching** [1] - 19:11

## T

**table** [1] - 66:16
**tail** [2] - 38:18, 51:6
**talks** [5] - 15:14, 33:10, 54:11, 61:10, 64:19
**tam** [22] - 8:21, 8:24,

9:14, 21:25, 22:1, 22:9, 22:11, 23:22, 24:2, 57:13, 57:14, 57:17, 57:21, 58:4, 58:10, 58:12, 58:13, 58:14, 58:17, 58:21, 62:9, 62:18
**team** [1] - 41:14
**Tech** [3] - 8:17, 8:23, 57:15
**teeth** [1] - 59:20
**telecommunication** [1] - 26:8
**teleconference** [2] - 3:7, 37:15
**telegraphed** [1] - 67:13
**tendency** [1] - 3:4
**Tennessee** [1] - 11:12
**term** [1] - 58:25
**terms** [4] - 18:10, 56:25, 60:7, 60:8
**test** [7] - 21:5, 21:8, 21:23, 22:1, 22:9, 22:12, 27:11
**Texas** [7] - 6:5, 6:6, 8:17, 8:23, 25:5, 57:15
**texts** [1] - 16:14
**THE** [109] - 1:1, 1:1, 1:12, 2:2, 2:7, 2:8, 2:12, 3:13, 3:23, 4:16, 5:15, 5:19, 5:23, 7:20, 9:22, 9:25, 10:14, 12:3, 13:13, 14:5, 14:16, 14:20, 15:1, 15:23, 16:7, 16:10, 16:12, 18:1, 20:3, 20:9, 21:13, 22:17, 22:19, 22:21, 23:9, 24:8, 24:13, 25:13, 26:17, 26:20, 26:25, 28:1, 29:14, 30:8, 31:17, 32:3, 32:6, 32:11, 33:4, 33:19, 33:25, 34:11, 35:24, 36:1, 36:9, 36:13, 36:18, 36:23, 37:3, 37:13, 39:3, 39:18, 40:3, 41:6, 41:9, 41:19, 42:13, 42:16, 42:22, 43:3, 44:17, 44:20, 44:22, 44:24, 45:5, 45:9, 45:13, 45:19, 45:21, 45:24, 46:1, 46:25, 47:5, 47:16, 48:9, 48:12, 48:24, 51:20, 52:11, 52:16, 52:20, 52:23, 53:1,

53:10, 56:6, 56:20, 61:4, 61:8, 62:6, 63:5, 63:8, 65:11, 66:11, 68:2, 68:8, 68:10, 68:14, 68:17, 68:23
**themselves** [1] - 61:6
**theoretical** [2] - 52:8, 66:6
**theories** [2] - 34:12, 47:25
**theory** [3] - 60:5, 60:7, 66:1
**they've** [6] - 2:24, 5:15, 12:8, 38:6, 51:12, 57:23
**thinking** [2] - 34:11, 41:15
**third** [1] - 17:1
**three** [9] - 3:15, 7:15, 16:17, 17:5, 22:6, 25:4, 31:19, 39:22, 44:22
**threw** [1] - 17:16
**throughout** [1] - 58:15
**tight** [1] - 67:3
**timeline** [3] - 31:9, 46:21, 46:23
**timelines** [1] - 4:15
**timing** [1] - 31:8
**title** [2] - 31:15, 31:16
**today** [9] - 6:19, 10:22, 14:18, 17:10, 32:22, 33:5, 50:22, 52:7, 53:4
**together** [1] - 46:16
**took** [2] - 6:20, 20:25
**totaling** [1] - 67:3
**touch** [1] - 62:8
**touched** [1] - 35:15
**town** [1] - 67:3
**tract** [4] - 35:20, 35:24, 37:11, 37:16
**Tract** [1] - 37:1
**traction** [1] - 17:17
**tracts** [4] - 3:16, 3:24, 31:19, 39:22
**trail** [1] - 51:13
**Trail** [1] - 36:25
**trails** [1] - 2:18
**Trails** [2] - 35:20, 36:12
**traipsing** [1] - 29:24
**transcript** [2] - 69:9, 69:11
**transfer** [2] - 31:16, 64:6
**transferred** [2] - 28:25, 65:3
**Transit** [1] - 32:16

**TRANSMISSION** [1] - 1:3
**Transmission** [2] - 1:17, 2:3
**transportation** [2] - 12:13, 12:15
**traveling** [1] - 68:10
**treatment** [1] - 47:13
**trespasser** [1] - 33:14
**Tribe** [3] - 14:7, 56:23, 59:20
**tried** [5] - 11:5, 12:8, 23:3, 23:11, 40:8
**true** [4] - 4:3, 5:21, 32:9, 69:9
**trust** [1] - 48:3
**try** [1] - 20:14
**trying** [13] - 10:20, 10:22, 19:9, 21:23, 22:24, 27:3, 27:5, 41:13, 44:6, 50:2, 54:4, 59:8, 65:8
**Tuesday** [3] - 66:25, 68:3, 68:7
**turn** [1] - 60:21
**turned** [1] - 27:20
**twice** [5] - 22:21, 22:22, 23:6, 23:10, 54:5
**two** [19] - 3:15, 6:17, 13:24, 14:1, 17:1, 18:25, 19:1, 19:6, 25:10, 31:13, 35:8, 48:23, 49:5, 54:17, 54:19, 56:24, 61:15, 67:20
**two-and-a-half** [1] - 31:13
**type** [1] - 26:7
**types** [2] - 4:11, 54:18
**typical** [1] - 43:14
**typically** [1] - 32:25

## U

**U.S** [17] - 6:8, 6:20, 7:5, 7:19, 8:2, 11:20, 11:23, 21:21, 21:24, 23:16, 23:19, 24:3, 28:10, 49:7, 49:9, 57:20, 57:21
**U.S.C** [1] - 69:8
**ultimately** [1] - 61:1
**Um-hum** [1] - 47:5
**unachievable** [1] - 4:15
**under** [42] - 2:17, 6:7, 6:9, 7:18, 8:2, 8:4, 8:17, 8:22, 9:14, 10:3, 14:1, 19:4,

19:14, 20:3, 24:25, 25:21, 26:14, 28:6, 28:20, 31:15, 33:10, 35:16, 35:17, 35:18, 39:11, 41:17, 41:18, 43:24, 46:17, 53:17, 54:12, 55:23, 57:4, 57:22, 57:23, 58:11, 61:23, 62:12, 65:20, 65:25
**undermining** [1] - 30:10
**underneath** [2] - 35:19, 36:12
**underpinning** [1] - 42:18
**underpinnings** [1] - 27:10
**understood** [3] - 26:6, 52:16, 68:14
**unfortunate** [1] - 17:18
**unfounded** [1] - 6:20
**uniform** [1] - 11:16
**union** [3] - 11:7, 11:9, 59:15
**unique** [2] - 31:4, 35:5
**UNITED** [1] - 1:1
**United** [12] - 9:3, 12:18, 16:16, 16:23, 41:24, 48:21, 48:22, 53:24, 54:1, 54:11, 69:6, 69:12
**unless** [6] - 39:15, 51:15, 54:19, 64:12, 65:2, 67:8
**unmistakable** [1] - 56:14
**unspecified** [1] - 27:6
**untoward** [1] - 63:18
**up** [20] - 3:8, 3:14, 4:20, 14:3, 19:10, 19:11, 23:12, 23:21, 24:22, 30:9, 30:14, 32:22, 40:10, 43:8, 45:1, 47:25, 51:4, 53:6, 67:6
**upheld** [1] - 66:4
**uphill** [1] - 4:20
**USC** [1] - 53:18
**user** [1] - 43:13
**uses** [3] - 11:25, 42:7, 53:21

## V

**valid** [1] - 57:1
**Valley** [2] - 4:9, 31:5
**verbiage** [1] - 8:20
**Vermont** [2] - 57:19

**versus** [10] - 2:4, 7:5, 8:5, 11:12, 11:22, 47:17, 49:2, 49:8, 49:19, 50:5
**vested** [3] - 3:1, 10:2, 42:4
**view** [1] - 58:3
**violating** [1] - 50:3
**violation** [1] - 50:4
**violations** [1] - 19:20
**Virginia** [4] - 4:8, 30:24, 35:15, 36:21
**virtue** [2] - 6:11, 8:1
**vital** [1] - 12:17
**vote** [1] - 51:8
**vs** [1] - 1:4

# W

**wait** [7] - 4:5, 4:13, 23:9, 23:19, 31:11, 46:22
**waived** [1] - 56:9
**waiver** [5] - 13:13, 21:11, 21:17, 56:13
**waivers** [1] - 40:3
**wall** [2] - 36:2
**warranted** [1] - 31:4
**Washington** [3] - 1:5, 2:4, 32:16
**Wednesday** [4] - 67:1, 68:4, 68:7, 68:17
**wednesday** [1] - 1:9
**weeds** [2] - 24:6, 25:1
**week** [2] - 41:15, 66:18
**weeks** [1] - 10:8
**weight** [1] - 10:2
**Weiner** [2] - 1:16, 2:9
**welcome** [1] - 2:13
**well-reasoned** [2] - 10:11, 24:23
**well-written** [1] - 2:22
**West** [4] - 4:8, 30:24, 35:15, 36:21
**Western** [1] - 36:25
**whatsoever** [1] - 37:8
**whole** [8] - 10:13, 13:4, 13:21, 34:1, 44:14, 44:17, 52:6, 65:6
**willy** [1] - 59:17
**willy-nilly** [1] - 59:17
**win** [1] - 40:25
**wins** [1] - 40:24
**withstand** [1] - 62:11
**wonderful** [1] - 5:5
**word** [6] - 5:6, 6:15, 6:16, 62:6, 66:2
**words** [9] - 4:25, 21:7,

21:10, 29:16, 34:23, 37:17, 40:20, 44:9, 45:11
**works** [4] - 17:4, 32:8, 60:23, 66:24
**Works'** [1] - 51:7
**world** [3] - 27:20, 55:12, 55:14
**worries** [1] - 45:1
**worth** [1] - 31:7
**writing** [1] - 18:14
**written** [4] - 2:22, 10:10, 50:7, 50:21
**wrote** [1] - 30:25

# Y

**year** [2] - 25:10, 31:13
**year-and-a-half** [1] - 31:13
**years** [6] - 5:7, 12:19, 13:23, 31:13, 58:7, 65:24
**yesterday** [1] - 3:21
**yield** [1] - 55:11

# Z

**Zen** [1] - 14:21

# §

**§** [1] - 69:8