IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COLUMBIA GAS TRANSMISSION,    *
LLC,
                              *
        Plaintiff,
                              *        Civil Action No. GLR-19-1444
v.
                              *
0.12 ACRES OF LAND, MORE OR
LESS, IN WASHINGTON COUNTY,   *
MARYLAND, et al.,
                              *
        Defendants.

                           ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant State of Maryland, Department

of Natural Resources' ("MDNR") Renewed Motion to Dismiss (ECF No. 63). The Motion

is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021).

For the reasons set forth below, the Court will deny Defendant's Motion.

## I.    BACKGROUND[1]

On July 19, 2018, the Federal Energy Regulatory Commission ("FERC") granted

Plaintiff Columbia Gas Transmission, LLC ("Columbia Gas") a certificate of public

convenience and necessity ("the Certificate") to construct and operate a gas pipeline, part

of which would run through Washington County, Maryland. (Compl. ¶¶ 7–8, ECF No. 1).

"The Natural Gas Act ["NGA"] expressly permits a holder of a Certificate to acquire the

---

[1] Unless otherwise noted, the Court takes the following facts from Columbia Gas's
Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94
(2007).

necessary land and rights 'by the exercise of the right of eminent domain' if it is unable to reach an agreement with the landowner.'" (Id. ¶ 25 (quoting 15 U.S.C. § 717f(h)). MDNR is the record title holder of the land that Columbia Gas seeks to access in Washington County ("Tract No. 1"). (Id. ¶ 30). Columbia Gas began its easement-acquisition efforts in 2016, and after negotiations, offered MDNR consideration for the easement in the amount of $5,000.00. (Id. ¶¶ 15, 18). Conveyance of the easement required approval by the Maryland Board of Public Works ("BPW"). (Id. ¶ 20). On January 2, 2019, BPW denied Columbia Gas's easement application. (Id.). Thereafter, Columbia Gas sought to condemn the easement by authority of the Certificate and under § 717f(h) of the NGA. (Id.).

On May 16, 2019, Columbia Gas filed its Complaint in Condemnation (ECF No. 1) and a Motion for an Order of Condemnation and for Preliminary Injunction (ECF No. 2). On June 17, 2019, MDNR opposed preliminary injunctive relief (ECF No. 30) and filed a Motion to Dismiss for Lack of Jurisdiction, arguing that its sovereign immunity, although waivable, had not been waived. (Mot. Dismiss at 1, ECF No. 29). Columbia Gas filed its Response on July 8, 2019. (ECF No. 38). The Court heard oral arguments on August 13, 2019 and August 21, 2019. (ECF Nos. 41, 45).

On August 21, 2019, the Court issued a ruling from the bench denying the preliminary injunction and dismissing the Complaint. (ECF No. 46). The Court explained:

> [A]lthough the Natural Gas Act certainly does grant [Columbia Gas] the power of eminent domain to condemn land . . . the Natural Gas Act does not abrogate state sovereign immunity or delegate the United States' state sovereign exemption to permit Columbia [Gas] to sue the State of Maryland for an order of condemnation without Maryland's consent.

(Aug. 21, 2019 Tr. at 2:22–3:4, ECF No. 47). The Court determined that Columbia Gas failed to establish "three of the four mandatory requirements for obtaining preliminary injunctive relief, most notably, a likelihood of success on the merits simply because the Eleventh Amendment precludes [MDNR] from being sued by Columbia [Gas] as a private party." (Id. at 3:5–9). Thus, the Court dismissed the case and denied MDNR's Motion to Dismiss as moot. (Id. at 19). Columbia Gas appealed on September 20, 2019. (ECF No. 48).

On June 21, 2021, the Supreme Court decided PennEast Pipeline Co. v. New Jersey. 141 S.Ct. 2244 (2021). In PennEast, the Court held that "the Federal Government can constitutionally confer on pipeline companies the authority to condemn necessary rights-of-way in which a State has an interest." Id. at 2251. Following the PennEast decision, the Fourth Circuit Court of Appeals remanded the case to this Court. (ECF No. 52). The Fourth Circuit further denied Columbia Gas's Motion for Summary Reversal and vacated this Court's August 21, 2019 Order, directing the Court to engage in "further consideration[s] in light of PennEast." (4th Cir. Order at 2, ECF No. 52).

On July 29, 2022, MDNR filed a Renewed Motion to Dismiss for Lack of Jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Def.'s Mot. Dismiss ["Mot."] at 1, ECF No. 63). Columbia Gas filed its Opposition on August 29, 2022, (ECF No. 66), and MDNR filed its Reply on September 26, 2022 (ECF No. 69).

## II.   DISCUSSION

A.   **Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) requires a plaintiff to establish the Court's subject-matter jurisdiction by showing the existence of either a federal question under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. A plaintiff may establish federal question jurisdiction by asserting a claim that arises from a federal statute or from the U.S. Constitution. Fed.R.Civ.P. 12(b)(1). To show that the claim arises on one of these bases, the federal question must appear "on the face of the plaintiff's properly pleaded complaint." AES Sparrows Point LNG, LLC v. Smith, 470 F.Supp.2d 586, 592 (D.Md. 2007) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)). However, when a party challenges subject-matter jurisdiction, the Court may consider "evidence outside the pleadings" to resolve the challenge. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as

true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction.

The Court may determine on its own initiative that it lacks subject-matter jurisdiction, regardless of whether a party to the case has raised this claim. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006); see also Fed.R.Civ.P. 12(h)(3). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Arbaugh, 546 U.S. at 506 (quoting Kontrick v. Ryan, 540 U.S. 443, 455 (2004)). The Court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Id. at 501, 514. When the Court establishes that it does not have subject-matter jurisdiction, it "must dismiss the complaint in its entirety." Id. at 514.

**B.      PennEast Pipeline Co. v. New Jersey**

In PennEast, Plaintiff PennEast Pipeline Company sought an order for condemnation and a preliminary injunction for immediate access to property owned by the State of New Jersey. See 141 S.Ct. at 2251. The Supreme Court held that the Federal Government constitutionally conferred on pipeline companies the authority to condemn rights-of-way in which States have an interest in the NGA. Id. The Court determined that "[a]lthough nonconsenting States are generally immune from suit, they surrendered their immunity from the exercise of the federal eminent domain power when they ratified the Constitution." Id. at 2251–52. Thus, "the Natural Gas Act delegates the federal eminent domain power to private parties," allowing "those parties [to] initiate condemnation proceedings, including against state-owned property." Id. at 2252. The Court further

5

reasoned that precluding Federal Government delegatees from bringing condemnation proceedings "would violate the basic principle that a State may not diminish the eminent domain authority of the federal sovereign." Id. at 2260. Thus, a court may not "divorce the eminent domain power from the power to bring condemnation actions." Id.

In coming this conclusion, the Court emphasized the long history of eminent domain power:

> [T]he Framers . . . sought to create a cohesive national sovereign in response to the failings of the Articles of Confederation. Over the course of the Nation's history, the Federal Government and its delegatees have exercised the eminent domain power to give effect to that vision, connecting our country through turnpikes, bridges, and railroads—and more recently through pipelines, telecommunications infrastructure, and electric transmission facilities. And we have repeatedly upheld these exercises of the federal eminent domain power—whether by the Government or a private corporation, whether through an upfront taking or a direct condemnation proceeding, and whether against private property or state-owned land. The NGA fits well within this tradition.

Id. at 2263.

The Court further addressed New Jersey's argument that despite the established eminent domain power in the NGA, it was immune from suit due to sovereign immunity:

> States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution . . . Under our precedents, a State may be subject to suit only in limited circumstances. A State may of course consent to suit . . . and Congress may also abrogate state sovereign immunity under the Fourteenth Amendment. Furthermore, a State may be sued if it has agreed to suit in the "plan of the Convention," which is shorthand for the structure of the original Constitution itself. The "plan of the convention" includes certain waivers of sovereign immunity to which all

> States implicitly consented at the founding. We have recognized such waivers in the context of bankruptcy proceedings, suits by other States, and suits by the Federal Government.

Id. at 2258 (cleaned up). The Court found that the third exception to States' immunity applied in this instance—the States had implicitly agreed to condemnation suits when they ratified the Constitution. Id. at 2251−52.

Justice Gorsuch dissented and argued that even if States consented to condemnation proceedings in the plan of the Convention, "the Eleventh Amendment nonetheless divests federal courts of subject-matter jurisdiction over a suit filed against a State by a diverse plaintiff." Id. at 2262. He posited that "States have two distinct federal-law immunities from suit." Id. at 2264 (Gorsuch, J., dissenting). The first is "structural immunity" which is "derive[d] from the structure of the Constitution" and the ratification of the Convention. Id. Justice Gorsuch agreed with the majority that this immunity is waivable. Id. The second form of state immunity is "textual immunity," also known as Eleventh Amendment immunity, which is "derive[d] from the text of the Eleventh Amendment." Id. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Id. (quoting U.S. Const. amend. XI). Justice Gorsuch argued that the majority failed to answer whether Eleventh Amendment immunity is waivable when a federal suit is commenced against a State by a citizen of another State. Id. at 2264–65. He further argued that the Eleventh Amendment constitutes an "ironclad rule for a particular category of diversity

suits" where immunity is not waivable because the Amendment's plain language mandates that federal courts "shall not" hear suits that fall within its parameters. Id. Because the circumstances of PennEast presented "'the rare scenario' that comes within the Eleventh Amendment's text," New Jersey and other states sued by a diverse plaintiff should be immune from suit. Id. at 2265. Justice Gorsuch concluded by stating that "lower courts . . . have an obligation to consider this issue on remand before proceeding to the merits." Id.

The majority opinion briefly addressed Justice Gorsuch's argument. It stated that despite the Eleventh Amendment's language, "States retain their immunity from suit regardless of the citizenship of the plaintiff" and "we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms." Id. at 2258 (majority opinion). The Court further reasoned that:

> Under our precedents that no party asks us to reconsider here, we have understood the Eleventh Amendment to confer a personal privilege which a State may waive at pleasure. When a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action. Such consent may, as here, be inherent in the constitutional plan.

Id. at 2262 (cleaned up).

**C.    Analysis**

In its Motion to Dismiss, MDNR primarily relies on Justice Gorsuch's dissent in PennEast. It argues that the Eleventh Amendment's textual immunity may not be waived by the States, and thus, this Court does not have subject matter jurisdiction to hear this

case. (Mot. at 7). MDNR further argues that the majority in <u>PennEast</u> "signaled its openness to reconsidering" cases which have held that States may waive the Eleventh Amendment's conferral of privilege. (<u>Id.</u> at 11). The Court did this, according to MDNR, by adding the qualification that "no party asks us to reconsider [those cases] <u>here</u>," rather than conclusively foreclosing Justice Gorsuch's suggestion that textual immunity is not waivable. (<u>Id.</u> at 12 (quoting <u>PennEast</u>, 141 S.Ct. at 2262 (emphasis added))). Thus, MDNR argues that this Court may consider and grant its Renewed Motion to Dismiss because the State is entitled to textual immunity. (<u>Id.</u>). MDNR acknowledges that "[o]f course, this Court is not free to overrule or disregard decisions of the Supreme Court" and recognizes "that some of its arguments here may ultimately be better suited for Supreme Court review." (<u>Id.</u> at 13 n.5).

Columbia Gas counters that MDNR's Eleventh Amendment argument is foreclosed by <u>PennEast</u> and other Supreme Court precedents. (Pl.'s Resp. Opp'n ["Opp'n"] at 1, ECF No. 66). At bottom, the Court agrees with Colombia Gas and will deny MDNR's Renewed Motion to Dismiss.

This Court interprets the Supreme Court's opinion in <u>PennEast</u> as explicitly holding that Federal Government delegatees have federal eminent domain power to "initiate condemnation proceedings, including against state-owned property." <u>See</u> 141 S.Ct. at 2252. It is undisputed that FERC has granted Columbia Gas a certificate of public convenience and necessity, thus delegating federal eminent domain power to Columbia Gas. (<u>See</u> Compl. ¶¶ 7, 8, 11–13, 25; Mot. at 1–2). Further, MDNR is the record title holder for Tract No. 1. (Mot. at 2). Thus, as a Federal Government delegatee, Columbia Gas has

federal eminent domain power to initiate condemnation proceedings against the property owned by MDNR. PennEast, 141 S.Ct. at 2252.

If this Court were to hold that it lacked subject matter jurisdiction to hear this case, it would be "divorc[ing] the eminent domain power from the power to bring condemnation actions." Id. at 2260. The Supreme Court stated that such a ruling "would violate the basic principle that a State may not diminish the eminent domain authority of the federal sovereign." Id. Thus, the Court has subject matter jurisdiction to hear Colombia Gas's suit for condemnation.

Further, the Court is not persuaded by MDNR's argument that the Supreme Court is open to reconsidering cases holding that Eleventh Amendment immunity is waivable. (Mot. at 6–7); see also PennEast, 141 S.Ct. at 2265 (Gorsuch, J., dissenting). The Supreme Court clearly stated that the Eleventh Amendment confers a waivable privilege, and the consent to waive this privilege "may, as here, be 'inherent in the constitutional plan.'" PennEast, 141 S.Ct. at 2262 (majority opinion) (quoting McKesson Corp. v. Div. Alcoholic Beverages and Tobacco, 496 U.S. 18, 30 (1990)). The Court interprets this statement as an express rejection of the MDNR's arguments. The majority considered Justice Gorsuch's argument that the Eleventh Amendment "divests federal courts of subject-matter jurisdiction over a suit filed against a State by a diverse plaintiff" and reaffirmed that the States waived their Eleventh Amendment immunity at the ratification of the Constitution. Id. Thus, this Court may entertain federal-court condemnation suits commenced against a State by a citizen of another State.

This Court will not attempt to determine whether the Supreme Court's holding applies only to structural immunity rather than textual immunity. The Supreme Court did not make such a distinction, and this Court will "simply apply the[] commands" of the Supreme Court. See Payne v. Taslimi, 998 F.3d 648, 654 (4th Cir. 2021). The Court's dictate was clear: a court must not "divorce the eminent domain power from the power to bring condemnation actions." PennEast, 141 S.Ct. at 2260. Columbia Gas correctly argues that MDNR's textual immunity theory, and the sources that support it, may not "properly suggest to this [Court] what it must do on remand," as that is "exclusively the province of the majority of Supreme Court Justices who have written for the Court." (Opp'n at 9). If this Court were to grant the Motion, it would ignore the essential holding in PennEast by allowing MDNR to separate Columbia Gas' eminent domain power from its condemnation authority. The Supreme Court expressly decided that this is something "[a] State may not do." PennEast, 141 S.Ct. at 2247. Indeed, MDNR acknowledged that "this Court is not free to overrule or disregard decisions of the Supreme Court." (Mot. at 13 n.5). Accordingly, the Court finds that it must adhere to the precedent established in PennEast and deny MDNR's Renewed Motion to Dismiss.

## III.    CONCLUSION

For the foregoing reasons, the Court will deny Defendant MDNR's Renewed

Motion to Dismiss (ECF No. 63). A separate Order follows.

Entered this 16th day of December, 2022.


_____/s/_____

George L. Russell, III
United States District Judge